John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:      jschmidtlein@wc.com
Email:      cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email:      steven.sunshine@skadden.com
Email:      julia.york@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MARY KATHERINE ARCELL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., APPLE INC., TIM COOK, SUNDAR PICHAI, and ERIC SCHMIDT,<br><br>Defendants. | Case No. 5:22-cv-2499-EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: November 3, 2022<br>Time:          9:00 a.m.<br>Place:         Courtroom 4<br>Judge:         Hon. Edward J. Davila |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 3, 2022, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4 of this Court, located on the 5th Floor of the United States Courthouse, 280 South 1st Street, San Jose, California, Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Apple Inc., Tim Cook, Sundar Pichai, and Eric Schmidt (collectively, "Defendants") will move the Court for an order dismissing Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants respectfully request an order dismissing without leave to amend all causes of action brought against them in the above-captioned matter.  This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; any reply memorandum; the pleadings and files in this action; and such other matters Defendants may present at or before the hearing.

DATED:  June 24, 2022

**WILLIAMS & CONNOLLY LLP**

By: /s/ John E. Schmidtlein

John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
Email:      jschmidtlein@wc.com
Email:      cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc.,*
*XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760
Email:      steven.sunshine@skadden.com
Email:      julia.york@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................2

LEGAL STANDARD...................................................................................................................5

ARGUMENT ...............................................................................................................................6

I.      The Complaint Fails To State a Claim Under Sherman Act Section 1 Because It
        Does Not Allege Facts that Plausibly Suggest the Existence of a Per Se Horizontal
        Agreement Not To Compete ..............................................................................................6

        A.      The Complaint Fails To Plead Direct Evidence of a Horizontal Conspiracy
                Because It Contains No Plausible Factual Allegations That Could Be
                Viewed as Direct Evidence of an Agreement Not To Compete ............................7

        B.      The Complaint Fails To Plead Circumstantial Evidence of a Horizontal
                Conspiracy Because Plaintiffs Fail To Plead "Parallel Conduct" or "Plus
                Factors"................................................................................................................8

II.     The Complaint Fails To State a Claim Under Sherman Act Section 2 Because It
        Does Not Allege Facts that Plausibly Suggest the Existence of a Conspiracy To
        Monopolize, a Relevant Market that was Monopolized, or a Specific Intent To
        Monopolize ......................................................................................................................11

        A.      Plaintiffs Do Not Allege Facts Plausibly Suggesting the Existence of a
                Conspiracy Under Section 2 Because They Fail To Plead a Conspiracy
                Under Section 1..................................................................................................12

        B.      Plaintiffs Do Not Adequately Allege a Relevant Market Because the
                Relevant Market is Unclear and Not Supported by Factual Allegations..............13

        C.      Plaintiffs Fail To Allege that Apple Possessed the Requisite Specific Intent
                Because the Complaint is Devoid of Allegations that Raise an Inference of
                Specific Intent ...................................................................................................14

III.    The Complaint Fails To Allege Facts Sufficient To Establish Antitrust Standing
        Because It Fails To Satisfy Any of the Antitrust Standing Factors ...................................15

IV.     The Statute of Limitations and Doctrine of Laches Preclude Plaintiffs' Claims..............19

        A.      Plaintiffs Do Not Allege a Continuing Violation .................................................20

        B.      Plaintiffs' Allegations of Fraudulent Concealment Are Insufficient....................22

V.      The Court Should Dismiss the Complaint's Requests for Public Injunctive Relief,
        Disgorgement, and Divestiture ........................................................................................24

CONCLUSION...........................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) .........................15, 17

*Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978 (D. Haw. 2019)....................11

*Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057 (N.D. Cal. 2015)....................................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................5, 6, 23

*Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) .......17, 18

*Aurora Enters., Inc. v. NBC*, 688 F.2d 689 (9th Cir. 1982)...........................................................19

*Auto Sound Inc. v. Audiovox Elecs. Corp.*, 2012 WL 12892938 (C.D. Cal. Dec. 3, 2012).............9

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988 (N.D. Cal. 2015) .....22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................6, 8, 9, 10

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ................................................25

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ............................................16

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988)......................................................6

*California Crane School, Inc. v. Google LLC et al.*, 4:21-cv-10001-HSG (N.D. Cal.) .................5

*California v. Am. Stores Co.*, 495 U.S. 271 (1990) ......................................................................24

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986) .......................................................17

*Chandler v. Phoenix Servs.*, 2020 WL 1848047 (N.D. Tex. Apr. 13, 2020)................................22

*City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021).........................................17, 18

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
   771 F. Supp. 2d 1195 (N.D. Cal. 2011) ................................................................................24

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499 (9th Cir. 1988) .......................................23

*Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021)..........................13

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ......................................................................11

*Digital Sun Corp. v. Toro Co.*, 2011 WL 1044502 (N.D. Cal. Mar. 22, 2011)..............................3

*Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538 (9th Cir. 1987).......................................................18

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ....................10

*Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015)....................................................16

*Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044 (N.D. Cal. 2016) ................................20, 21, 22

*Garrison v. Oracle Corp.*, 2015 WL 1849517 (N.D. Cal. Apr. 22, 2015) ...................................23

*Granddad Bread, Inc. v. Cont'l Baking Co.*, 612 F.2d 1105 (9th Cir. 1979) ...............................12

*Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir.1986)...................................20

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055 (9th Cir. 2012) .........................................22

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018)..............................................................13

*Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*,
   2018 WL 5891743 (D. Haw. Nov. 9, 2018) ...............................................................................15

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)........................................................................19

*In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031 (N.D. Cal. 2021).............................11

*In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025 (N.D. Cal. May 21, 2009).....................10

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ....24

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999)...............................................................7, 8

*In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004).......................................................9

*In re Generic Pharms. Pricing Antitrust Litig.*, 2022 WL 2047964 (E.D. Pa. June 7, 2022) .......18

*In re Graphics Processing Units Antitrust Litig.*,
   2007 WL 2127577 (N.D. Cal. July 24, 2007)............................................................................11

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) .....................7, 10

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).................................................8

*In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68 (9th Cir. 1979).........................................20

*In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015)..............7, 8, 9

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*,
   2012 WL 3637291 (S.D. Cal. Aug. 20, 2012) ............................................................................10

*In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663 (N.D. Cal. Apr. 29, 2011) ............17

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010)........................................12, 13

*Jacobsen v. Katzer*, 2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) ................................................17

*Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140 (N.D. Cal. 2017) ........................................8

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ...........................................6, 7, 10, 25

*Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006) ................................................................18

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ......................................17

*Lee v. Kitchables Prods.*, 2021 WL 3173253 (N.D. Cal. July 27, 2021) .......................................24

*Litovich v. Bank of Am. Corp.*, 2021 WL 4952034 (S.D.N.Y. Oct. 25, 2021) ..............................22

*Maguca v. Aurora Loan Servs.*, 2009 WL 3467750 (C.D. Cal. Oct. 28, 2009) ............................10

*Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) ...................7

*McCabe Hamilton & Renny Co. v. Matson Navigation Co.*,
    2008 WL 2233740 (D. Haw. Apr. 9, 2008) ..............................................................................15

*Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co., Ltd.*,
    467 F. Supp. 841 (N.D. Cal. 1979) ..........................................................................................12

*N. Cheyenne Tribe v. Norton*, 503 F.3d 836 (9th Cir. 2007) ........................................................24

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ..................................................................................................10

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073 (E.D. Cal. 2021) ...........16

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................................................23

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ...........................................................................12

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    305 F. Supp. 3d 1065 (N.D. Cal. 2018) ...................................................................................16

*Pac. Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961 (N.D. Cal. May 21, 2021) ......................9

*Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir. 1987) .........................................20

*Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) ......................................12

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505 (8th Cir. 2018) .................8

*Peterson v. Sutter Med. Found.*, 2022 WL 316677 (N.D. Cal. Feb. 2, 2022) ...............................23

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001) .................................................15

*Prime Healthcare Servs., Inc. v. SEIU*, 2013 WL 3873074 (S.D. Cal. July 25, 2013) .................12

*Reveal Chat Holdco LLC v. Facebook, Inc.*, 2021 WL 1615349 (N.D. Cal. Apr. 26, 2021)........22

*Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981 (N.D. Cal. 2020)...................16

*Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904 (N.D. Cal. 2020)...........................................................24

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) .................11, 12, 14, 15

*Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868 (N.D. Cal. 2015) ...........................................20, 21

*Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 3532294 (S.D. Cal. Aug. 2, 2019).................13

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ....................................................................15

*Space Expl. Technologies Corp. v. Boeing Co.*,
    2006 WL 7136649 (C.D. Cal. May 12, 2006) ...................................................................16, 18

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*,
    405 F. Supp. 2d 1141 (C.D. Cal. 2005) ...........................................................................12, 14

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*,
    2011 WL 2678879 (E.D. Cal. July 7, 2011) .....................................................................12, 14

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 803 F.3d 1084 (9th Cir. 2015) .......................9

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009).......7

*Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118 (N.D. Cal. 2011) ....................................25

*Thorman v. Am. Seafoods Co.*, 421 F.3d 1090 (9th Cir. 2005).......................................................23

*Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106 (E.D. Cal. 2002) ......................................17, 19

*TSI USA LLC v. Uber Techs.*, 2018 WL 4638726 (N.D. Cal. Sept. 25, 2018)..............................24

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185 (3d Cir. 2017)...........................9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................................23

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971).................................................20

## STATUTES

15 U.S.C. § 15............................................................................................................ *passim*

15 U.S.C. § 15b...................................................................................................................19

15 U.S.C. § 26....................................................................................................................24

1

## FEDERAL RULES

2

Federal Rule of Civil Procedure 8(a) ..............................................................11

3

Federal Rule of Civil Procedure 9(b) ..............................................................23

4

Federal Rule of Civil Procedure 12(b)(6) ...............................................5, 13, 24

5

## OTHER AUTHORITIES

6

*DOJ-FTC Antitrust Guidelines for the Licensing of Intellectual Property*,
7       2017 WL 282889 (Jan. 12, 2017) ...............................................................9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 5:22-cv-2499-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Google and Apple provide complementary products and services that facilitate internet search: Google offers an internet search engine, and Apple offers an internet browser and a wide range of internet-accessible devices. As is commonplace among companies that offer complementary products and services, Google and Apple integrated their offerings to create efficiencies and enrich the user experience. Pursuant to publicly reported agreements, known as Information Services Agreements, Apple has agreed to set Google as the default search provider in its Safari web browser in the United States because Google offers the highest quality search results. The agreements do not prevent Apple from integrating alternative search engines into Safari. In fact, Safari users in the United States can choose among Microsoft's Bing, Yahoo!, DuckDuckGo, and Ecosia. Pursuant to the agreements, Google has agreed to pay Apple a share of the advertising revenues generated by searches performed on Google by Safari users, another standard practice for search engines integrated via a browser's search field.

Although these agreements between search engine provider and web browser developer have been public knowledge for over 15 years (and have been a common form of agreement between search providers and web browser companies during this time), Plaintiffs try to spin this *vertical* business relationship into a per se unlawful *horizontal* conspiracy whereby Apple also agreed not to compete with Google. But no such horizontal agreement exists, either as part of the Information Services Agreements or elsewhere, and Plaintiffs' Complaint does not allege facts plausibly suggesting otherwise. Stripped of its repetitive conclusory assertions of conspiracy, the Complaint contains nothing more than a recitation of benign, public facts that do not show an unlawful conspiracy as a matter of law. Because these allegations cannot support the per se horizontal Sherman Act violation or the conspiracy to monopolize asserted in this case, the Complaint fails to state a claim for relief and should be dismissed with prejudice.

Moreover, even if the Complaint had set out viable claims, Plaintiffs lack antitrust standing to assert them. The Complaint contends that, as a result of a far-fetched non-compete agreement

between Google and Apple, Plaintiffs endured a lower quality search experience and suffered vague monetary and privacy harms.  But Plaintiffs' theory of alleged injury requires at least five speculative steps to even loosely connect the dots between the challenged restraint and the injury claimed.  An injury would exist only if—in the absence of the (non-existent) non-compete agreement—Apple developed its own competing search technology and launched a search engine product for use by consumers, used this new search product as the default search provider for the Safari web browser, captured a significant share of the search-engine market, and thereby spurred participants in the market to offer better, more innovative, and cheaper search results than the free and instantaneous results they already provide.  This attenuated theory, unsupported by any factual allegations, cannot satisfy the strict antitrust standing factors.

Plaintiffs' baseless Complaint also fails because although Plaintiffs rely on public agreements allegedly dating back to 2005, they have no basis to toll the applicable four-year statute of limitations, so their claims are time-barred.  What is more, Plaintiffs seek disgorgement and injunctive relief on behalf of the greater public—remedies categorically unavailable here—as well as the extreme remedy of divestiture of Google and Apple into smaller companies.

Put simply, Plaintiffs overreach at every step.  They assert claims that find no support in the alleged facts; fail to satisfy antitrust standing requirements; raise claims barred by the statute of limitations; and seek forms of relief precluded as a matter of law.  This is precisely the kind of case that the Supreme Court warned would require the rigorous enforcement of Rule 12's pleading requirements.  Defendants respectfully request that the Court follow that admonition and dismiss Plaintiffs' Complaint with prejudice.

## BACKGROUND

Defendant Apple Inc. is a California-based technology company that manufactures a host of hardware devices, software, and services, including Macintosh desktop and notebook computers, iPhone and iPad mobile devices, and the Safari web browser that comes preinstalled on Apple devices.  Compl. ¶¶ 51, 71, ECF. No. 1.  It provides cutting-edge electronics, software, and online services to consumers throughout the world.  *Id.* ¶ 71.  Defendant Google LLC—a subsidiary of

1   Defendants XXVI Holdings Inc. and Alphabet Inc.—has likewise risen from humble beginnings in

2   Silicon Valley to develop high-technology and software products used by consumers around the

3   world, including its world-famous Google Search engine.  *Id.* ¶¶ 50, 80.

4          According to the Complaint,[1] in 2005, Google entered into a contract with Apple to allow

5   users of Apple devices in the United States to easily access Google Search on Apple's Safari web

6   browser.  In particular, lacking its own search engine,  Apple agreed to set Google Search as the

7   "out-of-the-box" default search service for its Safari web browser, *id.* ¶ 88, because Google offered

8   the highest quality results.  Google also agreed to pay Apple a share of the advertising revenues

9   generated by searches performed on Google by Safari users.  *Id.* ¶ 89.  The deal did not require

10  Google to be the *exclusive* search engine available on Apple products or even the only search engine

11  promoted by Apple or its Safari web browser; consumers could easily change the default search

12  provider on Safari.  *Id.* ¶ 116.  Apple always has been permitted to preload other search engines on

13  any of its devices, "bookmark" other search engines on Safari, and provide users the ability to easily

14  switch the Safari default search engine in the device's "Settings."  Rival search engines, and a variety

15  of other search-enabled apps and voice assistants, also have been and continue to be available for

16  easy free download onto an Apple device from Apple's App Store.  To conduct web searches, users

17  also are free to navigate to the web page of their preferred search engine via Safari or numerous

18  alternative browsers available on Apple devices.  When examined carefully, Plaintiffs' Complaint

19  implicates only one of many ways that users could access a search engine on Apple devices:  the

20  default search setting for the Safari web browser.  *Id.* ¶ 88.  And nowhere in this Complaint do

21  Plaintiffs allege that the (written) commercial agreements that facilitated the procompetitive

22  promotion of Google Search to users of Apple devices contain any prohibition on Apple

23  independently developing its own search engine.

24

25  ───────────────

26  [1] Defendants acknowledge that, for purposes of this motion, the Court must take Plaintiffs'
    allegations as true, although it need not accept as true allegations that are merely conclusory,
    unwarranted deductions of fact, or unreasonable inferences.  *See, e.g.*, *Digital Sun Corp. v. Toro Co.*,

27  2011 WL 1044502, at *2 (N.D. Cal. Mar. 22, 2011).  In fact, Defendants dispute many of Plaintiffs'

28  baseless and unsupported allegations.

The existence of these commercial agreements, first entered into years before the launch of the iPhone and iPad, has been public knowledge since their inception.  The pre-set default search engine, like other search engines integrated into Safari, has, of course, been visible to anyone using the Safari web browser on an Apple device in the United States, and the fact that Google has made payments to Apple under the agreement has been widely reported.  *Id.* ¶¶ 31-39.  Unsurprisingly, Apple and Google executives have met numerous times over the years as part of the ongoing working relationship created by these agreements.  *Id.* ¶¶ 100, 102, 120, 124-25.

According to the Complaint, Apple and Google have not only entered into the known, vertical agreement—whereby Apple agreed to set Google as the default search engine for Safari—but also a separate, clandestine horizontal agreement—whereby Apple agreed with Google not to compete in providing search services.  *Id.* ¶¶ 2-4, 23, 40, 93, 97, 103, 111-12, 114, 134.  The Complaint alleges that this non-compete agreement permitted Google to monopolize search engine services (without alleging any antitrust relevant market whatsoever) and charge advertisers higher fees, which Google then shared with Apple.  *Id.* ¶¶ 6-7, 17, 43, 60, 96, 115.  The parties supposedly hatched this "conspiracy," *id.* ¶ 29, during "secret" meetings between company executives at Google's headquarters, *id.* ¶ 100, a shopping mall café, *id.* ¶ 102, Steve Jobs's living room, *id.*, and public restaurants over dinner, *id.* ¶¶ 120, 124-25.  The Complaint is silent as to any purported connection between these meetings and an unlawful conspiracy, or why a factfinder could infer that these alleged meetings between executives concerned a secret non-compete agreement.

The Complaint alleges the conspiracy was engineered by former CEOs Steve Jobs and Eric Schmidt.  *Id.* ¶ 9.  When they left Apple and Google, their replacements, Tim Cook and Sundar Pichai, allegedly ratified and extended the alleged scheme, *id.* ¶ 10, and the conspiring executives allegedly also informed the "board of directors of both Google and Apple" of their *per se* illegal antitrust agreement.  *Id.* ¶ 52.

On December 27, 2021, California Crane School, Inc.—a crane operator certification company—sued Defendants on behalf of itself and a proposed class of "consumers and businesses who paid Google to place advertising on Google search in the United States since January 1, 2005."

- 4 -

*See* Compl. ¶ 65, *California Crane School, Inc. v. Google LLC et al.*, 4:21-cv-10001-HSG (N.D. Cal.), ECF No. 1.   Defendants filed Motions to Compel Arbitration, Stay Litigation Pending Arbitration, and Stay Discovery, *id.*, ECF Nos. 32, 34-35, which *inter alia* noted that California Crane had signed an agreement to arbitrate all disputes with Google, Google's parent companies, and its executives.   Several weeks later, counsel for California Crane filed the Complaint in this case.

The Complaint is substantially the same as the *Crane* complaint.   Indeed, it proceeds against the exact same Defendants and asserts that Defendants' alleged non-compete agreement is a *per se* violation of Section 1 of the Sherman Antitrust Act.   Compl. ¶¶ 135-47, ECF No. 1.   Plaintiffs also bring an identical claim under Sherman Act Section 2 for conspiracy to monopolize "the search business."   *Id.* ¶ 149.   And, like the plaintiff in *Crane*, Plaintiffs request treble damages, declarative relief, injunctive relief voiding and prohibiting any profit-sharing and exclusivity agreements, disgorgement, and the dismantling of both Apple and Google into smaller companies.   *Id.* ¶ 161.

What is different here are the Plaintiffs, who allege in conclusory fashion that they are "user[s] of search services on the internet" who are "threatened with harm and damage in that they have been deprived of the quality, service and privacy that they otherwise would have enjoyed but for Google's anticompetitive conduct."   *Id.* ¶¶ 47-48.   They also complain of "added expense that results from distorted and steered search results" and restricted "innovation in new products."   *Id.* ¶ 48.   But the Complaint provides no factual allegations to support a claim of past injury to any specific plaintiff, nor any allegations at all about the future intentions of any plaintiff to use Google search services.   In short, Plaintiffs offer no factual allegations to support any injury, nor entitlement to the relief that they seek.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   This standard "asks for more than a sheer possibility that a

1   defendant has acted unlawfully"; it requires the facts pleaded to push the asserted claim across "the

2   line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v.*

3   *Twombly*, 550 U.S. 544, 558 (2007)).  To determine whether a complaint satisfies that requirement,

4   the Court must "draw on its judicial experience and common sense." *Id.* at 679.

5         Rigorous enforcement of Rule 12's pleading requirements plays an especially important role

6   in antitrust cases, such as this one.  As the Supreme Court has recognized, antitrust disputes impose

7   considerable fact and expert discovery burdens that tax the time, energy, and resources of courts and

8   litigants.  *Twombly*, 550 U.S. at 558.  "[I]t is only by taking care to require allegations that reach the

9   level suggesting conspiracy that [courts] can hope to avoid the potentially enormous expense of

10  discovery in cases with no reasonably founded hope that the discovery process will reveal relevant

11  evidence." *Id.* at 559 (cleaned up).

12                                **ARGUMENT**

13  **I.    The Complaint Fails To State a Claim Under Sherman Act Section 1 Because It Does
         Not Allege Facts that Plausibly Suggest the Existence of a Per Se Horizontal**
14  **       Agreement Not To Compete.**

15        The Complaint's First Claim for Relief alleges that Apple has agreed not to compete with

16  Google "in the search business," Compl. ¶ 136, which (Plaintiffs claim) constitutes a *per se* violation

17  of Section 1 of the Sherman Act, *see id.* ¶¶ 141-43.  This claim fails at the threshold because the

18  Complaint does not plead facts plausibly suggesting the existence of any such horizontal agreement;[2]

19  at most the Complaint outlines a legitimate vertical business relationship between Google and Apple

20  that cannot be *per se* unlawful.

21        The "crucial question" in Section 1 cases is whether the challenged conduct "stem[s] from

22  independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (alteration

23  in original) (citation omitted); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir.

24  2008).  To survive a motion to dismiss, the Complaint must plead facts sufficient to "answer the

25  basic questions: who, did what, to whom (or with whom), where, and when?" of the claimed

26

27  [2] Horizontal restraints are typically "agreement[s] between competitors," while vertical restraints
    typically refer to "agreement[s] between firms at different levels of distribution." *Bus. Elecs. Corp.*
28  *v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988).

horizontal conspiracy.  *Kendall*, 518 F.3d at 1048.  And it "must plead not just ultimate facts (such as a conspiracy), but *evidentiary* facts" explaining how it will prove that the alleged agreement existed.  *Id.* at 1047 (emphasis added).  Claimants can do so by alleging non-inferential, "direct" evidence of an agreement or, absent that, powerful circumstantial evidence that is inconsistent with rational and legal business conduct.  *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193-94 (9th Cir. 2015); *In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94, 1104 n.8 (9th Cir. 1999)  In this case, Plaintiffs have done neither.

> **A.  The Complaint Fails To Plead Direct Evidence of a Horizontal Conspiracy Because It Contains No Plausible Factual Allegations That Could Be Viewed as Direct Evidence of an Agreement Not To Compete.**

The Complaint contains no factual allegations that could plausibly be viewed as direct evidence of an agreement that Apple would not compete by developing and marketing its own search engine.  Direct evidence is "tantamount to an acknowledgment of guilt," *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002), because it establishes a conspiracy "without requiring any inferences," *In re Citric Acid Litig.*, 191 F.3d at 1093.  In other words, a plaintiff must plead facts amounting to the proverbial "smoking gun" evidence.  *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (providing example of "direct evidence" as "a recorded phone call in which two competitors agreed to fix prices at a certain level"); *see also, e.g.*, *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1196-97 (N.D. Cal. 2009) (noting that guilty pleas by conspirators can be direct evidence).

Although Plaintiffs concede that they do no not know when or how the supposed conspiracy started, Compl. ¶ 12, they claim without any factual basis that the agreement was formed and negotiated in clandestine meetings between senior executives of Apple and Google, *id.* ¶ 8.  But the Complaint offers not a single fact—a supposed statement by a witness, a document that memorializes the agreement, or any other direct evidence—to support its outlandish assertions.

Instead, Plaintiffs plead that Google and Apple executives met occasionally over the years, *id.* ¶¶ 11, 13, 100, 102-03, 120, 124-25, but offer no evidentiary facts showing that a conspiracy was reached during such meetings.  Straining to support their claims, Plaintiffs allege a series of disconnected quotes—such as Apple telling Google "Our vision is that we work as if we are one

company"—that say nothing about an alleged agreement that Apple would not develop its own search engine.  *Id.* ¶¶ 98-99.  Even if these occurrences were assumed true, they would still require *inferences* to establish an illegal agreement.  Such statements by corporate executives in the context of a vertical relationship between two companies are not admissions that would by themselves prove a conspiracy.  Rather, the more plausible inference is that the statements by Apple and Google executives advanced the companies' vertical collaboration to enhance users' internet searching on Apple devices.  And allegations—or even proof—of meetings between competitors are not direct evidence of a conspiracy.  *See In re Citric Acid Litig.*, 191 F.3d at 1103.  At bottom, the Complaint does not plead the existence of direct evidence, and it certainly does not "plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' [any] direct evidence."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 324 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

**B.  The Complaint Fails To Plead Circumstantial Evidence of a Horizontal Conspiracy Because Plaintiffs Fail To Plead "Parallel Conduct" or "Plus Factors."**

The Complaint similarly lacks allegations necessary to establish circumstantial evidence of a horizontal agreement by Apple to not compete with Google in the "search business."  To support a claim based on circumstantial evidence, a plaintiff must plead facts demonstrating "parallel conduct" combined with "plus factors" that are "inconsistent with unilateral conduct."  *See In re Musical Instruments Antitrust Litig.*, 798 F.3d at 1193-94 (discussing plus factors); *Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) (explaining that, for a case to proceed to discovery, the combined circumstantial evidence must tend "to exclude the possibility that defendants acted independently"), *aff'd*, 757 F. App'x 524 (9th Cir. 2008).  Plaintiffs plead neither.

*First*, Plaintiffs plead no "parallel conduct"—for example, "competitors adopting similar policies around the same time."  *In re Musical Instruments Antitrust Litig.*, 798 F.3d at 1193.  That absence alone is enough to reject reliance on circumstantial evidence.  *See id.* at 1193-94; *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) (affirming dismissal of conspiracy claim because plaintiff failed to "plausibly plead parallel conduct," so "no discussion of any 'plus factors' [was] necessary").  At most, the Complaint alleges the existence of, and facts consistent with, a lawful *vertical* agreement between Apple and Google under which Apple agreed

to set Google as the default search engine on its Safari web browser. Compl. ¶ 88. There is nothing suspicious or unusual about such an agreement, which other browser developers have entered into with search providers for many years.[3] The Complaint then couples those innocuous facts with entirely conclusory assertions of conspiracy. *See, e.g.*, *id*. ¶¶ 2, 8-10, 40, 93, 111. Such tactics have routinely been held insufficient to state a Section 1 claim. *See, e.g.*, *Twombly*, 550 U.S. at 564-69; *In re Musical Instruments Antitrust Litig.*, 798 F.3d at 1193-97.

*Second*, even if the Complaint adequately pled parallel conduct, it does not plead "plus factors" necessary to make the conspiracy's existence plausible. Plus factors are "economic actions and outcomes that are largely *inconsistent* with unilateral conduct but largely *consistent* with explicitly coordinated action." *In re Musical Instruments*, 798 F.3d at 1194 (emphases added). To successfully plead such "plus factors," the Ninth Circuit requires nonconclusory allegations of fact that plausibly exclude the possibility that defendants acted independently, and therefore allow a court to infer a conspiracy. *Id.* at 1198. Plus factors include conduct against an entity's apparent economic self-interest, unusual interfirm communications, or an abrupt change in a long-standing business practice or price structure. *See id.* at 1195; *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1093 (9th Cir. 2015); *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 196 (3d Cir. 2017); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004).

---

[3] Vertical agreements such as these—agreements that improve the user experience by among other things reducing friction for users (*i.e.*, by giving users a device that works "out-of-the-box," *see* Compl. ¶ 88)—are not *per se* unlawful. *See, e.g.*, *Pac. Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961, at *7 (N.D. Cal. May 21, 2021) ("[V]ertical restraints should nearly always be analyzed under the rule of reason."); *DOJ-FTC Antitrust Guidelines for the Licensing of Intellectual Property*, 2017 WL 282889, at *3, *10 (Jan. 12, 2017) (recognizing procompetitive benefits of vertical integration and explaining that vertical licensing arrangements that produce efficiencies are evaluated under the rule of reason). Plaintiffs do not bring any Section 1 claim premised upon the rule of reason. Even if they had, Plaintiffs fail to allege both a relevant market, *see infra* pp.14-15, and that the alleged vertical agreement had adverse competitive effects on that market under a rule of reason analysis, *see Pac. Steel Grp.*, 2021 WL 2037961, at *7-9; *see also Auto Sound Inc. v. Audiovox Elecs. Corp.*, 2012 WL 12892938, at *4-6 (C.D. Cal. Dec. 3, 2012) (dismissing Section 1 claim challenging vertical distribution agreement and recognizing that to "succeed on a rule of reason claim, an antitrust plaintiff must prove that the restraint in question injures competition in the relevant market" (citation omitted)).

1    The Complaint here contains no such facts.  Plaintiffs do not allege any action Google or

2    Apple took was against either company's self-interest in the absence of the alleged horizontal

3    agreement not to compete.  Indeed, there are no factual allegations in the Complaint that support the

4    inference that Apple *should have* undertaken developing a commercial internet search engine to

5    compete with Google and launching such a competing search engine from its devices, such that its

6    decision not to do so is evidence of a conspiracy.  *Cf. In re High Fructose Corn Syrup Antitrust*

7    *Litig.*, 295 F.3d at 658-59.[4]  Nor can Plaintiffs rely on interfirm communications as a plus factor.

8    Though the Complaint pleads that Google and Apple executives occasionally met and

9    communicated, courts have long held that mere *opportunity* to conspire is not enough to establish

10   participation in a conspiracy, *see In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025, at *5 (N.D.

11   Cal. May 21, 2009), and the existence of the lawful, vertical agreement undermines any negative

12   inferences, as courts are rightfully suspicious of alleged conspiracies that operate in plain view

13   because of their inherent implausibility, *see In re Nat'l Ass'n of Music Merchs., Musical Instruments*

14   *& Equip. Antitrust Litig.*, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom. In re*

15   *Musical Instruments*, 798 F.3d 1186 (9th Cir. 2015).  And the Complaint pleads the exact opposite

16   of an abrupt change in business practice; it pleads a decades-long, commercial relationship.  Compl.

17   ¶¶ 99-104, 123-25.  Because the only factual allegations in the Complaint are entirely consistent

18   with "rational, legal business behavior," they cannot be the basis of an illegal conspiracy.  *Kendall*,

19   518 F.3d at 1049 (citing *Twombly*, 550 U.S. at 554-58 & n.5); *accord Name.Space, Inc. v. Internet*

20   *Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015); *Eclectic Props. E.,*

21   *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (explaining that courts must

22   consider "obvious alternative explanations" for defendants' behavior when weighing plausibility).

23

24

---

25   [4] While the Complaint makes the bald assertions that "[i]n the past, Apple had actively worked on developing its own general search engine as a potential competitor to Google," and that "[i]t was

26   reported that as late as 2014 Apple had been working on its own search engine," Compl. ¶¶ 107, 127, these allegations are not only wholly conclusory, but are in direct conflict with Plaintiffs' core

27   assertion that Apple had since 2005 agreed not to undertake such efforts.  *See Maguca v. Aurora Loan Servs.*, 2009 WL 3467750, at *2 (C.D. Cal. Oct. 28, 2009) (noting that "self-contradictory"

28   allegations are an "admission sufficient to dismiss this cause of action").

1   The lack of plausible allegations supporting Plaintiffs' fanciful horizontal conspiracy theory

2   mandates dismissal of Messrs. Cook, Pichai, and Schmidt (hereinafter, the "Individual Defendants")

3   for the additional reason that Sherman Act claims against individuals must be dismissed where a

4   complaint fails plausibly to allege their direct participation in, knowing approval of, or ratification

5   of inherently wrongful conduct.  *See In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031,

6   1050-51 (N.D. Cal. 2021).  Here, the Complaint contains no plausible, non-conclusory allegations

7   that would connect the Individual Defendants to the alleged horizontal conspiracy between Apple

8   and Google, as the vast majority of allegations directed toward the Individual Defendants are nothing

9   more than bare assertions that they conspired with one another.  Compl. ¶¶ 8-16, 52-54, 120-21, 137,

10   153.[5]  Nor does the Complaint plausibly allege that the Individual Defendants knowingly approved

11   of or ratified inherently unlawful acts, as the only agreement discernible from the Complaint is a

12   non-exclusive vertical agreement that is not *per se* unlawful under Ninth Circuit precedent.  *See*

13   *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987).

14                                   *     *     *

15   In sum, Plaintiffs cannot assume the existence of an illegal agreement, cherry-pick a

16   scattershot of neutral events while ignoring their innocent explanation, and then ask the Court to

17   allow "discovery [that] would be a mere fishing expedition."  *In re Graphics Processing Units*

18   *Antitrust Litig.*, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007).  *Twombly* requires more from

19   antitrust plaintiffs, and it tasks district courts with ensuring compliance.

20   **II.   The Complaint Fails To State a Claim Under Sherman Act Section 2 Because It Does**
21   **Not Allege Facts that Plausibly Suggest the Existence of a Conspiracy To Monopolize,**
     **a Relevant Market that was Monopolized, or a Specific Intent To Monopolize.**

22   The Second Claim for Relief relies on the same (inadequate) allegations to allege a

23   conspiracy to monopolize "the search business" in violation of Sherman Act Section 2.  Compl.

24

25   [5] Indeed, by consistently lumping their allegations against the Individual Defendants together with
     their allegations against all Defendants and failing to plead "specific conduct" by the Individual
26   Defendants to support their claims, Plaintiffs engage in impermissible group pleading.  *See Aquilina*
     *v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996-98 (D. Haw. 2019) (dismissing claims
27   in part for "impermissible group pleading" that "fail[ed] to comply with the plausibility requirement
     of Rule 8(a)"); *see also Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011) (affirming district
28   court's dismissal of plaintiffs' "everyone did everything" allegations).

¶¶ 148-57.  Plaintiffs bringing such a claim must plead facts sufficient to show, *inter alia*, "the existence of a combination or conspiracy to monopolize," *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003), and a defined relevant antitrust market within which the alleged monopolist would have monopoly power, *see Rutman Wine*, 829 F.2d at 736; *accord Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336-39 (11th Cir. 2010) ("[A]ntitrust plaintiffs . . . must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets.").  Plaintiffs also must plead facts establishing that the defendants specifically intended "to empower one of them with monopoly power."  *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005); *see also Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 2011 WL 2678879, at *12 (E.D. Cal. July 7, 2011) (requiring plausible allegations that defendants specifically intended "to seize monopoly power by destroying or excluding competition within the relevant market").  Here, the Complaint fails on all three fronts.

### A.   Plaintiffs Do Not Allege Facts Plausibly Suggesting the Existence of a Conspiracy Under Section 2 Because They Fail To Plead a Conspiracy Under Section 1.

As with the Section 1 claim, the Court need not look further than the first element.  "The standard for pleading a conspiracy for the purposes of a claim under Section 2 of the Sherman Antitrust Act is the same as the standard for pleading a conspiracy under Section 1."  *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299, at *4 n.43 (N.D. Cal. Dec. 7, 2017); *cf. Granddad Bread, Inc. v. Cont'l Baking Co.*, 612 F.2d 1105, 1111-12 (9th Cir. 1979).  Because Plaintiffs "ha[ve] failed to plead the existence of a conspiracy for [a] Section 1 violation, [they] ha[ve] also failed to satisfy the first element for conspiracy to monopolize under Section 2."  *Prime Healthcare Servs., Inc. v. SEIU*, 2013 WL 3873074, at *16 (S.D. Cal. July 25, 2013), *aff'd* 642 F. App'x 665 (9th Cir. 2016).[6]

---

[6] Similarly, Plaintiffs' failure to plausibly allege that the Individual Defendants directly participated in, knowingly approved of, or ratified the alleged horizontal conspiracy for purposes of its Section 1 claim, *see supra* p.11, also precludes its Section 2 claim against the Individual Defendants.  *See Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co., Ltd.*, 467 F. Supp. 841, 851-54 (N.D. Cal. 1979) (granting judgment as a matter of law to individual defendant with respect to Section 2 claim where no reasonable jury could conclude that individual defendant participated in "inherently wrongful conduct"), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981).

### B.  Plaintiffs Do Not Adequately Allege a Relevant Market Because the Relevant Market is Unclear and Not Supported by Factual Allegations.

The Section 2 claim also fails for the independent reason that the Complaint neglects to adequately allege a relevant antitrust market that has been monopolized.  The Second Claim for Relief refers to "the search business," Compl. ¶ 149, 151, but elsewhere the Complaint cites Google's share of: the "U.S. computer search engine market," *id.* ¶ 25; "the U.S. search engine market," *id.* ¶ 26; and "the U.S. mobile search engine market," *id.* ¶ 24.  It also references a "search market," *id.* ¶ 93, a "search advertising market," *id.* ¶ 134, and a general "search services" market—an undefined market in which the Plaintiffs purport to have participated and experienced harm, *id.* ¶¶ 47, 49.  Yet the Complaint contains no allegations that might align the "search business" that Defendants supposedly conspired to monopolize, *id.* ¶¶ 148-57, with the bounds of these other blurred "markets." Plaintiffs' failure to properly allege a relevant market—instead referencing and conflating several different "markets"—itself warrants dismissal.  *See Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *7-8 (N.D. Cal. Nov. 30, 2021) (dismissing Sherman Act claims that "lack[ed] clarity as to the relevant product markets" and referenced "fifteen different markets"); *Siegler v. Sorrento Therapeutics, Inc.,* 2019 WL 3532294, at *13-16 (S.D. Cal. Aug. 2, 2019) (dismissing Section 2 conspiracy claim for failure to identify a relevant market, where market was "unclear").

More importantly, none of the labels that Plaintiffs provide are accompanied by factual allegations, or any information at all, about the contours of any relevant market.  A relevant market "must encompass the product at issue as well as all economic substitutes for [that] product." *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018).  The Complaint fails even to describe the products at issue, let alone product *markets* with reference to these fundamental economic principles.  Plaintiffs' failure to provide any supporting allegations to define the markets they reference renders the allegations patently insufficient to state a Section 2 claim.  *Id.* ("[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable."); *Jacobs*, 626 F.3d at 1336-39 (affirming dismissal of complaint for failing to plead relevant market).

**C.  Plaintiffs Fail To Allege that Apple Possessed the Requisite Specific Intent Because the Complaint is Devoid of Allegations that Raise an Inference of Specific Intent.**

Yet another independent basis for dismissal of Plaintiffs' Section 2 claim is that the Complaint fails to allege that Apple specifically intended to monopolize, or for Google to monopolize, any relevant market. As an initial matter, the Complaint contains no direct allegation (*i.e.*, requiring no inferences) that Apple specifically intended for either itself or for Google to monopolize any relevant market.[7]  The Complaint is equally devoid of conduct from which the requisite specific intent to monopolize could be inferred.  The alleged horizontal agreement—*i.e.*, Plaintiffs' allegations that Apple agreed not to compete with Google, *e.g.*, Compl. ¶¶ 2, 136—cannot serve as a basis from which to infer specific intent, as even if Plaintiffs had adequately alleged such an agreement (which they have not, as explained *supra* pp. 6-11 ), a purportedly voluntary agreement not to compete is not "clearly exclusionary" within the meaning of Section 2.  *See Stanislaus*, 2011 WL 2678879, at *13 (holding that specific intent to monopolize could not be inferred from an "agreement to exit the market").

Nor can the requisite specific intent be inferred from Plaintiffs' allegations of a vertical agreement.  That Apple entered into a non-exclusive vertical distribution agreement pursuant to which it agreed to make Google the default search engine for its products, Compl. ¶¶ 88-94, does not permit the inference that Apple specifically intended to exclude Google's competitors from any relevant market.  For one thing, even *exclusive* distributorships are "not, standing alone, a violation of antitrust laws."  *Rutman Wine Co.*, 829 F.2d at 735-36.  For another, Apple's decision to set Google as the default search engine promotes competition in the markets in which Apple does participate (*i.e.*, for certain devices and web browsers) by reducing friction for users and providing them with high-quality search results.  And while the Complaint makes much of Apple's supposed "motive . . . to share in [Google's] profits," Compl. ¶ 43, a "common motive to increase profits" is "not enough" to support

---

[7] Indeed, Plaintiffs entirely "fail[] to allege a specific intent by [Apple] to empower one of [Apple or Google] with monopoly power," *Standfacts*, 405 F. Supp. 2d at 1152, and the words "specific intent," do not appear anywhere in the Complaint.  Likewise, Plaintiffs' suggestion that "Google and Apple have *shared* monopoly control," Compl. ¶ 115 (emphasis added), is generally not a cognizable theory under Section 2, *see Standfacts*, 405 F. Supp. 2d at 1152.

- 14 -

an inference of specific intent to monopolize.  *Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, 2018 WL 5891743, at *4 (D. Haw. Nov. 9, 2018) (citation omitted).  "[I]n the absence of anticompetitive conduct from which [Apple's] specific intent may be inferred," Plaintiffs' Section 2 claim necessarily fails against all Defendants.  *Rutman Wine Co.*, 829 F.2d at 735.

### III.   The Complaint Fails To Allege Facts Sufficient To Establish Antitrust Standing Because It Fails To Satisfy Any of the Antitrust Standing Factors.

Private plaintiffs bringing antitrust suits must establish "antitrust standing."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999).  To assess antitrust standing, courts consider several factors:  "(1) the nature of the plaintiffs' alleged injury . . .; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."  *Id.*  The Complaint here fails under all these factors.

1.   *Antitrust Injury*:  To establish an antitrust injury, a plaintiff must "allege [a] credible injury caused by the [allegedly] unlawful conduct."  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).  The injury must "flow[] from that which makes the conduct unlawful," and be "the type the antitrust laws were intended to prevent."  *Id.*; *see also Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) ("Increased concentration may make anticompetitive activity more likely, but in and of itself it does not amount to antitrust injury.").  "Because antitrust injury depends less on the plaintiffs' proof than on the logic of its complaint and its theory of injury, this inquiry is well-suited to prediscovery disposition."  *McCabe Hamilton & Renny Co. v. Matson Navigation Co.*, 2008 WL 2233740, at *4 (D. Haw. Apr. 9, 2008) (cleaned up).

Plaintiffs' alleged injuries here are wholly conclusory and far too vague to give any assurance that they are the type the antitrust laws are designed to prevent, particularly given that they are unsupported by any factual allegations.  Plaintiffs assert that "because of" Google and Apple's alleged agreement not to compete, "prices have been higher, production has been lower, innovation has been suppressed, quality has been less, and user choice has been eliminated."  Compl. ¶ 139.  The Complaint elsewhere alleges that Google "stunted innovation in new products," "reduc[ed] the quality of general search services (as related to privacy, data protection, and use of consumer data)," and "forced" Plaintiffs "to bear the added expense that results from distorted and steered search

results." *Id.* ¶¶ 48-49.  Of course, Plaintiffs could not be harmed by "higher prices" given that they did not purchase anything, directly or indirectly, from Google in the alleged relevant markets—indeed, consumers use Google's search services *for free*.  It is impossible to overpay for free services. Regardless, the asserted injuries are exactly the kind of "naked assertions devoid of further factual enhancement" that "are insufficient to survive a motion to dismiss." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 997-98 (N.D. Cal. 2020) (dismissing Section 1 and 2 claims for failure to allege antitrust injury "in a non-conclusory manner"); *aff'd in part, appeal dismissed in part sub nom. Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, 2022 WL 595696 (9th Cir. Feb. 28, 2022).  Antitrust standing requires allegations connecting the alleged harms "to specific factual circumstances" in the case.  *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1089 (E.D. Cal. 2021) (bare references to "increased prices and reduced quality" insufficient); *see NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1074 (N.D. Cal. 2018) (naked allegations of "steering" insufficient).  Plaintiffs' conclusory list of harms is not enough, as "there are no facts alleged that would render these threatened injuries more concrete than hypothetical." *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1029 (N.D. Cal. 2015) (finding "allegations of hypothetical loss of consumer choice and innovation" to be "entirely too conclusory and speculative").

Similarly, Plaintiffs fail to allege any injury that "flows from that which makes defendants' acts unlawful"—as opposed to legitimate agreements and business realities.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  The Complaint premises its injury on Apple refraining from competing in the search engine and search advertising markets.  But the Complaint has not—and cannot—allege that Apple is "ready to compete" (with the necessary technology) in those markets.  *See Space Expl. Technologies Corp. v. Boeing Co.*, 2006 WL 7136649, at *4 (C.D. Cal. May 12, 2006), *aff'd*, 281 F. App'x 769 (9th Cir. 2008).  Nor does it allege any facts plausibly suggesting that Apple *wants* to compete in those markets.  The Complaint cannot establish an antitrust injury by simply wishing that Apple would launch products that it never has before.

Because antitrust injury is a threshold requirement to the antitrust standing analysis—and because the Complaint fails to state a cognizable injury flowing from allegedly unlawful conduct in the pertinent market—the Court can grant Defendants' motion to dismiss on those grounds alone. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986) (stating that antitrust injury is "necessary" to establish antitrust standing); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) ("[T]he first factor—antitrust injury—is mandatory.").

2. *Directness of the Injury*:  Even if the Court finds that the Complaint plausibly alleges antitrust injury, that injury certainly is not direct.  To assess directness, courts "look to the chain of causation between [Plaintiffs'] injury and the alleged restraint in the market."  *Am. Ad Mgmt.*, 190 F.3d at 1058.  "There 'must be not a mere causal link, but a direct effect.'"  *Jacobsen v. Katzer*, 2006 WL 3000473, at *3 (N.D. Cal. Oct. 20, 2006) (quoting *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000)).  Here, Plaintiffs fail to allege that any direct effect exists.  Based on the allegations, Plaintiffs' injuries occurred only if, but-for the alleged agreement not to compete, (1) Apple would have developed its own comparable search technology to replace Google Search; (2) Apple would have launched a search engine product (which it has never done); (3) Apple would have used its yet-to-be-developed search product as the default search provider on Apple devices; (4) Apple would have captured a significant portion of the relevant search market; and (5) Apple's new search business would have increased competition in such a way that forced Google and its competitors to "innovate" and provide better quality search results.  Courts routinely dismiss claims on antitrust standing grounds where, as here, "the chain of causation between [plaintiff's] injury and the alleged restraint . . . contains several somewhat vaguely defined links."  *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983); *see also, e.g.*, *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1117 (E.D. Cal. 2002) (rejecting claims that "depend[ed] on a multitude of speculative intervening events"); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663, at *7 (N.D. Cal. Apr. 29, 2011) (rejecting theory of injury as "simply too attenuated").

3. *Speculative Measure of the Harm*:  The speculative nature of Plaintiffs' injuries further weighs heavily against finding antitrust standing.  "[I]t is appropriate for § 4 purposes 'to consider

whether a claim rests at bottom on some abstract conception or speculative measure of harm.'" *Associated Gen. Contractors*, 459 U.S. at 543 (citation omitted).  Here, Plaintiffs' claims are premised on speculation unsupported by any factual allegations.  Plaintiffs' theory assumes that Apple would have been "ready to compete" (with the necessary technology) in an undefined search market, *Space Expl. Technologies Corp.*, 2006 WL 7136649, at *4, that Apple would have actually launched a commercial internet search engine product, that Apple would have obtained a significant portion of the search market, and that these speculative actions would have affected Google's search engine quality.   And even if Plaintiffs could prove causation, it would require judicially unmanageable speculation to calculate any differences in the "quality," "privacy," or "use of consumer data" between Google's widely used search services and the services available in a hypothetical world in which Apple competed with its own search engine.  *See City of Oakland*, 20 F.4th at 459 ("The [Plaintiff] has not alleged—and there is no way of knowing—what would have occurred in a more competitive marketplace."); *Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006) (affirming dismissal where plaintiffs alleged defendant "deprived consumers of competitive technology" because such a claim required court "to create in hindsight a technological universe that never came into existence," an exercise that "would be entirely speculative" because harm "could not possibly be adequately measured").  This factor undermines any finding of antitrust standing here.  *Associated Gen. Contractors*, 459 U.S. at 542-43.

4. *Risk of Duplicative Recovery*:  The relief sought in the Complaint also creates the potential for duplicative recovery.  "The risk to be avoided under [the duplicative recovery] factor is that potential plaintiffs may be in a position to assert conflicting claims to a common fund . . . thereby creating the danger of multiple liability."  *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (citation omitted).  Here, the Complaint does just that by asking the Court to "[r]equire Google and Apple to disgorge the payments . . . made by Google to Apple" under the alleged agreements, in addition to requiring treble damages.  Compl. ¶¶ 161, 163.  For the reasons explained below, disgorgement is not available in private actions raised under the Sherman Act.  *See infra* p.24.  But, assuming such damages are recoverable, it creates the risk of multiple liability.  *Cf. In re Generic*

- 18 -

*Pharms. Pricing Antitrust Litig.*, 2022 WL 2047964, at \*4 (E.D. Pa. June 7, 2022) (explaining that permitting disgorgement as a remedy would "undermine the policy against duplicative recoveries set forth by the Supreme Court" (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).  So, too, does the fact that the plaintiff in *Crane* seeks the very same damages and disgorgement subject to Plaintiffs' claim for disgorgement here.  *See Crane*, Am. Compl. ¶¶ 161(f), 162(c)–(f), ECF No. 39.

5.   *Complexity in Apportioning Damages*:  Finally, even if no risk of duplicative recovery exists, "the fact that [Plaintiffs'] alleged injuries are both indirect and derivative would require a complex trial to apportion damages." *Toscano*, 201 F. Supp. 2d at 1118-19.  Even if it were possible to determine the damages from reduced search-quality experience—which is hopelessly speculative, *see supra*—apportioning the proper share to Plaintiffs versus other search engine users would pose innumerable complex proof issues, including, for example, issues related to quantifying supposedly "distorted" search results, *see* Compl. ¶ 48, and the extent to which those results supposedly injured each of the Plaintiffs.  The Complaint has pled no facts whatsoever to establish that Plaintiffs could properly apportion damages, much less even quantify them.

\*     \*     \*

In sum, the Complaint fails to allege facts sufficient to establish an antitrust injury under the dispositive first factor of the antitrust standing inquiry, and the remaining factors independently show that Plaintiffs lack antitrust standing in this case.

## IV.   The Statute of Limitations and Doctrine of Laches Preclude Plaintiffs' Claims.

Even if Plaintiffs stated cognizable claims and had antitrust standing, the statute of limitations and doctrine of laches preclude this action or, at minimum, preclude Plaintiffs from recovering damages from before April 22, 2018.  Private actions brought under Section 4 of the Clayton Act for damages are subject to a four-year limitations period.  15 U.S.C. § 15b.  Private actions brought under Section 16 of the Clayton Act for injunctive relief are subject to the doctrine of laches, with courts using the four-year limitations period as a "guideline" in computing the laches period.  *E.g.*, *Aurora Enters., Inc. v. NBC*, 688 F.2d 689, 694 (9th Cir. 1982).  Under the Clayton Act, "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's

business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.,* 401 U.S. 321, 338 (1971).  The Complaint alleges that Defendants supposedly formed their conspiracy in 2005 and does not allege any new conspiratorial conduct on or after April 22, 2018; as such, Plaintiffs' claims are time-barred because they cannot "show that an exception to the accrual rule or a tolling doctrine applies." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 880 (N.D. Cal. 2015).

## A.    Plaintiffs Do Not Allege a Continuing Violation.

Plaintiffs may seek to circumvent the limitations period by attempting to invoke the "continuing violation" exception, whereby the statute of limitations may restart if the defendant commits an "overt act" within the limitations period that: (1) is "new and independent . . . [and] not merely a reaffirmation of a previous act," and (2) "inflict[s] new and accumulating injury on the plaintiff." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987).  If, however, a plaintiff's injury "necessarily result[ed] from a pre-limitations act by [a] defendant," then "no new cause of action accrues for any subsequent acts committed by [that] defendant within the limitations period [b]ecause those acts do not injure [the] plaintiff." *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71 (9th Cir. 1979) (internal quotation marks omitted).  Here, Plaintiffs allege a fanciful conspiracy that dates to "at least 2005," Compl. ¶ 158, but they come up short on conduct within the past four years from which to bootstrap their claims.

Plaintiffs cannot simply rely on their allegedly experiencing lower-quality Google Search for free during the limitations period, *id.* ¶ 47, because the continuing violation exception requires new, overt acts *by a defendant*.  *Pace Indus.*, 813 F.2d at 237 (noting that "when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations"); *cf. Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir.1986) (holding that new overt act occurred each time tour operators' shepherded tourists away from plaintiffs' shop in exchange for payment).  So it is not enough that Plaintiffs claim recent injuries.  *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1072 & n.5 (N.D. Cal. 2016) (dismissing case with prejudice

after rejecting continuing violation exception where diminished salaries and lost job opportunities occurred within limitations period but alleged anti-solicitation agreements occurred outside).

The only alleged in-limitations "acts" by Defendants are (1) that Messrs. Cook and Pichai met in 2018, purportedly "to discuss how Apple could further drive search advertising revenue to Google and to increase the amount of Apple's share of the profit-sharing agreement," and (2) that after the meeting an Apple employee wrote to a Google employee, "Our vision is that we work as if we are one company." *Id.* ¶¶ 129-30. These alleged "acts" fail to establish a continuing violation sufficient to restart the limitations and laches periods for two reasons.

*First*, Plaintiffs' allegations are far too ambiguous and conclusory to plausibly suggest that anything was actually agreed upon at this 2018 meeting, and the alleged "vision" communication is not an overt act. *See Garrison*, 159 F. Supp. 3d at 1071 (finding that allegations that defendant "continued to enter into new Secret Agreements and add companies to the 'no hire' list 'well into 2012'" were conclusory and that plaintiffs "fail[ed] to identify a single new agreement" during the limitations period).[8] Even if these allegations were credited, at most they describe a reaffirmation of a pre-limitations agreement, which cannot qualify as an overt act. *See Ryan*, 147 F. Supp. 3d at 884-85 (rejecting the sufficiency of allegations that the defendant "renewed" and "maintained and reaffirmed its preexisting non-solicitation agreements").

*Second*, these alleged in-limitations acts could not plausibly inflict any new or accumulating injury on Plaintiffs. Defendants' supposed conversations about increasing search advertising profits bear no relation to the abstract harms Plaintiffs actually allege—*i.e.*, stunted innovation and worse product quality, Compl. ¶¶ 48-49, 146-47. Plaintiffs (*consumers* of Google's search engine) have not claimed harm from increased prices for search *advertising*; indeed, that supposed "harm" is not

---

[8] Likewise conclusory, and thus insufficient to restart the limitations period, are Plaintiffs' allegations that Defendants: engaged in "continued violations" of the Sherman Act, Compl. ¶ 1; engaged in and "re-affirmed" a "continued combination to eliminate competition," *id.*. ¶ 10; "continued" their supposed conspiracy "under Messrs. Cook and Pichai," *id.* ¶ 12; and attended "secret meetings" at which that conspiracy has been "continuously confirmed, re-confirmed, and amended," *id.* ¶¶ 52-54. *Ryan*, 147 F. Supp. 3d at 884 (holding that plaintiffs' allegation that defendant "continued to add companies" to a "Hands-off List" was "merely conclusory").

1    part of the violations they allege.  *See Litovich v. Bank of Am. Corp.*, 2021 WL 4952034, at *27

2    (S.D.N.Y. Oct. 25, 2021) (holding that "higher prices" were not "part of" the group boycott at issue

3    but rather were an "effect" of the boycott that could "not start the statutory period running again").[9]

4    Nor can Plaintiffs' conclusory allegations of supposed innovation- and quality-related "harms"

5    flowing from Apple's absence from the search marketplace constitute new or accumulating injury.

6    These purported "harms," even if they existed, would necessarily have resulted from alleged actions

7    that occurred well before the limitations period, so they cannot support a continuing violation.

8    *Reveal Chat Holdco LLC v. Facebook, Inc.*, 2021 WL 1615349, at *6 (N.D. Cal. Apr. 26, 2021)

9    (finding defendant's "cloning" of plaintiffs' product features did not inflict "any new and

10   accumulating injury . . . beyond [plaintiffs'] pre-existing injury via exclusion"); *Bay Area Surgical

11   Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 999 (N.D. Cal. 2015) (holding plaintiffs'

12   allegations that defendants engaged in a "continu[ous] stream of communications" and that plaintiffs

13   "still remain[ed] an out-of-network provider" failed to establish "any new or accumulating injury").

14       **B.    Plaintiffs' Allegations of Fraudulent Concealment Are Insufficient.**

15           In an apparent attempt to dodge these limitations-period hurdles, the Complaint includes

16   conclusory allegations of fraudulent concealment.  "A statute of limitations may be tolled if the

17   defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff,

18   acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*,

19   681 F.3d 1055, 1060 (9th Cir. 2012).  To plead fraudulent concealment, a complaint must allege that:

20   "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual

21   or constructive knowledge of the facts giving rise to his claim as a result of the defendant's

22   affirmative acts; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to his

23   claim." *Garrison*, 159 F. Supp. 3d at 1073  (cleaned up).  Plaintiffs bear the burden of pleading these

24

25   [9] Thus, even assuming that each sale of allegedly price-fixed products "itself" may constitute "an
     overt act," *Litovich*, 2021 WL 4952034, at *27, and that advertisers paid for Google's allegedly price-
26   fixed products during the limitations period, Plaintiffs still have a problem: they cannot recover for
     or rely on such harm to restart the statute of limitations. *See Chandler v. Phoenix Servs.*, 2020 WL
27   1848047, at *12 (N.D. Tex. Apr. 13, 2020) (noting the "plaintiff itself, not some other third party"
28   must be "injured by the continuing conspiratorial conduct" (internal quotation marks omitted)).

1    elements with particularity and must do so under the heightened pleading standard of Federal Rule

2    of Civil Procedure 9(b).  *Id.*

3          Plaintiffs' four sentences addressing fraudulent concealment do not come close to satisfying

4    that standard.  Compl. ¶¶ 158-60.  For one, Plaintiffs fail to allege with particularity that Defendants

5    engaged in "affirmative conduct to conceal the underlying claims."  *Thorman v. Am. Seafoods Co.*,

6    421 F.3d 1090, 1092 (9th Cir. 2005).  Instead, the Complaint includes a single conclusory assertion:

7    "[T]he Defendants took affirmative steps to conceal their conspiracy in private and clandestine

8    meetings between their CEOs."  Compl. ¶ 158.  But, obviously, unnamed "affirmative steps" cannot

9    satisfy Rule 9(b)'s particularity requirement.  The Complaint must allege "'the who, what, when,

10   where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

11   (9th Cir. 2003) (citation omitted); *see also Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)

12   ("The complaint must specify such facts as the times, dates, places, benefits received, and other

13   details of the alleged fraudulent activity.").  And it flat out fails to do so.  It does not include any

14   "allegation regarding what was said at [the alleged] meetings, let alone that what was said was in any

15   way misleading to [Plaintiffs], as is required to plead fraudulent concealment."  *Garrison v. Oracle*

16   *Corp.*, 2015 WL 1849517, at *9 (N.D. Cal. Apr. 22, 2015).

17         In addition, the Complaint does not "plead with particularity . . . the facts supporting

18   [Plaintiffs'] due diligence."  *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir.

19   1988).  It merely states that "Plaintiffs could not have discovered Defendants' violations at any time

20   prior to this date by the exercise of due diligence because of the fraudulent and active concealment

21   of the conspiracy by Defendants through various means and methods designed to avoid detection."

22   Compl. ¶ 159.  But that contention does not even address the right question.  Claiming that violations

23   *could not have been discovered* with due diligence is not the same as claiming that Plaintiffs, in fact,

24   *acted with due diligence*.  More importantly, the Complaint's assertion is the exact type of "formulaic

25   recitation of the elements of a cause of action" that the Supreme Court has rejected—a pure "legal

26   conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. 678 (citation omitted).  Put simply,

27   Plaintiffs "must plead facts supporting [their] showing of diligence," *Peterson v. Sutter Med. Found.*,

28

2022 WL 316677, at *10 (N.D. Cal. Feb. 2, 2022), and they do not even attempt to do so.  Thus, the Court should dismiss Plaintiffs' claims as wholly time barred or, at minimum, dismiss any claims arising from injuries that occurred before April 18, 2018, or injuries that were caused by acts that occurred before April 18, 2018.

## V.   The Court Should Dismiss the Complaint's Requests for Public Injunctive Relief, Disgorgement, and Divestiture.

Claims for recovery that are "precluded as a matter of law may be dismissed under Federal Rule of Civil Procedure 12(b)(6)."  *TSI USA LLC v. Uber Techs.*, 2018 WL 4638726, at *7 (N.D. Cal. Sept. 25, 2018); *accord Lee v. Kitchables Prods.*, 2021 WL 3173253, at *4 (N.D. Cal. July 27, 2021).  The Complaint broadly includes claims for "[p]ublic [i]njunctive [r]elief."  Compl. ¶¶ 162, 163(a)-(f).  But Plaintiffs simply cannot seek public injunctive relief under the federal antitrust laws.  *See, e.g.*, *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020) ("The public injunction is a creature of California law."), *aff'd*, 2022 WL 474166 (9th Cir. Feb. 16, 2022); *cf. California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (explaining that the phrase "threatened loss or damage" in Section 16 authorizes suit only by a private party seeking to remedy "his own interests").

The Complaint more specifically includes a claim for disgorgement, asking this Court to "disgorge all payments . . . made by Google to Apple" under the alleged agreements.  Compl. ¶¶ 163(a)-(c).  But the Clayton Act authorizes no such relief.  Section 4 provides for treble "damages," 15 U.S.C. § 15(a), and Section 16 permits prospective "injunctive relief . . . against threatened loss or damage," *id.* § 26.  Disgorgement qualifies as neither.  *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016) ("[T]he Ninth Circuit disallows private use of Section 16 to pursue disgorgement."); *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (same).

The Complaint's request for divestiture—asking the Court to divide both Google and Apple "into separate and independent companies," Compl. ¶ 163(d)—is likewise unavailable here.  To obtain permanent injunctive relief, a plaintiff must prove, *inter alia*, "that it has suffered an irreparable injury" and "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury."  *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007).

Plaintiffs' conclusory assertions of injury are insufficient to allege any harm, *see supra* pp. 15-19, let alone irreparable harm. *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1070-75 (N.D. Cal. 2015) (concluding that "conclusory" and "utterly speculative" claims were insufficient to establish irreparable harm). And even assuming the 27 plaintiffs in this action somehow suffered any harm by being "forced to bear the expense that results from distorted and steered search results," *id.* ¶ 48, they cannot show that such harm—while utterly speculative and unsusceptible to quantification—is not redressable by declaratory relief or individualized money damages such that they instead require "the extreme remedy of divestiture." *Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 322 (3d Cir. 2007)). Indeed, Plaintiffs expressly seek both money damages and various "decree[s]" that Defendants' actions violated federal antitrust law. Compl. ¶ 161(a)-(f). Ultimately, the "[h]ypothetical anticompetitive conduct, speculative monopoly power, and remote injuries" that Plaintiffs allege "do not merit [this] extreme remedy." *Taleff*, 828 F. Supp. 2d at 1122 (quoting *Broadcom Corp.*, 501 F.3d at 322).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint for failure to state a claim. And because any attempt by Plaintiffs to amend their Complaint would be futile in light of the inherent implausibility of their claims and injuries, it should do so with prejudice. *Kendall*, 518 F.3d at 1051 ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").

DATED:  June 24, 2022                    **WILLIAMS & CONNOLLY LLP**

By: /s/ *John E. Schmidtlein*

John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
Email:       jschmidtlein@wc.com
Email:       cpruski@wc.com

1

*Attorneys for Defendants Google LLC, Alphabet Inc.,*
*XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

2

DATED:  June 24, 2022

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

3

By: /s/ *Steven C. Sunshine*

4

Steven C. Sunshine (admitted *pro hac vice*)

5

Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

1440 New York Avenue, N.W.
Washington, DC 20005-2111

7

Telephone: (202) 371-7000
Facsimile:  (202) 393-5760

8

Email:      steven.sunshine@skadden.com
Email:      julia.york@skadden.com

9

10

Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

11

525 University Avenue
Palo Alto, California 94301

12

Telephone: (650) 470-4660
Facsimile:  (213) 621-5430

13

Email:      jack.dicanio@skadden.com

14

Karen Hoffman Lent (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15

One Manhattan West
New York, New York 10001

16

Telephone: (212) 735-3000
Facsimile:  (212) 735-2000

17

Email:      karen.lent@skadden.com

18

*Attorneys for Defendants Apple Inc. and Tim Cook*

19

20

21

22

23

24

25

26

27

28

- 26 -

1

**SIGNATURE ATTESTATION**

2        I, John E. Schmidtlein, am the ECF User whose ID and password are being used to file this

3  document. In compliance with Civil Local Rule 5-1, I hereby attest that all counsel whose e-

4  signatures (/s/) appear on this document concurred in this filing.

5
   DATED: June 24, 2022                                    By: /s/ *John E. Schmidtlein*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28