| | |
|---|---|
| Joseph M. Alioto, Esq. (SBN 42680)<br>Tatiana V. Wallace, Esq. (SBN 233939)<br>ALIOTO LAW FIRM<br>One Sansome Street, Suite 3500<br>San Francisco, CA 94104<br>Telephone: (415) 434-8900<br>Email: jmalioto@aliotolaw.com<br><br>*Attorneys for Plaintiffs*<br><br>(Additional counsel listed on signature page) | John E. Schmidtlein (SBN 163520)<br>Carol J. Pruski (SBN 275953)<br>WILLIAMS & CONNOLLY LLP<br>680 Maine Ave., S.W.<br>Washington, D.C. 20024<br>Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029<br>Email: jschmidtlein@wc.com<br>Email: cpruski@wc.com<br><br>*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*<br><br>Steven C. Sunshine (*pro hac vice*)<br>Jack P. DiCanio (CA State Bar No. 138752)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>525 University Avenue<br>Palo Alto, CA 94301<br>Telephone: (650) 470-4660<br>Facsimile: (213) 621-5430<br>Email: jack.dicanio@skadden.com<br><br>*Attorneys for Defendants Apple Inc. and Tim Cook* |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MARY KATHERINE ARCELL, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., APPLE INC., TIM COOK, SUNDAR PICHAI, and ERIC SCHMIDT,<br><br>　　　　Defendants. | Case No. 5:22-cv-02499-EJD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Hearing Date: January 26, 2023<br>Time:　　　　10:00 a.m.<br>Place:　　　　Courtroom 4<br>Judge:　　　　Hon. Edward J. Davila<br><br>Complaint Filed: April 22, 2022 |

**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT**

Pursuant to Civil Local Rule 16-9, the Northern District of California's October 20, 2022 Standing Order on Contents of Joint Case Management Statement, and this Court's August 31, 2022 Standing Order for Civil Cases, Plaintiffs Mary Katherine Arcell, et al., ("Plaintiffs") and Defendants Google LLC, Alphabet Inc., XXVI Holdings, Inc., Sundar Pichai, and Eric Schmidt ("Google Defendants"), Apple Inc. and Tim Cook ("Apple Defendants"), hereby submit the following joint statement and Rule 26(f) report.

**1. Jurisdiction and Service**

This Court has subject matter jurisdiction over the federal antitrust law claims alleged in Counts One and Two under 28 U.S.C. § 1331 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. No issues exist regarding personal jurisdiction or venue, and no Defendants remain unserved.

**2. Facts**

    **a. Plaintiffs' Statement**

This is a private antitrust action brought by Users/Consumers of Google and Apple's services under Sections 4 and 16 of the Clayton Antitrust Act. Plaintiffs seek damages and injunctive relief, including divestiture and disgorgement.

Defendant Google has ninety-four percent (94%) of the search market by devices and eighty-nine percent (89%) of the search market by computers. In short, Defendant Google is in a monopoly position in the search market. Fifty percent (50%) of searches is done on Apple devices. Defendant Google paid Defendant Apple billions of dollars. The consideration for the payments was that Defendant Apple would not go into the search business, and that it would give Google discriminatory treatment for all the Apple devices.

Defendants Google and Apple share revenue and profits. The Defendants' division of the market is a violation of the antitrust laws of the United States. *See Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990). Profit sharing is *per se* illegal under the antitrust laws of the United States. *See Citizen Publishing Company v. United States*, 394 U.S. 131 (1969).

The top executives of the Defendants, including Defendants Tim Cook, Sundar Pichai and Eric Schmidt, all had private meetings in which these agreements were formed and carried out. A top Apple executive stated to his counterpart at Google that the reason for their companies' agreements was because they envision them to be "one company." In addition, the CEO of Google said, we are "merging without having to merge."

Since Google has ninety percent (90%) of the market and has taken steps to maintain its dominant position in the market, in many cases together with Apple, Google has the power to exclude competition and fix prices in violation of the U.S. antitrust laws. *See United States v. Aluminum Co. of America (Alcoa)*, 377 U.S. 271 (1964); *United States v. American Tobacco Co.*, 221 U.S. 106 (1911); *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690 (1962).

Many of the allegations in Plaintiffs' Complaint have already been admitted by Defendant Google in Google's Answer to the Government's Complaint in the proceedings filed in *United States v. Google*, Case No. 1:20-cv-03010-APM (DC 2020).

### b. Defendants' Statement

Plaintiffs sue Defendants for alleged violations of the Sherman Antitrust Act. Since 2005, Apple and Google have entered into a series of publicly reported agreements under which Apple integrated Google's general internet search engine into Apple's Safari web browser in return for a share of Google's advertising revenue generated by searches on the Google search engine by Safari users. The deal did not require Google to be the exclusive search provider available on Apple products or even the only search engine promoted by Apple on its Safari web browser. As part of the agreement, Apple set Google as the pre-set default search provider in its Safari web browser in the United States because Google offered the highest quality results. This type of vertical agreement between search provider companies and web browser companies is common in the industry, and the Google-Apple agreement has been widely reported for over 15 years. Apple and Google executives have met periodically over the years as part of the ongoing working relationship created by these agreements.

Plaintiffs are users of Google Search who have allegedly endured a lower quality search experience and suffered vague monetary and privacy harms because Apple does not operate its own

search engine. Compl. ¶¶ 48-49, ECF No. 1.  They claim that the longstanding, publicly reported *vertical* agreement between Apple and Google reflected a separate, clandestine *horizontal* agreement under which Apple agreed with Google not to compete in providing search services.  *Id.* ¶¶ 2-4, 23, 40, 93, 97, 103, 111-12, 114, 132, 134.  The Complaint asserts that company executives hatched this conspiracy during secret meetings at Google's headquarters, a shopping mall café, Steve Jobs's living room, and public restaurants over dinner.  *Id.* ¶¶ 100, 102, 120, 124-25.  And this supposed illegal scheme was allegedly ratified by both companies' CEOs, chairmen, and boards of directors. *Id.* ¶¶ 9-10, 52-54.  At the same time, Plaintiffs allege that company executives brazenly admitted the conspiracy through public comments, such as when former Google CEO Eric Schmidt joked to a gathered audience many years ago at the launch of the iPhone: "If we just sort of merged the companies, we could just call them AppleGoo."  *Id.* ¶ 98.

On April 22, 2022, Plaintiffs sued Defendants.  Compl., ECF No. 1.  The Complaint contends that the alleged agreement between Google and Apple not to compete is a *per se* violation of Section 1 of the Sherman Antitrust Act, *id.* ¶¶ 135-47, and it claims that Defendants conspired to monopolize in violation of Sherman Act Section 2, *id.* ¶¶ 148-57.  Plaintiffs request treble damages, declarative relief, injunctive relief voiding and prohibiting any profit-sharing and exclusivity agreements, disgorgement of profits and payments exchanged, and the dismantling of both Apple and Google into smaller companies.  *Id.* ¶ 161.

The Complaint fails to plausibly allege any claim for relief against Defendants for the numerous reasons set forth in Defendants' Rule 12(b)(6) motion to dismiss filed on June 24, 2022. ECF No. 25.  Indeed, not only do Plaintiffs fail to allege claims under Section 1 or Section 2 of the Sherman Act, but their claims also fail for lack of antitrust standing and are time-barred by the four-year statute of limitations period and the doctrine of laches.  *Id.*

**3. Legal Issues**

   **a. Plaintiffs' Statement**

The Defendants, like almost all defendants in antitrust cases in the last few years, have taken the position that they will refuse any discovery until after the Court rules on the Defendants' initial motions to dismiss.  The Defendants take this position notwithstanding the federal rules of civil

procedure's requirements that defendants must provide declarations demonstrating good cause in order to curtail discovery. Consequently, in every major antitrust case at least in the last decade, defendants automatically file a motion to dismiss and then refuse to engage in discovery until the Court decides the motions. This pressures the judge to rule on substantive motions before any discovery is had in the case.

### b. Defendants' Statement

The following legal issues are currently in dispute:

i. Whether the Complaint adequately states a claim under Section 1 of the Sherman Act where it does not allege facts that plausibly suggest the existence of a *per se* agreement not to compete; and whether the claims against Defendants Cook, Schmidt, and Pichai fail because the Complaint alleges no "inherently wrongful conduct" or their "knowing approval" of "inherently wrongful acts."

ii. Whether the Complaint adequately states a claim under Section 2 of the Sherman Act where it does not allege facts that plausibly establish (i) a conspiracy among Defendants; (ii) a cognizable antitrust relevant market; and (iii) that Apple had a specific intent to monopolize;

iii. Whether the Complaint's claims fail for lack of antitrust standing because the Plaintiffs plead no antitrust injury and rely on an indirect, speculative, duplicative, and impossibly complex theory of harm;

iv. Whether the four-year statute of limitations and the doctrine of laches bars Plaintiffs' claims;

v. Whether Plaintiffs are not authorized to seek disgorgement and public injunctive relief in this case.

### 4. Motions

On June 24, 2022, Defendants filed a joint motion to dismiss the Complaint. ECF No. 25. Plaintiffs filed an opposition on July 22, 2022. ECF No. 30. Defendants replied on August 12, 2022. ECF No. 35. On October 26, 2022, the Clerk's Office notified the parties that the Court took

the motion to dismiss under submission without oral argument. ECF No. 46. The motion to dismiss is pending.

On August 18, 2022, Defendants filed a motion to stay discovery. ECF No. 36. Plaintiffs filed an opposition on August 31, 2022. ECF No. 37. Defendants replied on September 8, 2022. ECF No. 38. On October 31, 2022, the Court granted Defendants' motion and stayed discovery pending the resolution of Defendants' motion to dismiss. ECF No. 47.

On September 19, 2022, while the motion to stay discovery was still pending, Plaintiffs filed a motion to compel interrogatory responses. ECF No. 39. On September 21, 2022, Magistrate Judge DeMarchi struck the motion to compel as out of compliance with the Court's discovery dispute resolution procedures. ECF No. 40. The parties then submitted a joint letter to Magistrate Judge DeMarchi detailing their dispute on October 3, 2022, ECF No. 42, and Magistrate Judge DeMarchi denied Plaintiffs' request to compel interrogatory responses on October 12, 2022, ECF No. 44. On October 20, 2022, Plaintiffs filed a motion for relief from that order. ECF No. 45. Defendants filed an opposition on November 3, 2022. ECF No. 48. On November 10, 2022, Plaintiffs filed a reply brief that acknowledged that the Court's order granting a stay of discovery (at ECF No. 47) mooted their motion. ECF No. 50.

On November 10, 2022, Plaintiffs filed a demand for oral argument on Defendants' pending motion to dismiss. ECF No. 49. On November 14, 2022, the Court struck Plaintiffs' demand for oral argument, under Rule 12(f)(1). ECF No. 51. On December 30, 2022, Plaintiffs filed a motion for leave to file a motion for reconsideration of the Court's Order denying their motion for oral argument. ECF No. 52.

Plaintiffs respectfully submit that there is a constitutional right to a hearing on motions to dismiss or on any other dispositive motion.

Further motion practice, including motions for summary judgment, may become necessary as the case develops.

    **a. Plaintiffs' Statement**

Plaintiffs will move for summary judgement based upon the admissions already in the record and based upon the upcoming discovery that will augment those admissions. This filing presents

one of those extraordinary and very unusual cases in which summary judgment will be granted in favor of the plaintiff.  Plaintiffs' case is based upon the self-same factual pattern held to be illegal in by the Supreme Court in the cases of *Citizen Publishing Company v. United States, 394 U.S. 131 (1969, Douglas, J.)* (where summary judgment was affirmed for the plaintiff) and *Palmer v. BRG of Georgia, 498 U.S. 46, 47-49 (1990, Per Curiam)*.  The Supreme Court also affirmed the entry of summary judgment in favor of a plaintiff in its opinion in <u>Northern Pac. R. Co. v. United States, 356 U. S. 1, 5</u> (1958, Black, J.).

In *Citizen*, the Court held at page 134:

"The purpose of the agreement was to end any business or commercial competition between the two papers and to that end three types of controls were imposed. First was price fixing. . . Second was profit pooling. . . . . Third was a market control. It was agreed that neither the Star nor the Citizen . . . would engage in any other business in Pima County. . .in conflict with the agreement. Thus competing publishing operations were foreclosed.

"All commercial rivalry between the papers ceased. . . .

"The Government's complaint charged an unreasonable restraint of trade or commerce in violation of § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1, and a monopoly in violation of § 2, 15 U. S. C. § 2. The District Court, after finding that the joint operating agreement contained provisions which were unlawful per se under § 1, <u>granted the Government's motion for summary judgment.</u>

"We affirm the judgment. The § 1 violations are plain beyond peradventure. Price-fixing is illegal per se. <u>United States v. Masonite Corp., 316 U. S. 265, 276</u>. Pooling of profits pursuant to an inflexible ratio at least reduces incentives to compete for circulation and advertising revenues and runs afoul of the Sherman Act. <u>Northern Securities Co. v. United States, 193 U. S. 197, 328</u>. The agreement not to engage in any other publishing business in Pima County was a division of fields also banned by the Act. <u>Timken Co. v. United States, 136\*136 341 U. S. 593</u>. <u>The joint operating agreement exposed the restraints so clearly and unambiguously as to justify the rather rare use of a summary judgment in the antitrust field.</u> See <u>Northern Pac. R. Co. v. United States, 356 U. S. 1, 5</u>."

And in *Palmer at pages 47-49* the Court held that the district court's and court of appeals' decisions on cross-motions for summary judgment would be reversed:

"The parties agreed that HBJ would not compete with BRG in Georgia and that BRG would not compete with HBJ outside of Georgia.

"On petitioners' [Palmer] motion for partial summary judgment as to the § 1 counts in the complaint and respondents' motion for summary judgment, the District Court held that the agreement was lawful . . . . The Court of Appeals also agreed with the District Court that to

prove a per se violation under a geographic market allocation theory, petitioners had to show that respondents had subdivided some relevant market in which they had previously competed. 874 F. 2d 1417 (1989).

"In <u>United States v. Topco Associates, Inc., 405 U. S. 596 (1972),</u> we held that agreements between competitors to allocate territories to minimize competition are illegal:

<u>'One of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.... This Court has reiterated time and time again that `[h]orizontal territorial limitations... are naked restraints of trade with no purpose except stifling of competition.' Such limitations are per se violations of the Sherman Act.'</u> *Id*., at 608 (citations omitted).

<u>"The defendants in Topco had never competed in the same market, but had simply agreed to allocate markets</u>. Here, HBJ and BRG had previously competed in the Georgia market; under their allocation agreement, BRG received that market, while HBJ received the remainder of the United States. Each agreed not to compete in the other's territories. Such agreements are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other. Thus, the 1980 agreement between HBJ and BRG was unlawful on its face."

The Defendants' agreement in this case amounts to a horizontal combination in which Apple is paid to stay stay out of the internet search business even though Apple had seriously contemplated going into that market with its Safari search engine. That is the same fact-pattern that was presented in *Citizens* and *Palmer*.

By agreeing to accept billions of dollars from Google to add Google as their default search engine, all incentive to compete at Apple is removed from the equation because Apple is paid to sit on sideline. Indeed, Apple's only real incentive is to help Google monopolize as much of the search market as possible, since Apple's payments will be increased as Google's market share soars. Hence Apple's comment that Apple may as well be called "Apple-Goo". Google's market share - exceeding 92% of the mobile internet search market in the United States - is already miles above the percentage shares that have been consistently condemned by the Supreme Court in any of the monopoly cases presented to the Court over the many years that the Sherman Act has been enforced.

### b. Defendants' Statement

Defendants' arguments as to why this case should be dismissed appear in their motion to dismiss, ECF No. 25, and reply brief supporting the same, ECF No. 35. Defendants reserve their arguments on summary judgment for that stage of litigation, if the case proceeds.

Given the Court's prior resolution of Plaintiffs' demand for oral argument and that Plaintiffs have provided no legal support for their claim to a constitutional right to a hearing on Defendants' motion to dismiss, Defendants do not intend to file a response to Plaintiffs' motion for leave to file a motion for reconsideration (ECF No. 52) unless directed to do so by the Court.

## 5. Amendment of Pleadings

The Parties do not currently anticipate any amendments to the pleadings.

## 6. Evidence Preservation

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. All Parties have assured the others that they have taken and agreed to continue such steps.

## 7. Disclosures

Neither party has exchanged initial disclosures as of the date of the filing of this CMC Statement. The Court has stayed discovery in this case until it issues a ruling on Defendants' motion to dismiss. *See* ECF No. 47 at 3.

## 8. Discovery

### a. Discovery Taken to Date

Discovery has not commenced. The Court has stayed discovery in this case until it issues a ruling on Defendants' motion to dismiss. *See* ECF No. 47 at 3.

### b. Scope of Anticipated Discovery and Proposed Limitations or Modifications of the Discovery Rules

#### i. Plaintiffs' Statement

Plaintiffs seek limited deposition discovery, including the depositions of Defendants Cook, Pichai and Schmidt regarding the secret meetings and agreements. Plaintiffs also seek the identity

and depositions of the Apple executive who envisioned Google and Apple to be "one company" and the individual executive of Google who said that Apple and Google were "merging without having to merge."

Plaintiffs' interrogatories are directed at Google's billion dollar payments to Apple, including when and where the payments were made, what the payment amounts were, how the payments were transmitted and according to what agreement(s), and whether the agreement(s) was/(were) written or oral.

Plaintiffs' requests for production of documents seek any written contracts between Defendants Google and Apple with regard to the billion dollar payments made to Apple as well as the dates and amounts of those payments.

The parties have met and conferred. For the depositions, Plaintiffs advised Defendants that they intend to notice the depositions of defendants' witnesses and that defendants could choose the time and place most convenient for their witnesses and counsel. For the document discovery Plaintiffs have advised Defendants that they will seek production of the Google-Apple written agreement.

Plaintiffs submit that the production of the Apple-Goggle written agreement, together with the requested limited depositions, will certainly aid this Court in the resolution of the Defendants' pending motion to dismiss. In addition, the production of this written agreement may shorten the litigation altogether as it will certainly substantiate Plaintiffs' claims that Defendants have violated the law and will form the basis for the Motion for Summary Judgment anticipated to be filed by Plaintiffs. (*See* Section 4 re Motions, Ante.)

    **ii.**    **Defendants' Statement**

Defendants recognize that this Court stayed discovery in this case until it issues a ruling on Defendants' motion to dismiss. ECF No. 47 at 3. If any claims remain following the Court's decision, Defendants expect this case to involve routine discovery that should not exceed the standard limits.

### c. Proposed Discovery Plan, Stipulated e-Discovery, and Identified Discovery Disputes

#### i. Plaintiffs' Statement

Plaintiffs oppose the entry of any Protective Order in this case on the ground that there has been no showing of good cause, nor any affidavits filed by Defendants, as required by the Rule 26(c), to support the proposition that the discovery in this case will cause annoyance, embarrassment, oppression or undue burden or expense.

#### ii. Defendants' Statement

As described above, formal discovery plans may become appropriate if Plaintiffs' complaint survives Defendants' motion to dismiss. Defendants intend to propose a formal discovery plan if the Court denies Defendants' motion. The scope of discovery would then be governed by a complaint that has survived preliminary motion practice. This course allows the Parties to understand what facts and allegations, if any, will actually be at issue and therefore subject to discovery.

The Parties have not discussed entering into a stipulated e-discovery order and have not identified any discovery disputes.

### 9. Class Actions

Plaintiffs do not assert claims on behalf of a class.

### 10. Related Cases

On December 27, 2021, counsel for Plaintiffs filed a similar action in the Northern District of California: *California Crane Sch., Inc. v. Google LLC, et al.*, 4:21-cv-10001-HSG (N.D Cal.).

#### a. Plaintiffs' Statement

Although Defendants here are the same as in the *California Crane* action, Plaintiffs here are not advertisers but rather are users and consumers of Google and Apple's internet search services. In the *California Crane* action, the Plaintiff brought his claim on behalf of a class of advertisers. In this case the Plaintiffs are independent individuals and businesses who do not seek class action status.

In the present case, Plaintiffs seek damages and injunctive relief, including divestiture and disgorgement of payments made to Apple by Google.

Although Plaintiffs disclosed as they were required to do in the Civil Case Cover Sheet filed along with the Complaint in this case that this case may be "related" to the *California Crane* case, the cases are substantially dissimilar in that there are many issues presented in *California Crane* that are not present here.  For example, Defendants have argued in *California Crane* that the Court there should order the case to arbitration, as there is a putative arbitration clause in the advertising agreement between California Crane and Google.  In addition, Apple has argued that the California Crane action should be stayed as to it pending resolution of any ordered arbitration.  Plaintiff has contested arbitration and that issue is pending resolution by the Court.

In addition, *California Crane* presents issues dealing with class certification that are not present in this case and that would certainly complicate the "relation" of the two cases.

The District Court, Judge Gilliam, agreed and denied Defendants' Motion to Relate this case to *California Crane* stating on June 1, 2022:  "The court has reviewed the motion and determined that no cases are related and no reassignments shall occur."  (ECF 71)[1]  As a result there is no current impediment to this Court proceeding apace with the prosecution of this case in his courtroom.

b. **Defendants' Statement**

This case features substantially the same parties, alleged transactions, alleged events, and alleged claims as those in *California Crane*.  As noted above, Defendants here are identical to the defendants in the *California Crane* action.  Likewise, Plaintiffs' factual allegations and legal claims here are materially identical to—and, indeed, are nearly a verbatim reproduction of—the plaintiff's allegations and claims in *California Crane*.  That is, based on the same alleged meetings between Defendants' executives, the same pictures of Defendants' executives, the same scattered quotations by Defendants' employees, and the same vertical revenue sharing agreement, the complaints in both actions allege that, since 2005, Apple and Google have agreed not to compete with one another in the provision of search services.  And the complaints in both actions include the same claims under

---

[1] On June 16, 2022, Judge Gilliam denied the Defendants' subsequent Motion for Reconsideration, again ruling that the cases were not related.  (ECF 79).

Section 1 of the Sherman Act alleging a *per se* illegal agreement not to compete, the same claims under Section 2 of the Sherman Act alleging a conspiracy to monopolize the "search business," and the same requests for equitable relief in the form of disgorgement and divestiture.

When filing this case, Plaintiffs' counsel noticed it as "related" to *California Crane* in the civil cover sheet. *See* ECF No. 1-1. Defendants accordingly filed onto the *California Crane* docket an administrative motion to consider whether the cases should be related, which the plaintiff opposed, and which Judge Gilliam denied.

In *California Crane*, Defendants filed motions to dismiss, to compel arbitration as to the Google Defendants, and to stay proceedings pending arbitration as to the Apple Defendants. Discovery is stayed pending resolution of the motion to dismiss. *See California Crane Sch., Inc. v. Google LLC*, No. 4:21-CV-10001-HSG, 2022 WL 1271010, at *2 (N.D. Cal. Apr. 28, 2022). On August 12, 2022, Judge Gilliam granted the Google Defendants' motion to compel arbitration and denied the Apple Defendants' motion to stay proceedings pending arbitration. *See id.*, 2022 WL 3348425 (N.D. Cal. Aug. 12, 2022). The plaintiff subsequently moved for leave to amend its complaint, which Defendants opposed and which is scheduled for a hearing before Judge Gilliam on January 19, 2023.

**11. Relief**

Defendants dispute that they are liable to Plaintiffs for any damages or other relief. If liability is established, damages expert(s) would likely be required to calculate damages, if any.

**12. Settlement and ADR**

The Parties have complied with ADR Local Rule 3-5. No formal ADR has taken place. The Parties may explore the possibility of private mediation after resolution of Defendants' motion to dismiss.

**13. Other References**

The Parties agree that this case is not suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

**14. Narrowing Issues**

The Parties have not agreed on any issues that can be narrowed. Defendants have filed a motion to dismiss, which may serve to narrow the issues. The Parties may later file one or more motions for summary judgment, or other dispositive motions, seeking to narrow the issues.

**15. Expedited Schedule**

Plaintiffs believe that this case may be supervised by the court on an expedited basis since discovery is not document-heavy (as it usually is in many, more routine antitrust cases) and since Plaintiffs have proposed a plan to effect discovery efficiently.

Defendants do not believe that this case is suitable for handling on an expedited basis.

**16. Scheduling**

    a. **Plaintiffs' Statement**

Plaintiff seeks a trial date so that other ancillary dates can be set accordingly in anticipation of trial.

    b. **Defendants' Statement**

Defendants propose the following schedule if any claims remain after the Court's decision on Defendants' Motion to Dismiss:

| Event | Proposed Date |
|---|---|
| Answer | Within 45 days of the Court's ruling on the Motion to Dismiss |
| Close of Fact Discovery | 12 months after Court's ruling on the Motion to Dismiss |
| Affirmative Expert Disclosures | 13 months after Court's ruling on the Motion to Dismiss |
| Rebuttal Expert Disclosures | 15 months after Court's ruling on the Motion to Dismiss |
| Close of Expert Discovery | 17 months after Court's ruling on the Motion to Dismiss |
| Dispositive Briefs Due | 2 months after the close of expert discovery |

| Pretrial Conference | 3 months after Court's ruling on dispositive motions |
|---|---|
| Trial | 6 weeks after the Pretrial Conference |

**17. Trial**

Plaintiffs believe that this case can be ready for trial in 6 months and that trial will take a maximum of two weeks.

Defendants' position on the date for trial is set forth above, and they believe it is premature to estimate a length of trial at this time.

**18. Disclosure of Non-party Interested Entities or Persons**

Plaintiffs disclosed that pursuant to Civil L.R. 3-15 there was no interest to report. *See* ECF No. 26.

Defendants Google, LLC, Alphabet Inc., and XXVI Holdings Inc. disclosed that Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company, and no publicly traded company holds 10 percent or more of Alphabet Inc.'s stock. *See* ECF No. 15.

Defendant Apple Inc. disclosed that it has no parent corporation and no publicly held company owns 10 percent or more of its stock. *See* ECF No. 17.

**19. Professional Conduct**

Undersigned counsel certifies that all attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20. Other**

The Parties are not aware of other matters that may facilitate the resolution of this matter.

DATED:  January 10, 2023

By: /s/ *John E. Schmidtlein*
John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.

By: /s/ *Jack P. DiCanio*
Steven C. Sunshine (*pro hac vice*)
Karen Hoffman Lent (*pro hac vice*)
Julia K. York (*pro hac vice*)
Jack P. DiCanio (SBN 138752)

| | |
|---|---|
| Washington, D.C. 20024<br>Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029<br>Email: jschmidtlein@wc.com<br>Email: cpruski@wc.com<br><br>*Attorneys for Defendants Google LLC, Alphabet, Inc., XXVI Holdings, Inc., Sundar Pichai, and Eric Schmidt*<br><br>By: /s/ *Lawrence G. Papale*<br>Lawrence G. Papale (SBN 67068)<br>LAW OFFICE OF LAWRENCE G. PAPALE<br>1308 Main Street, Suite 117<br>St. Helena, CA 94574<br>Telephone: (707) 963-1704<br>Email: lgpapale@papale.com<br><br>Josephine Alioto (SBN 282989)<br>THE VEEN FIRM<br>20 Haight Street<br>San Francisco, CA 94102<br>Telephone: (415) 673-4800<br>Email: j.alioto@veenfirm.com<br><br>Theresa Moore<br>LAW OFFICES OF THERESA D. MOORE<br>One Sansome Street, 35th Floor<br>San Francisco, CA 94104<br>Phone: (415) 613-1414<br><br>Lingel H. Winters, Esq. (SBN 37759)<br>LAW OFFICES OF LINGEL H. WINTERS<br>388 Market St. Suite 1300<br>San Francisco, California 94111<br>Telephone: (415) 398-2941<br>Email: sawmill2@aol.com<br><br>Jeffrey K. Perkins (SBN 57996)<br>LAW OFFICES OF JEFFREY K. PERKINS<br>1550-G Tiburon Boulevard, #344<br>Tiburon, California 94920<br>Telephone: (415) 302-1115<br>Email: jeffreykperkins@aol.com<br><br>*Attorneys for Plaintiffs* | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>525 University Avenue<br>Palo Alto, CA 94301<br>Telephone: (650) 470-4660<br>Facsimile: (213) 621-5430<br>Email: jack.dicanio@skadden.com<br><br>*Attorneys for Defendants Apple Inc. and Tim Cook*<br><br>Joseph M. Alioto, Esq. (SBN 42680)<br>Tatiana V. Wallace, Esq. (SBN 233939)<br>ALIOTO LAW FIRM<br>One Sansome Street, Suite 3500<br>San Francisco, CA 94104<br>Telephone: (415) 434-8900<br>Email: jmalioto@aliotolaw.com<br><br>Robert J. Bonsignore, Esq.<br>BONSIGNORE TRIAL LAWYERS, PLLC<br>23 Forest Street<br>Medford, MA 02155<br>Phone: 781-856-7650<br>Email: rbonsignore@classactions.us<br><br>Joseph Alioto, Jr.<br>JOSEPH ALIOTO JR. LAW<br>One Sansome Street, 35th Floor<br>San Francisco, California 94104<br>Email: joseph@alioto.law<br><br>Christopher A. Nedeau (SBN 81297)<br>NEDEAU LAW PC<br>154 Baker Street<br>San Francisco, CA 94117-2111<br>Telephone: (415) 516-4010<br>Email: cnedeau@nedeaulaw.net |

**SIGNATURE ATTESTATION**

I, John E. Schmidtlein, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1, I hereby attest that all counsel whose e-signatures (/s/) appear on this document concurred in this filing.

DATED: January 10, 2023                              By: /s/ *John E. Schmidtlein*