1  Jack P. DiCanio (SBN 138752)
   SKADDEN, ARPS, SLATE, MEAGHER &
2  FLOM LLP
   525 University Avenue
3  Palo Alto, California 94301
   Telephone: (650) 470-4660
4  Facsimile: (213) 621-5430
   Email: jack.dicanio@skadden.com
5
   Steven C. Sunshine (admitted *pro hac vice*)
6  Julia K. York (admitted *pro hac vice*)
   SKADDEN, ARPS, SLATE, MEAGHER &
7  FLOM LLP
   1440 New York Avenue, N.W.
8  Washington, DC 20005-2111
   Telephone: (202) 371-7000
9  Facsimile: (202) 393-5760
   Email: steven.sunshine@skadden.com
10 Email: julia.york@skadden.com

11 (additional counsel listed on signature page)

12 *Attorneys for Defendants Apple Inc. and Tim*
   *Cook*
13

John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC,*
*Alphabet Inc., XXVI Holdings Inc., Sundar*
*Pichai, and Eric Schmidt*

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17 MARY KATHERINE ARCELL, *et al.*,        CASE NO. 3:22-cv-02499-RFL

18            Plaintiffs,                   **DEFENDANTS' OPPOSITION TO**
                                            **PLAINTIFFS' MOTION FOR RELIEF**
19        v.                                **FROM ORDER OF DISMISSAL**
                                            **PURSUANT TO FRCP 60(b) AMENDING**
20 GOOGLE LLC, ALPHABET INC., XXVI          **THE ORDER AND GRANTING LEAVE**
   HOLDINGS INC., APPLE INC., TIM           **TO FILE AN AMENDED COMPLAINT**
21 COOK, SUNDAR PICHAI, and ERIC
   SCHMIDT,                                 Date: June 18, 2024
22                                          Time: 10:00 a.m.
              Defendants.                   Place: Courtroom 15—18th Floor
23                                          Judge: Hon. Rita F. Lin

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .................................................................................................. 2

III.  LEGAL STANDARD ......................................................................................... 5

IV.  ARGUMENT ....................................................................................................... 6

    A.  Plaintiffs Fail to Show that the Evidence Would Likely Have Changed the Outcome of Defendants' Motion to Dismiss ............................................ 6

        1.  The Documents that Plaintiffs Attached to their Motion Do Not Provide Direct or Circumstantial Evidence of a *Per Se* Unlawful Horizontal Conspiracy ................................................................. 7

        2.  Plaintiffs' Antitrust Claims Would Still Fail for Lack of Antitrust Standing and Failure to Plausibly Allege Apple's Specific Intent .............. 10

        3.  Plaintiffs Provide No Basis to Revive their State Law Claims.................... 12

    B.  Plaintiffs Fail to Show that They Exercised Diligence to Uncover the Evidence and that the Evidence Could Not Have Been Discovered Earlier Through that Diligence ............................................................... 13

V.  CONCLUSION................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbywho, Inc. v. Interscope Records*,
    No. 06-cv-06724-MMM, 2008 WL 11406034,
    (C.D. Cal. Jan. 7, 2008) ............................................................................... 6, 13

*Arcell v. Google LLC* ("*Arcell I*"),
    No. 5:22-cv-02499-EJD, 2023 WL 5336865
    (N.D. Cal. Aug. 18, 2023) ............................................................................. *passim*

*Arcell v. Google LLC* ("*Arcell II*"),
    No. 3:22-cv-02499-RFL, 2024 WL 1090009
    (N.D. Cal. Feb. 5, 2024) ................................................................................. *passim*

*Barber v. Hawai'i*,
    42 F.3d 1185 (9th Cir. 1994) .......................................................................... 13

*California Crane School, Inc. v. Google LLC* ("*Crane I*"),
    No. 21-cv-10001-HSG, 2023 WL 2769096
    (N.D. Cal. Mar. 31, 2023) ................................................................ 4, 10, 11, 12

*California Crane School, Inc. v. Google LLC* ("*Crane II*"),
    No. 21-cv-10001-PCP, 2024 WL 1221964
    (N.D. Cal. Mar. 21, 2024) ............................................................................... *passim*

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986) ........................................................................................ 11

*Chubb Custom Insurance Co. v. Space Systems/Loral, Inc.*,
    710 F.3d 946 (9th Cir. 2013) .......................................................................... 12

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*,
    833 F.2d 208 (9th Cir. 1987) .......................................................................... 6

*Defenders of Wildlife v. Bernal*,
    204 F.3d 920 (9th Cir. 2000) .......................................................................... 13

*Doe v. City of Baton Rouge*,
    No. 6:21-cv-00314-AA, 2022 WL 2236355
    (D. Or. June 22, 2022) .................................................................................... 14

*Eastman v. Quest Diagnostics Inc.*,
    724 F. App'x 556 (9th Cir. 2018) ................................................................... 9

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) .......................................................................... 11, 12

*HCC Life Insurance Co. v. Conroy*,
No. 3:15-cv-02897-BEN-BLM, 2018 WL 559135
(S.D. Cal. Jan. 23, 2018) ............................................................................................. 13, 15

*Kealoha v. Aila*,
No. 19-cv-00274-DKW-KJM, 2020 WL 7212991
(D. Haw. Dec. 7, 2020) ....................................................................................................... 15

*Korea Kumho Petrochemical v. Flexsys America LP*,
No. 07-cv-01057-MJJ, 2008 WL 686834
(N.D. Cal. Mar. 11, 2008) ................................................................................................... 11

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) .............................................................................................. 12

*LBF Travel Management Corp. v. Derosa*,
No. 20-cv-2404-MMA (AGS), 2022 WL 3588926,
(S.D. Cal. Aug. 22, 2022) ................................................................................................... 12

*LNG Development Co. v. U.S. Army Corps of Engineers*,
No. 3:14-cv-1239-AC, 2015 WL 13681013
(D. Or. Dec. 21, 2015) ........................................................................................................ 13

*Mylan Pharmaceuticals v. Celgene Corp.*,
No. 14-cv-2094-ES, 2014 WL 12810322
(D.N.J. Dec. 23, 2014) ........................................................................................................ 10

*Sanai v. Kozinski*,
No. 4:19-cv-08162-YGR, 2021 WL 2383333
(N.D. Cal. June 10, 2021) ..................................................................................................... 6

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .............................................................................................. 11

*Spitzer v. Aljoe*,
No. 13-cv-05442-MEJ, 2016 WL 7188007
(N.D. Cal. Dec. 12, 2016) ................................................................................................... 14

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
No. 09-cv-0560-LJO-SMS, 2011 WL 2678879
(E.D. Cal. July 7, 2011) ...................................................................................................... 12

*Sunburst Minerals, LLC v. Emerald Copper Corp.*,
300 F. Supp. 3d 1056 (D. Ariz. 2018) ............................................................................... 14

*Toscano v. PGA Tour, Inc.*,
70 F. Supp. 2d 1109 (E.D. Cal. 1999) ................................................................................ 10

*United States v. Shearer*,
No. 2:12-cv-02334-DJC-DB, 2023 WL 5155807
(E.D. Cal. July 21, 2023) ...................................................................................................... 6

*Yould v. Barnard*,
    No. 18-cv-01255-EJD, 2018 WL 4300523
    (N.D. Cal. Sept. 10, 2018) ................................................................................ 6

**Other Authorities**

Antitrust Div., *U.S. & Plaintiff States v. Google LLC [2020] – Trial Exhibits*, U.S. Dep't
    Just., https://www.justice.gov/atr/us-and-plaintiff-states-v-google-llc-2020-trial-
    exhibits (last updated Apr. 25, 2024) .................................................................. 14

Nico Grant & David McCabe, *Google C.E.O. Says Tech Giant Has Improved the Web for
    All Consumers*, N.Y. Times (Oct. 30, 2023), https://www.nytimes.com/
    2023/10/30/technology/google-sundar-pichai-antitrust-trial.html ......................... 3

Nico Grant & David McCabe, *What Google Argued to Defend Itself in Landmark Antitrust
    Trial*, N.Y. Times (Nov. 14, 2023), https://www.nytimes.com/2023/11/14/
    technology/google-antitrust-trial-defense.html ...................................................... 3

Miles Kruppa, *Google's Antitrust Trial to Set 'Future of the Internet,' DOJ Says*,
    Wall St. J. (Sept. 12, 2023), https://www.wsj.com/tech/googles-antitrust-trial-gets-
    under-way-in-washington-de1725b6 ..................................................................... 3

Plaintiffs' Notice of Exhibits Admitted into Evidence in Bulk,
    *United States v. Google LLC*, No. 1:20-cv-03010-APM
    (D.D.C. Sept. 22, 2022), Ex. B, ECF No. 711-2 ................................................... 14

Sabrina Willmer, Emily Birnbaum, & Leah Nylen, *Google Judge Rules Trial Documents
    Can Be Posted by US Online*, Bloomberg (Sept. 26, 2023), https://www.bloomberg
    .com/news/articles/2023-09-26/google-judge-rules-trial-documents-can-be-posted-
    by-us-online ...................................................................................................... 3

*US v Google Antitrust Trial Transcripts*, Capitol F.,
    https://thecapitolforum.com/google_antitrust_trial_2023/ (last visited May 26, 2024) ....... 14

## I.     __INTRODUCTION__

Between this case and the highly analogous *Crane* action, Plaintiffs and their counsel have attempted to state a claim across *six* complaints, which four judges in this District have rejected. Plaintiffs' motion for relief from the Court's February 5, 2024 Order ("Motion") is a meritless attempt to burden Defendants and this Court yet again.  It should be denied.

Plaintiffs' Motion rests on supposed "newly discovered evidence" that could not have saved their inadequately pled horizontal conspiracy claims in their First Amended Complaint ("FAC"), ECF No. 67.  Plaintiffs' "evidence" principally consists of two documents that detail Apple's and Google's obligations under their *vertical* commercial search relationship: the 2014 Joint Cooperation Agreement ("2014 JCA") and the 2016 Amendment to the Information Services Agreement ("2016 ISA").  Both documents underscore what Defendants have argued all along and what the Court has ruled.  They show that Apple agreed to pre-set Google Search as the default general search engine in its Safari web browser, while Google agreed to provide Apple with a share of the advertising revenue it generates from searches in Safari.  None of the documents' terms establish or even suggest a *per se* unlawful horizontal agreement not to compete.  Meanwhile, Plaintiffs still cannot provide any plausible allegations that Apple ever entered or intended to enter the general search market; indeed, the "new" trial testimony that Plaintiffs cite undermines that theory.  Plaintiffs' "newly discovered evidence" thus leaves Plaintiffs in the same position they were in when the Court dismissed the FAC—able only to plead a vertical relationship between Apple and Google consistent with their rational, lawful economic self-interest.  *See Arcell v. Google LLC* ("*Arcell II*"), 2024 WL 1090009, at *2 (N.D. Cal. Feb. 5, 2024).  Further amendment would simply yield a further dismissal.

Plaintiffs' Motion fails for the additional reason that the "newly discovered evidence" that Plaintiffs invoke is not new at all.  Defendants have acknowledged Apple and Google's vertical agreements from the start of this case.  The 2014 JCA and the 2016 ISA were also admitted as exhibits in last year's highly publicized *U.S. v. Google* trial in Washington, D.C.—a litigation that Plaintiffs have referenced throughout this case and in which, as the court in *Crane* observed, "the government is not pursuing and has never pursued any Section 1 claim involving an unlawful conspiracy between Google and Apple."  *Cal. Crane Sch., Inc. v. Google LLC* ("*Crane II*"), 2024

WL 1221964, at *7 n.9 (N.D. Cal. Mar. 21, 2024).  The U.S. Department of Justice ("DOJ") posted both exhibits publicly in *November 2023* on its website (where Plaintiffs ultimately retrieved them), and the trial transcripts Plaintiffs cite have been available from a court reporter since at least that time.  Yet Plaintiffs did not alert the Court to this "evidence" until almost six months later, and over three months after the Court dismissed their conspiracy claims with prejudice.  Plaintiffs thus fail to show, as they must, that they exercised diligence in seeking to uncover this "evidence" and that they could not have discovered it earlier despite that diligence.

For all these reasons, Plaintiffs' Motion should be denied.

## II.   <u>BACKGROUND</u>

Plaintiffs commenced this action on April 22, 2022, alleging that Apple and Google violated Sections 1 and 2 of the Sherman Act by engaging in a *per se* unlawful horizontal conspiracy not to compete in the "search business."  Compl., ECF No. 1.  Plaintiffs offered no plausible allegations to support this farfetched claim.  Instead, they sought to show an unlawful agreement from (1) publicly known vertical agreements whereby Apple agreed to set Google as the default search engine in Safari, and Google agreed to pay Apple a share of the advertising revenues generated by searches performed on Google by Safari users, *id.* ¶¶ 88–94, and (2) supposedly "secret meetings" between Apple and Google executives related to those agreements, *id.* ¶¶ 8, 11, 13, 100, 102, 121–25.

Defendants filed their first motion to dismiss on June 24, 2022, ECF No. 25, acknowledging their vertical agreements on the very first page.  They explained:

> Pursuant to publicly reported agreements, known as Information Services Agreements, Apple [] agreed to set Google as the default search provider in its Safari web browser in the United States because Google offers the highest quality search results. . . .  Google [] agreed to pay Apple a share of the advertising revenues generated by searches performed on Google by Safari users . . . .

*Id.* at 1.  "Unsurprisingly," Defendants noted, "Apple and Google executives [] met numerous times over the years as part of the ongoing working relationship created by these agreements."  *Id.* at 4.  Plaintiffs failed to spin that lawful, ongoing vertical relationship into a horizontal conspiracy.

Judge Davila agreed, concluding that Plaintiffs failed to plead direct or circumstantial evidence of a horizontal conspiracy.  *Arcell v. Google LLC* ("*Arcell I*"), 2023 WL 5336865, at *3–4 (N.D. Cal. Aug. 18, 2023).  Plaintiffs' "conclusory allegations of an agreement for Apple not to

-2-

develop its own search engine" did not establish direct evidence of a conspiracy, *id.* at *3, and Plaintiffs' allegations of "secret meetings" did not establish circumstantial evidence of a conspiracy because they "could just as easily suggest rational, legal business behaviors as . . . an illegal conspiracy." *Id.* at 4.  Judge Davila further ruled that Plaintiffs failed to "plead an actionable antitrust injury," *id.* at *5, and that Plaintiffs' Section 2 conspiracy-to-monopolize claim independently failed because it was not supported by allegations of a "specific intent" to monopolize.  *Id.* at *4 & n.1.

Plaintiffs filed their FAC on September 18, 2023, ECF No. 67, adding Sherman Act Section 2 monopolization claims against Google only based on alleged exclusive dealing, as well as state law claims based on their Sherman Act claims.  But they did nothing to remedy the defects that Judge Davila identified.  Defendants filed another motion to dismiss on October 16, 2023.  ECF No. 70.

While that motion to dismiss was pending, but prior to oral argument, a trial was held in *U.S. v. Google* from September to November 2023.  The trial garnered considerable press attention.[1]  And the 2014 JCA and 2016 ISA that Plaintiffs cite here were used with witnesses in open court.  DOJ ultimately posted those documents on its website on November 17, 2023.  Notably, DOJ's decision to post trial exhibits publicly on its website was itself the subject of press attention.[2]

Plaintiffs have been aware all along of *U.S. v. Google*, having seemingly brought this case based on an implausible contortion of that case and referencing it frequently thereafter.  To provide a few examples: Plaintiffs (1) referenced Google's *U.S. v. Google* answer in joint case management statements, *see* ECF Nos. 33, 53, 78; (2) filed a statement of recent decision regarding the *U.S. v. Google* summary judgment decision, ECF No. 72, which the Court considered, *see* ECF No. 82; Jan. 23, 2024 Hearing Tr. 13:12–15, ECF No. 91; and (3) sought leave to file a sur-reply in part to address that decision, *see* ECF No. 80, despite previously referencing the decision in their FAC, *see* FAC

---

[1] *See, e.g.*, Miles Kruppa, *Google's Antitrust Trial to Set 'Future of the Internet,' DOJ Says*, Wall St. J. (Sept. 12, 2023), https://www.wsj.com/tech/googles-antitrust-trial-gets-under-way-in-washington-de1725b6; Nico Grant & David McCabe, *Google C.E.O. Says Tech Giant Has Improved the Web for All Consumers*, N.Y. Times (Oct. 30, 2023), https://www.nytimes.com/2023/10/30/technology/google-sundar-pichai-antitrust-trial.html; Nico Grant & David McCabe, *What Google Argued to Defend Itself in Landmark Antitrust Trial*, N.Y. Times (Nov. 14, 2023), https://www.nytimes.com/2023/11/14/technology/google-antitrust-trial-defense.html.

[2] *See, e.g.*, Sabrina Willmer, Emily Birnbaum, & Leah Nylen, *Google Judge Rules Trial Documents Can Be Posted by US Online*, Bloomberg (Sept. 26, 2023), https://www.bloomberg.com/news/articles/2023-09-26/google-judge-rules-trial-documents-can-be-posted-by-us-online.

¶¶ 98, 146–47, 180, 209, *and* their opposition to the then-pending motion to dismiss, *see* ECF No. 73 at 3, 11.  Plaintiffs even raised the *U.S. v. Google* trial at oral argument on January 23, 2024, citing testimony from Microsoft CEO Satya Nadella multiple times, *see* Jan. 23, 2024 Hearing Tr. 13:20–24, 15:9–13, 20:15–18—including in response to the Court's question as to whether Plaintiffs "could [] allege more now that [they] have [] information from the case in D.C.," *see id.* at 15:4–6.

On February 5, 2024, about two-and-a-half months after the presentation of evidence concluded in *U.S. v. Google*, this Court dismissed Plaintiffs' claims once more.  This time, the Court dismissed Plaintiffs' conspiracy claims with prejudice, *Arcell II*, 2024 WL 1090009, at *3, marking the third of four times a court has concluded that Plaintiffs' counsel failed to plausibly allege a non-compete conspiracy, *see id.* at *1–3; *Arcell I*, 2023 WL 5336865, at *3–4; *Cal. Crane Sch., Inc. v. Google LLC* ("*Crane I*"), 2023 WL 2769096, at *5–6 (N.D. Cal. Mar. 31, 2023); *Crane II*, 2024 WL 1221964, at *6–8.  In this instance, the Court again declined to infer a conspiracy from Plaintiffs' allegations of "[m]eetings between [Defendants'] executives" because those allegations were "'fully consistent' with 'rational, legal business behavior'" given Defendants' "ongoing vertical business relationship." *Arcell II*, 2024 WL 1090009, at *2 (citation omitted).  The Court also explained that Plaintiffs "offer[ed] no plausible allegations regarding Apple's plans to enter the search market," as their allegation "that Apple '[i]n the past' had been developing its own search engine [was] wholly conclusory and speculative," while their "allegation 'that as late as 2014 Apple had been working on its own search engine' undermine[d] the plausibility of [their] core theory that Apple had agreed with Google not to do so since at least 2005." *Id.* (second alteration in original) (quoting FAC ¶¶ 108, 112, 131).  And the Court concluded (again) that Plaintiffs failed to plead an antitrust injury and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. *Id.* at *5.  Finally, the Court dismissed Plaintiffs' exclusive dealing claims because Plaintiffs failed to adequately allege "substantial foreclosure," but it granted Plaintiffs leave to amend those claims because Plaintiffs "ha[d] not previously . . . test[ed] the[ir] adequacy." *Id.*

Plaintiffs filed a second amended complaint ("SAC") on March 6, 2024, advancing monopolization and attempted monopolization claims against only Google LLC, Mr. Schmidt, and Mr. Pichai ("Google Defendants") based on alleged exclusive dealing. *See* ECF No. 95.  The SAC

1    references multiple witnesses' testimony from throughout the *U.S. v. Google* trial.  SAC ¶¶ 36, 210–

2    26.  Because Plaintiffs did not name Apple or Mr. Cook as defendants in the SAC, Apple and Mr.

3    Cook filed a motion to dismiss the case against them with prejudice.  *See* ECF No. 96.  The Google

4    Defendants filed another motion to dismiss as well.  ECF No. 97.  In responding to Apple and Mr.

5    Cook's motion to dismiss, on April 1, 2024, Plaintiffs previewed that they intended to "file a motion

6    to set aside the Court's ruling" dismissing their conspiracy claims "on the same date that Plaintiffs

7    [were] due to file their opposition to the pending Motion to Dismiss filed by Google" (i.e., on April

8    10, 2024).  *See* ECF No. 98 at 3–4.  Plaintiffs filed no such motion at that time.  On April 23, the

9    Court dismissed Plaintiffs' claims against Apple and Mr. Cook with prejudice.  ECF No. 104.

10          Now over a month later, Plaintiffs seek to re-open their horizontal conspiracy claims based

11   on so-called "newly discovered evidence."  This evidence, from the *U.S. v. Google* trial, consists of

12   two documents that amended the Information Services Agreement that governs Apple and Google's

13   commercial search relationship (the 2014 JCA and the 2016 ISA), an internal Google email, and trial

14   testimony.  Mot. 2–3; Decl. of Joseph M. Alioto in Support of Plaintiff's Mot. ("Alioto Decl.") ¶¶

15   10–19, ECF No. 106.[3]  These materials merely set out precisely what Apple and Google have

16   acknowledged here all along—vertical agreements whereby Apple agreed to set Google as the

17   default general search engine in its Safari web browser, and Google agreed to provide Apple a share

18   of its advertising revenue generated from searches on Safari.  Nothing in these materials evidences

19   a secret, additional *horizontal* agreement not to compete.  In fact, they reveal that Apple had

20   *independently* "chosen not to" develop its own general search engine "to this point" and viewed

21   building a search engine as "a major undertaking with lots of implications."  Alioto Decl. Ex. J at

22   2247:17–21.

23   **III.   LEGAL STANDARD**

24          The movant bears the "burden to establish a basis for reconsideration under" Federal Rule of

25   Civil Procedure 60(b).  *Yould v. Barnard*, 2018 WL 4300523, at *2 (N.D. Cal. Sept. 10, 2018).  Relief

26   is warranted only in "extraordinary or highly unusual circumstances," which is a "high hurdle[]" to

27

---

28   [3] The trial testimony Plaintiffs cite includes testimony from Google executives Sundar Pichai and
     Benedict Gomes, Apple executives Eddy Cue and John Giannandrea, Microsoft CEO Satya Nadella,
     and Google experts Dr. Kevin Murphy and Dr. Mark Israel.  Alioto Decl. ¶¶ 10–19.

1   clear. *Sanai v. Kozinski*, 2021 WL 2383333, at \*3 (N.D. Cal. June 10, 2021).  To obtain relief based

2   on "newly discovered evidence," plaintiffs must meet several requirements, two of which bear

3   emphasis here.  ***First***, plaintiffs must show that the evidence "was of such magnitude that [it] . . .

4   would have been likely to change the disposition."  *United States v. Shearer*, 2023 WL 5155807, at

5   \*2 (E.D. Cal. July 21, 2023) (citation omitted).  And ***second***, they must show that they "'exercised

6   due diligence' in discovering the evidence," *Abbywho, Inc. v. Interscope Recs.*, 2008 WL 11406034,

7   at \*5 (C.D. Cal. Jan. 7, 2008) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d

8   208, 211 (9th Cir. 1987)), and that the evidence "could not have been discovered [earlier] through

9   the exercise of [that] diligence," *Shearer*, 2023 WL 5155807, at \*2 (citation omitted).

10  **IV.   ARGUMENT**

11         Plaintiffs are not entitled to the extraordinary relief they seek.  As set forth below, Plaintiffs

12  fail to show that: (1) the evidence would likely have changed the outcome of Defendants' motion to

13  dismiss; and (2) they exercised due diligence in uncovering the evidence, and the evidence could not

14  be discovered earlier through that diligence.  Either of these grounds is sufficient to deny the Motion.

15         **A.    Plaintiffs Fail to Show that the Evidence Would Likely Have Changed the**
16         **Outcome of Defendants' Motion to Dismiss**

17         Plaintiffs fall far short of showing that the supposed "newly discovered evidence" is "of such

18  magnitude that production of it earlier would have been likely to change the disposition of the case."

19  *Coastal Transfer Co.*, 833 F.2d at 211.  Plaintiffs' "evidence" details Apple and Google's *vertical*

20  agreement and does not provide direct or circumstantial evidence of an additional *horizontal* non-

21  compete agreement.  It thus supports what Defendants have said all along and what the Court

22  ultimately ruled: The existence of a revenue-sharing agreement and meetings between Apple and

23  Google's executives do not plausibly suggest a conspiracy because they are consistent with a rational,

24  *vertical* business arrangement that is not *per se* unlawful.  The "evidence" also does nothing to cure

25  Plaintiffs' lack of antitrust standing or failure to plead that Apple specifically intended for Google to

26  monopolize any market.  Nor does it give the Court reason to revisit Plaintiffs' state law claims.

27

28

1
2

### 1. The Documents that Plaintiffs Attached to their Motion Do Not Provide Direct or Circumstantial Evidence of a *Per Se* Unlawful Horizontal Conspiracy

3   The materials that Plaintiffs attached to their Motion provide no support for their contention

4   that Apple and Google entered into a *per se* unlawful agreement not to compete in general search.

5   In a desperate effort to show a plausible conspiracy, Plaintiffs highlight portions of the 2014 JCA

6   and 2016 ISA that (1) require Apple to "offer Google the opportunity to supply [] ads or paid listings"

7   in Siri or Spotlight should Apple ever decide to "include[] ads or paid listings in Siri or Spotlight,"

8   *id.* at 5–8; (2) govern Apple and Google's revenue sharing obligations pursuant to their search

9   relationship, *id.*; (3) provide for an annual "Check-In" between Apple and Google's CEOs, *id.* at 3–

10  4; and (4) detail Apple's obligation to pre-set Google Search as the default general search engine in

11  its Safari web browser, *id.* at 10–12.  Plaintiffs also cite Apple testimony from the *U.S. v. Google*

12  trial to try once more to cast Apple and Google as potential horizontal competitors. Mot. 8–10.  None

13  of these materials evinces a horizontal conspiracy, and if anything they undermine Plaintiffs' theory.

14  To start, the provisions of the 2014 JCA and the 2016 ISA on which Plaintiffs rely do not

15  evidence a horizontal conspiracy not to compete.  ***First***, Plaintiffs aver that a provision in the 2016

16  ISA requiring Apple to "offer Google the opportunity to supply [] ads or paid listings" in Siri or

17  Spotlight, should Apple decide to "include[] ads or paid listings in Siri or Spotlight," amounts to the

18  *per se* unlawful horizontal "agreement not to compete" they have claimed from the start of this case.

19  Mot. 5–6.  Not so.  Siri and Spotlight *are not* general search engines like Google Search, and

20  Plaintiffs have never alleged otherwise.  They are features on Apple devices that Plaintiffs concede

21  act as "search access" points, FAC ¶ 106, and principally help users answer simple questions and

22  navigate and perform tasks on their devices.  As the FAC noted, Siri is "Apple's voice-activated

23  assistant," and Spotlight is "Apple's system-wide search feature."  *Id.*  Plaintiffs offer no allegations

24  that Apple ever had the ability, intention, or incentive to run search ads or paid listings in Siri or

25  Spotlight.  Nor do they allege that Apple ever had the ability, intention, or incentive to acquire or

26  build its own search advertising technology, which would be a complex and expensive endeavor.

27  Such allegations would be irrelevant anyway given that Plaintiffs are alleged general search *users*

28  alleging a conspiracy in the *general search* market, not the *search advertising* market.  FAC ¶¶ 162–

1   65.  The fact that Apple agreed to offer Google ads or listings on its search access points does not

2   suggest that Apple agreed to forgo prior plans to compete with Google in general search.

3     **Second**, Plaintiffs claim that the 2016 ISA's revenue-sharing provision evidences a

4   horizontal conspiracy because it shows "unlawful revenue sharing [] between potential competitors."

5   Mot. 6–7.  Wrong again.  Apple and Google have acknowledged this revenue-sharing provision all

6   along, and all it evidences is a vertical relationship.  As the Court ruled, Apple and Google's "ongoing

7   vertical business relationship" is "fully consistent" with "rational, legal business behavior."  *Arcell*

8   *II*, 2024 WL 1090009, at *2 (citation omitted); *see also Crane II*, 2024 WL 1221964, at *7

9   (explaining that the revenue-sharing agreement evidences a "mutually beneficial relationship [that]

10  could just as easily suggest rational unilateral behavior by both companies . . . [as] an unlawful

11  conspiracy").  Nothing in the revenue-sharing provision on which Plaintiffs rely affects that

12  conclusion.

13    **Third**, Plaintiffs claim that a 2016 ISA provision that "provides for an Annual CEO 'Check-

14  In'" between Apple and Google's CEOs evidences their "involve[ment] in enforcing [] illegal

15  agreements."  Mot. 3–4.  The Court has now twice considered and rejected the argument that such

16  meetings evidence a horizontal conspiracy, explaining that they were "fully consistent" with

17  "rational, legal business behavior."  *Arcell II*, 2024 WL 1090009, at *2 (citations omitted); *see also*

18  *Arcell I*, 2023 WL 5336865, at *4 (explaining that allegations of "meetings" could "just as easily

19  suggest rational, legal business behaviors as . . . an illegal conspiracy").  Plaintiffs provide no reason

20  why the Court should deviate from this conclusion.  It is rational that to maintain a successful and

21  legal commercial relationship, two companies would meet with one another "to review and discuss

22  in good faith the performance of" their agreement, "to confirm . . . [their] compliance with the terms

23  of" their agreement, and to discuss "the revenue performance of each party" under their agreement.

24  Mot. 4 (internal quotation marks and emphasis omitted).  The "Check-In" provision of the 2016 ISA

25  reflects nothing more than that, and is not itself evidence of a horizontal conspiracy.

26    **Fourth**, Plaintiffs appear to suggest that the provision in the 2016 ISA obligating Apple to

27  pre-set Google Search as Safari's default search engine evidences monopolization and/or attempted

28  monopolization under Section 2 of the Sherman Act.  Mot. 10–12.  Wrong.  The Court dismissed

1  Plaintiffs' monopolization and attempted monopolization claims against Google based on alleged

2  exclusive dealing in part due to Plaintiffs' failure to plausibly allege "substantial foreclosure"—i.e.,

3  to provide plausible allegations that "the exclusive dealing arrangements" at issue "ha[d] some

4  appreciable impact on the market," *Arcell II*, 2024 WL 1090009, at *3–4 (quoting *Eastman v. Quest*

5  *Diagnostics Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018)).  The default provision says nothing as to

6  whether Apple and Google's search relationship has had an impact on the market, so the language

7  of this provision would not have had any impact on the disposition of the FAC.  Moreover, it is

8  unclear why Plaintiffs even raise this provision as a purported basis for their Motion, as their

9  monopolization and attempted monopolization claims remain ongoing against the Google

10  Defendants, and Plaintiffs even note that their Motion seeks reconsideration of the Court's ruling

11  only as to their "first theory . . . that Apple and Google allegedly entered into a secret horizontal

12  agreement."  Mot. 3 (citation omitted).

13       Plaintiffs' attempt to paint Apple and Google as potential horizontal competitors with *U.S. v.*

14  *Google* trial testimony likewise falls flat.  Even with this testimony, Plaintiffs still "offer no plausible

15  allegations regarding Apple's plans to enter the search market."  *Arcell II*, 2024 WL 1090009, at *2.

16  Plaintiffs argue that Eddy Cue, Apple's "lead negotiator" for the ISA, "testified . . . that, if Apple

17  had not received the massive payments it sought from Google, Apple would have developed its own

18  search engine."  Mot. 8.  That is incorrect and misleading.  Responding to a hypothetical question

19  asking what would have happened if Apple was "unable to reach a deal" on the ISA with Google,

20  Mr. Cue "*speculate[d]*" that Apple may "have been left with no other choice than *potentially* building

21  [its] own" but that this was "*not something [Apple] went off and investigated*."  Alioto Decl. Ex. D

22  at 2540:15–25 (emphasis added).  This testimony, admittedly speculative, offers nothing to suggest

23  that the ISA was the product of any horizontal agreement, or meeting of the minds between Google

24  and Apple not to compete.  Indeed, Mr. Cue's unequivocal testimony that Apple would rather "spend

25  [its] resources" building other products and that partnering with Google has allowed Apple to "keep

26  providing the best search results for [its] customers," while "continu[ing] to invest and innovate in

27  the areas [it is] really good at," *id.* at 2541:1–2542:1, is precisely the kind of "rational unilateral

28  behavior" that makes a conspiracy implausible, *see Crane II*, 2024 WL 1221964, at *7 ("Apple's

-9-

1  purported decision to abandon its search engine project . . . could just as easily be attributed to

2  business factors, such as the actual and opportunity costs of developing a search engine[.]"). So, too,

3  is testimony by John Giannandrea—Apple's head of AI and machine learning—that "Apple does not

4  operate a general search engine," has independently "chosen not to" develop a general search engine

5  "to this point," and views building a search engine as "a major undertaking with lots of implications."

6  Alioto Decl. Ex. J at 2206:2–6, 2247:17–21. Plaintiffs' allegations that Apple "had been developing

7  its own search engine" remain as "conclusory[,] speculative," and implausible as ever. *Arcell II*,

8  2024 WL 1090009, at *2.[4]

9         Ultimately, the materials Plaintiffs described in their Motion do not provide any inference of

10  a horizontal conspiracy.[5] As this Court and three other judges in the Northern District of California

11  have recognized, Apple and Google's vertical agreement cannot alone support the existence of a *per*

12  *se* unlawful horizontal agreement. *See Arcell II*, 2024 WL 1090009, at *2; *see also Arcell I*, 2023

13  WL 5336865, at *3–4; *Crane I*, 2023 WL 2769096, at *5; *Crane II*, 2024 WL 1221964, at *6–7.

14      **2.**    **Plaintiffs' Antitrust Claims Would Still Fail for Lack of Antitrust Standing**

15              **and Failure to Plausibly Allege Apple's Specific Intent**

16         Even looking beyond Plaintiffs' failure to demonstrate that they could have plausibly pled a

17  horizontal conspiracy had they incorporated their "new" evidence into the FAC, Plaintiffs would still

18  fail to plead Sherman Act claims for two independent reasons: First, they still fail to allege that they

19  have antitrust standing as to the claimed horizontal conspiracy. And second, they still fail to allege

20  that Apple specifically intended for Google to monopolize any relevant market.

21         ***Antitrust Standing.*** Plaintiffs still do not explain how they have standing under the antitrust

22

---

23  [4] Plaintiffs also rely heavily on the speculation of Google employees regarding Apple's ability to build a search engine and a request by Mr. Pichai to be made aware of employee departures to Apple.

24  Mot. 8–9. Such speculation says nothing of Apple's plans or intentions to build a general search engine, and if anything, purported concerns by Google about such plans or intentions render

25  implausible the notion that Apple and Google had a prior agreement not to compete in general search.

26  [5] To the extent Plaintiffs at all suggest that the "JCA and ISA" alone provide the "'who, what, when, where and how' of [their] allegations," Mot. 2, they are mistaken. Appending written agreements to a complaint does not state a conspiracy where, as here, the agreements are not themselves direct or

27  circumstantial evidence that the parties partook in unlawful conduct. *See, e.g.*, *Toscano v. PGA Tour, Inc.*, 70 F. Supp. 2d 1109, 1114–15 (E.D. Cal. 1999) ("[T]he existence of a contract . . . does not,

28  without more, give rise to an inference of concerted action under § 1."); *Mylan Pharms. v. Celgene Corp.*, 2014 WL 12810322, at *8 (D.N.J. Dec. 23, 2014) ("[T]here is no agreement under § 1 'when a party has simply entered into a permissible contract with the defendant[.]'" (citation omitted)).

1  laws to challenge the claimed conspiracy.  Private plaintiffs bringing antitrust suits must establish

2  "antitrust injury"—a "necessary, but not always sufficient," condition for showing antitrust standing,

3  *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986), that requires a plaintiff to "allege

4  [a] credible injury caused by [alleged] unlawful conduct" that "flows from that which makes the

5  conduct unlawful,"  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted), and

6  that occurred "in the [same] market where competition is allegedly being restrained," *Crane I*, 2023

7  WL 2769096, at *3 (quoting *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020)).  The Court

8  previously concluded that Plaintiffs failed to show an antitrust injury as to their conspiracy claims

9  because they did not plausibly allege "that Defendants entered into an illegal horizontal agreement,"

10  *Arcell II*, 2024 WL 1090009, at *5, the injuries they alleged were "vague and conclusory," and their

11  theory of "injur[y] rel[ied] on a highly attenuated causal chain," *Arcell I*, 2023 WL 5336865, at *5.

12  The injuries that Plaintiffs claim from the alleged horizontal agreement remain as vague,

13  conclusory, and attenuated as before.  Plaintiffs' Motion merely asserts that Plaintiffs have been

14  injured by Google's supposed "monetization of [their] data" and by being "deprived of alternative

15  search engines."  Mot. 12–13.  Not only is that theory deficient for reasons the Google Defendants

16  explain in their pending motion to dismiss, *see* ECF No. 97 at 4–8, but it also fails because it still

17  does not "draw[] any line between *[the] alleged agreement*" and these injuries.  *Arcell I*, 2023 WL

18  5336865, at *5 (emphasis added).  Plaintiffs could have been injured only if, but-for the supposed

19  agreement not to compete, Apple would have (1) developed its own search technology comparable

20  to Google Search; (2) launched a search engine product; (3) used its yet-to-be-developed search

21  product as the default search provider on Apple devices; (4) captured a sizeable portion of a relevant

22  search market; and (5) increased competition in such a way that forced Google and its competitors

23  to, *inter alia*, "innovate," better safeguard privacy, and provide higher-quality search results.  Such

24  a "highly attenuated causal chain," as the Court has already explained, does not establish an antitrust

25  injury.  *Id.*; *see also Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834, at *5 (N.D.

26  Cal. Mar. 11, 2008) (declining to find antitrust injury where plaintiff did not allege a "cognizable

27  injury proximately caused" by alleged misconduct).

28  Not only does Plaintiffs' "new" evidence not remedy the lack of antitrust injury, it

1   undermines it further by revealing a "mismatch between the market that was allegedly restrained and

2   the market in which Plaintiff[s] [were] allegedly harmed." *Crane I*, 2023 WL 2769096, at *4.

3   Plaintiffs now appear to claim that Apple and Google conspired to not compete in a *search*

4   *advertising* market, citing a provision in which Apple granted Google the "opportunity to supply []

5   ads or paid listings" in Siri and Spotlight. Mot. 5–6. Yet Plaintiffs assert injury only in a separate

6   *general search* market. "Parties whose injuries . . . are experienced in another market do not suffer

7   antitrust injury." *Crane I*, 2023 WL 2769096, at *3 (quoting *Qualcomm*, 969 F.3d at 992).

8         ***Specific Intent.*** Plaintiffs also still do not show how they would cure their failure to plead

9   Apple's specific intent for purposes of their Section 2 conspiracy-to-monopolize claim. To plead

10   such intent, a plaintiff must plausibly allege that the defendants intended to empower one of them

11   with the power "to seize monopoly power by destroying or excluding competition within the relevant

12   market." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2011 WL 2678879, at *12 (E.D. Cal.

13   July 7, 2011). The Court already ruled that Plaintiffs failed to plead facts "to establish [a] specific

14   intent" by Apple and Mr. Cook to enable Google's monopolization of the market. *Arcell I*, 2023 WL

15   5336865, at *4 & n.1.[6] There is nothing in Plaintiffs' "new" evidence that affects that ruling.

16         **3.      Plaintiffs Provide No Basis to Revive their State Law Claims**

17         The Court "decline[d] to exercise supplemental jurisdiction over [Plaintiffs'] state law

18   claims" after dismissing their federal claims. *Arcell II*, 2024 WL 1090009, at *5. Because Plaintiffs

19   filed their SAC without including any state law claims, such claims are waived. *See* ECF No. 104

20   (noting prior "warning [] that failure to meet the deadline to assert claims in a second amended

21   complaint would result in 'dismissal with prejudice'" and dismissing claims against Apple and Mr.

22   Cook (quoting ECF No. 94 at 10)); *see also Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710

23   F.3d 946, 973 n.14 (9th Cir. 2013) (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir.

24   2012)); *LBF Travel Mgmt. Corp. v. Derosa*, 2022 WL 3588926, at *7 (S.D. Cal. Aug. 22, 2022)

25   (collecting cases).

26         Plaintiffs otherwise provide no independent basis to revive their state law claims. Plaintiffs

27   mention their state law claims only *once* in their Motion, merely asking the Court, without more, to

28

---

[6] While Defendants raised this argument in their motion to dismiss Plaintiffs' FAC, *see* ECF No. 70 at 11–12, the Court did not reach the argument in its February 5, 2024 Order.

1  permit them to replead their state law claims.  Mot. 2.  They cannot provide such a basis in any event,

2  as they have conceded all along that their state law claims were premised on their federal law claims

3  and, thus, fall with their federal law claims.  *See* ECF No. 77 at 7.  Because Plaintiffs fail to

4  demonstrate that the supposed "new" evidence would likely have changed the Court's disposition as

5  to their federal law claims, they fail to demonstrate that the evidence would likely change the Court's

6  disposition as to their state law claims.  *See Crane II*, 2024 WL 1221964 at *8–10.

7  **B.**    **Plaintiffs Fail to Show that They Exercised Diligence to Uncover the Evidence and that the Evidence Could Not Have Been Discovered Earlier Through that**

8  **Diligence**

9  Plaintiffs also independently fail to show (as they must) that they exercised diligence to

10  uncover the materials they cite here and that those materials could not have been discovered before

11  the Court's February 5, 2024 Order through such diligence.  "[D]ue diligence assumes at least some

12  level of deductive reasoning in an active effort to discover evidence based on the knowledge and

13  information already possessed by the litigants."  *HCC Life Ins. Co. v. Conroy*, 2018 WL 559135, at

14  *2 (S.D. Cal. Jan. 23, 2018).  Courts deny relief where a party "fail[s] to show that [it] exercised

15  [such] diligence" in uncovering the evidence at issue—for example, by failing to "detail the nature

16  and extent of [its] efforts to obtain" the evidence.  *Abbywho*, 2008 WL 11406034, at *5.  Courts

17  likewise deny relief where a party "offers no reason why the [evidence] could not have been obtained

18  prior to" the relevant order with such diligence.  *Barber v. Hawai'i*, 42 F.3d 1185, 1198 (9th Cir.

19  1994); *see also, e.g.*, *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000).

20  Plaintiffs fail to meet their burden to show that they exercised diligence because they do not

21  adduce evidence as to their efforts to uncover the materials or "as to why they . . . could not have

22  uncovered the[] [materials] at an earlier date through a diligent search."  *LNG Dev. Co. v. U.S. Army*

23  *Corps of Eng'rs*, 2015 WL 13681013, at *3 (D. Or. Dec. 21, 2015).  Plaintiffs' Motion and

24  declaration do nothing more than complain about the Court's stay of discovery in this case.  Mot.

25  14–15; Alioto Decl. ¶¶ 2–5.  Outside of conceding that counsel "did not monitor the DOJ website

26  during the course of the trial," Alioto Decl. ¶ 7, Plaintiffs' filings never explain the steps that

27  Plaintiffs took to uncover the 2014 JCA or the 2016 ISA, nor state why these materials supposedly

28  eluded Plaintiffs until now.  Nor do Plaintiffs even attempt to attest that the other *U.S. v. Google* trial

---

-13-

1   exhibits and testimony on which they rely were in fact "newly discovered" after the Court's February

2   5, 2024 Order, an impossible task given that they characterized some of that evidence—the testimony

3   of Satya Nadella, *see* Alioto Decl. Ex. E—at oral argument on January 23, 2024, *see* Jan. 23, 2024

4   Hearing Tr. 13:20–24, 15:9–13, 20:15–18.  These failures are alone grounds to deny Plaintiffs'

5   Motion.  *See Doe v. City of Baton Rouge*, 2022 WL 2236355, at *2 (D. Or. June 22, 2022) (denying

6   Rule 60(b) motion where plaintiff described "'newly discovered evidence' in the vaguest terms,

7   without showing that it could not have been discovered earlier"); *Spitzer v. Aljoe*, 2016 WL 7188007,

8   at *9 (N.D. Cal. Dec. 12, 2016) (denying Rule 60(b) motion where "[p]laintiffs did not explain why

9   th[e] evidence [at issue] was unavailable to them before the Court issued its Orders").

10         Nor could Plaintiffs have met their burden to show that they exercised diligence in any event.

11   The 2014 JCA and 2016 ISA were admitted as exhibits months ago in the highly publicized *U.S. v.*

12   *Google* trial and were addressed by witnesses throughout.  *See* Plaintiffs' Notice of Exhibits

13   Admitted into Evidence in Bulk, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.

14   Sept. 22, 2022), Ex. B, ECF No. 711-2 (listing "JX0024" and "JX0033" as "joint exhibits offered

15   without objection").  The versions of the agreements that Plaintiffs cite were, as Plaintiffs concede,

16   posted publicly to DOJ's website, *see* Alioto Decl. ¶¶ 10–11—on *November 17, 2023*,[7]

17   approximately three months *before* the Court entered its Order.  *See Sunburst Mins., LLC v. Emerald*

18   *Copper Corp.*, 300 F. Supp. 3d 1056, 1063 (D. Ariz. 2018) (denying Rule 60(b) motion where

19   movant could "not explain why it took three months" to uncover evidence).  The remaining evidence

20   Plaintiffs cite also became available before the trial ended in November 2023.[8]  Plaintiffs seemingly

21   filed this case to try to morph one aspect of the *U.S. v. Google* litigation into a farfetched conspiracy,

22   and have frequently invoked that litigation throughout this case.  *See supra* Section II.  Such close

23   reliance shows that Plaintiffs were monitoring that case and should have become aware of the

---

[7] Antitrust Div., *U.S. & Plaintiff States v. Google LLC [2020] – Trial Exhibits*, U.S. Dep't Just., https://www.justice.gov/atr/us-and-plaintiff-states-v-google-llc-2020-trial-exhibits (last updated Apr. 25, 2024) (listing JX0024 and JX0033 as "Posted" on "November 17, 2023"); *see also* ECF No. 100-1, Ex. D at 1 (same).

[8] The internal Google email Plaintiffs cite (UPX1092) was posted to DOJ's website on October 30, 2023.  Antitrust Div., *supra* note 7.  The trial transcripts Plaintiffs cite are dated before November 13, 2023 and were likewise posted publicly.  *See* Alioto Decl. Exs. D–J (citing *U.S. v Google Antitrust Trial Transcripts*, Capitol F., https://thecapitolforum.com/google_antitrust_trial_2023/ (last visited May 26, 2024)).

1   evidence they cite by the time the trial ended in November 2023, at the latest.  That is the bare

2   minimum of what "due diligence" demands.  *See HCC Life*, 2018 WL 559135, at *2.  Yet all counsel

3   did was selectively read press accounts of the trial "from time to time."  Alioto Decl. ¶ 7.  Plaintiffs

4   cannot complain that evidence was "not previously available" where the record reflects that they

5   "simply did not attempt to obtain" it.  *Kealoha v. Aila*, 2020 WL 7212991, at *2 (D. Haw. Dec. 7,

6   2020).

7        Plaintiffs' delay in "uncovering" publicly available materials and bringing them to this

8   Court's attention warrants denial.  Plaintiffs could have alerted the Court to their "newly discovered

9   evidence" well before it dismissed the conspiracy claims on February 5, 2024—for example, at oral

10   argument on January 23, 2024, when they referenced some of the same trial testimony they cite here.

11   *Compare* Jan. 23, 2024 Hearing Tr. Hearing Tr. 13:20–24, 15:9–13, 20:15–18, *with* Alioto Decl. Ex.

12   E.  They also could have at least tried to bring the materials to the Court's attention shortly after they

13   filed their SAC, which also referenced some of the same trial testimony they cite here.  *See* SAC

14   ¶¶ 36, 210–26.  Yet Plaintiffs delayed considerably to bring this evidence to the Court's attention,

15   filing their Motion over three months after the dismissal, over two months after they filed their SAC,

16   and over one month after the date on which they said they would file, *see* ECF No. 98 at 3–4, perhaps

17   waiting to test the waters on Defendants' arguments opposing a similar motion in the *Crane* action,

18   *see Cal. Crane Sch., Inc. v. Google LLC*, 5:21-cv-10001-PCP (N.D. Cal.), ECF Nos. 156, 160–61.

19   Plaintiffs' Motion is just the latest instance of Plaintiffs' gamesmanship in bringing meritless (if not

20   frivolous) requests to prolong this case and ramp up Defendants' litigation costs.  *See* ECF No. 100

21   at 5–6 & n.5 (describing Plaintiffs' requests).  The Court should not reward such tactics.

22        Plaintiffs' Motion should be denied.  Not only have Plaintiffs completely failed to make the

23   requisite showing of diligence in obtaining the publicly available evidence they cite in their Motion,

24   but also even if they actually had made that showing, the evidence would still not have changed the

25   outcome of their conspiracy claims.

26   V.   **CONCLUSION**

27        For the foregoing reasons, the Court should deny Plaintiffs' Motion.[9]

28

---

[9] Defendants do not believe a hearing is necessary for the Court to resolve the instant Motion.

1   DATED:  May 28, 2024                      By: /s/ *Steven C. Sunshine*

2                                             Steven C. Sunshine (admitted *pro hac vice*)
                                              Julia K. York (admitted *pro hac vice*)
3                                             SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                                              LLP
4                                             1440 New York Avenue, N.W.
                                              Washington, DC 20005-2111
5                                             Telephone: (202) 371-7000
                                              Facsimile: (202) 393-5760
6                                             Email: steven.sunshine@skadden.com
                                              Email: julia.york@skadden.com
7
                                              Jack P. DiCanio (SBN 138752)
8                                             SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                                              LLP
9                                             525 University Avenue
                                              Palo Alto, California 94301
10                                            Telephone: (650) 470-4660
                                              Facsimile: (213) 621-5430
11                                            Email: jack.dicanio@skadden.com

12                                            Karen Hoffman Lent (admitted *pro hac vice*)
                                              Michael A. Lanci (admitted *pro hac vice*)
13                                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                                              LLP
14                                            One Manhattan West
                                              New York, New York 10001
15                                            Telephone: (212) 735-3000
                                              Facsimile: (212) 735-2000
16                                            Email: karen.lent@skadden.com
                                              Email: michael.lanci@skadden.com
17
                                              *Attorneys for Defendants Apple Inc. and Tim Cook*
18

19   DATED:  May 28, 2024                     By: /s/ *John E. Schmidtlein*

20                                            John E. Schmidtlein (SBN 163520)
                                              Carol J. Pruski (SBN 275953)
21                                            WILLIAMS & CONNOLLY LLP
                                              680 Maine Avenue, S.W.
22                                            Washington, D.C. 20024
                                              Telephone: (202) 434-5000
23                                            Facsimile: (202) 434-5029
                                              Email:jschmidtlein@wc.com
24                                            Email: cpruski@wc.com

25
                                              *Attorneys for Defendants Google LLC, Alphabet Inc.,*
26                                            *XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

DATED:  May 28, 2024                    By: _/s/ Steven C. Sunshine_

Steven C. Sunshine

-17-