John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:    jschmidtlein@wc.com
Email:    cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY KATHERINE ARCELL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., SUNDAR PICHAI, and ERIC SCHMIDT, <br><br> Defendants. | Case No. 3:22-cv-2499-RFL <br><br> **GOOGLE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: December 10, 2024 <br> Time:          10:00 a.m. <br> Place:         Courtroom 15—18th Floor <br> Judge:        Hon. Rita F. Lin |

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 10, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 15 of this Court, located on the 18th Floor of the United States Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt (collectively, "Google Defendants") will move the Court for an order dismissing Plaintiffs' Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Google Defendants respectfully request an order dismissing with prejudice all causes of action brought against them in the above-captioned matter. This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; any reply memorandum; the pleadings and files in this action; and such other matters the Google Defendants may present at or before the hearing.

DATED: November 6, 2024

**WILLIAMS & CONNOLLY LLP**

By: */s/ John E. Schmidtlein*

John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:    jschmidtlein@wc.com
Email:    cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 4

    I.    Plaintiffs' Claims Fail for Lack of Antitrust Standing ............................................ 4

    II.    Plaintiffs' Claims are Untimely. ........................................................................... 12

    III.    All Defendants Except Google LLC Should Be Dismissed for Independent Reasons. ............................................................................................................... 13

    IV.    The Court Should Dismiss the TAC's Request for Divestiture. ........................... 13

    V.    The Court Should Dismiss the TAC Without Further Leave to Amend ............... 14

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) ............................. 4, 10

*Arcell v. Google LLC*, 2023 WL 5336865 (N.D. Cal. Aug. 18, 2023) ................................ passim

*Arcell v. Google LLC*, 2024 WL 1090009 (N.D. Cal. Feb. 5, 2024) .................................... 2, 4, 12

*Arcell v. Google LLC*, 2024 WL 3738422 (N.D. Cal. Aug. 9, 2024) ................................... passim

*Arcell v. Google LLC*, 2024 WL 3749006 (N.D. Cal. Aug. 9, 2024) ................................................ 3

*Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057 (N.D. Cal. 2015) ..................................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 3, 4

*Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ....... 10, 11

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ....................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ............................................... 9

*City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021) ............................. 4, 10, 11, 12

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
  771 F. Supp. 2d 1195 (N.D. Cal. 2011) ................................................................................... 11

*Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538 (9th Cir. 1987) ........................................................ 11

*Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997 (E.D. Wis. 2010) .............................................. 7

*FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020) .................................................................... 5

*In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031 (N.D. Cal. 2021) .............................. 13

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478 (N.D. Cal. July 7, 2016) .... 11

*In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663 (N.D. Cal. Apr. 29, 2011) ............ 10

*Jacobsen v. Katzer*, 2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) ............................................... 10

*Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................... 11

*Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006) ............................................................... 11

*N. Cheyenne Tribe v. Norton*, 503 F.3d 836 (9th Cir. 2007) ........................................................ 13

*Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014) .......................................................................12

*Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098 (N.D. Cal. 2022)............................................................7

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) .....................................13

*Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013)............................................................14

*Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199 (9th Cir. 2014).......................................12

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ...................................................................5, 8

*Swan v. R.J. Donovan C.F.*, 2022 WL 2134605 (S.D. Cal. June 14, 2022) ...................................13

*Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118 (N.D. Cal. 2011) .....................................14

*Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106 (E.D. Cal. 2002) .............................................10

**STATUTES**

15 U.S.C. § 15b..................................................................................................................................12

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................................3

Federal Rule of Civil Procedure 15 ...................................................................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs' Third Amended Complaint ("TAC"), ECF No. 124, fails to remedy the lack of antitrust standing identified by the Court in its most recent dismissal order, and for that reason—among other independent deficiencies—the Court should dismiss this case with prejudice. Plaintiffs have now had four opportunities to plead viable claims, and yet at no point have they established antitrust injury, let alone antitrust standing. The TAC fares no better than the earlier efforts. Even after (as in the last complaint) copying verbatim from the allegations in *United States v. Google*, as well as citing to the district court's decision in that case, Plaintiffs still rely on only conclusory allegations of lower search-quality, reduced privacy protections, and lost compensation that are not grounded in well-pleaded factual allegations. For the reasons below, the Court should dismiss Plaintiffs' TAC with prejudice.

**BACKGROUND**

In October 2020, the United States and certain States sued Google under Section 2 of the Sherman Act, alleging that Google unlawfully maintained a monopoly in several search and advertising markets. *United States v. Google LLC*, No. 20-cv-3010 (APM), ECF No. 1. The government entities made no allegation that Google conspired with any party. Google did not move to dismiss, and the consolidated cases proceeded to discovery.

Plaintiffs filed their first complaint in this case on April 22, 2022. ECF No. 1. They advanced two claims under Section 1 of the Sherman Act premised on an alleged horizontal conspiracy between Google and Apple, whereby Google allegedly paid Apple to refrain from building its own general search engine and competing in the internet search business. *Id.* Plaintiffs pressed for immediate pre-Answer discovery, including various requests for production and interrogatories, as well as the depositions of Google CEO Sundar Pichai and Apple CEO Tim Cook within a month. *See* ECF No. 36. Judge Davila granted Defendants' Motion to Stay Discovery, ECF No. 47, and later granted Defendants' Motion to Dismiss. *Arcell v. Google LLC*, 2023 WL 5336865, at *6 (N.D. Cal. Aug. 18, 2023) ("*Arcell I*"). The Court ruled that Plaintiffs had failed to adequately plead a conspiracy between Google and Apple, and it separately found that Plaintiffs had failed to plead antitrust standing for various reasons, including that Plaintiffs had not pleaded

antitrust injury.  On the latter, the Court explained that Plaintiffs' vague and conclusory allegations of higher prices, diminished innovation, lower quality (in terms of privacy, data protection, and use of consumer data), reduced consumer choice, and distorted or steered search results were insufficient to establish antitrust injury.  *Id.* at *5.

On September 19, 2023, Plaintiffs filed a First Amended Complaint ("FAC").  ECF No. 67.  By then, Judge Mehta had issued an opinion granting in part and denying in part Google's motion for summary judgment in August 2023 in *United States v. Google*, and a bench trial had commenced.  But the focus of Plaintiffs' FAC was again a horizontal conspiracy between Google and Apple, and five of the seven claims in the FAC were jointly directed at Google and Apple.  The FAC added two monopolization claims directed only at Google, but those claims were not meaningfully supported by detailed factual allegations other than the failed horizontal conspiracy allegations directed at Google and Apple.  On February 24, 2024, this Court dismissed the FAC.  *Arcell v. Google LLC*, 2024 WL 1090009, at *6 (N.D. Cal. Feb. 5, 2024) ("*Arcell II*").  The Court dismissed with prejudice Plaintiffs' theory premised on a Google-Apple conspiracy because Plaintiffs "had ample opportunity to amend" but "failed to cure the deficiencies previously identified by the Court."  *Id.* at *3.  As for the theory that Google monopolized the general search services market, the Court ruled that Plaintiffs failed to adequately plead that Google's exclusive default agreements foreclosed a substantial share of the market and independently failed to establish antitrust standing or antitrust injury.  *Id.* at *3–5.

In their Second Amended Complaint ("SAC"), filed on March 6, 2024, Plaintiffs yet again pleaded unfounded allegations of a horizontal conspiracy between Google and Apple, despite the firm rejection of that theory by the Court.  ECF No. 95.  They also pleaded the same monopolization claims against only Google.  On the latter, the SAC added material lifted verbatim from the Complaint filed in *United States v. Google* back in 2020.  But that belated attempt to piggyback on the government's case also foundered, as the Court dismissed the SAC for failure to state a claim.  *Arcell v. Google LLC*, 2024 WL 3738422 (N.D. Cal. Aug. 9, 2024) ("*Arcell III*").[1]  In particular,

---

[1] That same day, August 9, 2024, the Court denied Plaintiffs' motion for relief from the Court's judgment dismissing the Google-Apple conspiracy claims with prejudice based on supposedly newly

the Court ruled that Plaintiffs failed to plausibly allege antitrust injury, dooming their claims. *Id.* at *3–5. The Court declined to reach "Google's alternative bases for dismissal." *Id.* at *7. But the Court noted that, since the parties' briefing, the court in *United States v. Google* issued findings of fact and conclusions of law based on the government's allegations of monopolization. *Id.* While granting leave to amend, "the Court caution[ed] Plaintiffs that this will likely be their last opportunity to amend," given that they had "repeatedly failed to provide sufficient allegations of antitrust injury in prior rounds of amendment." *Id.* at *8. And the Court warned Plaintiffs that they "may not add new causes of action or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15." *Id.*

Plaintiffs filed the TAC on September 23, 2024. ECF No. 124. Rather than realleging their claims of monopolization and attempted monopolization of the general search services market under Section 2 of the Sherman Act, the TAC alleges that Google monopolized the markets for "general search services" (first claim for relief) and "general search text advertising" (second claim for relief) via various distribution agreements. *Id.* ¶¶ 375–95. In addition to content from *United States v. Google*, the TAC also imports material from yet another case with no connection to Plaintiffs themselves—*Brown v. Google LLC*, 4:20-cv-3664-YGR—a class action with contract and privacy claims, not any Sherman Act claims. Otherwise, the TAC repeats many pages of unfounded allegations about Google's operations and the markets in which Google allegedly operates. All the while, the TAC still lacks concrete, non-conclusory, and plausible factual allegations of any harms that Plaintiffs suffered and how they would not have occurred but-for Google's alleged misconduct.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

discovered evidence from the *United States v. Google* litigation. *Arcell v. Google LLC*, 2024 WL 3749006, at *2 (N.D. Cal. Aug. 9, 2024)

alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully"; it requires the facts pleaded to push the asserted claim across "the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). To determine whether a complaint satisfies that requirement, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. And as "the Supreme Court has emphasized, its insistence on specificity of facts is warranted before permitting a case to proceed into costly and protracted discovery in an antitrust case, especially where, as here, the potential expense of discovery is obviously great." *Arcell III*, 2024 WL 3738422, at *6.

## ARGUMENT

### I. Plaintiffs' Claims Fail for Lack of Antitrust Standing.

"Unlike the United States government, which may sue anyone who violates the federal antitrust laws, a private plaintiff must show standing to sue." *Id.* at *1. Courts consider several factors when deciding whether a private plaintiff has established antitrust standing: "(1) the nature of the plaintiffs' alleged injury . . .; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). Pleading the first factor—antitrust injury—is "mandatory" to establish antitrust standing. *Arcell III*, 2024 WL 3738422, at *3 (quoting *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021). But the presence of antitrust injury is not enough, as antitrust standing can fail depending on the weakness of the other factors. *Id.* at 461 (finding antitrust injury but rejecting antitrust standing "in light of the indirectness of the [plaintiff's] injuries, the existence of more direct victims, the speculative measure of harm, and the difficulty in calculating damages").

Plaintiffs have repeatedly failed to establish antitrust standing. In the first Complaint, Judge Davila deemed Plaintiffs' allegations of harm too "vague and conclusory" to show antitrust injury, let alone antitrust standing. *Arcell I*, 2023 WL 5336865, at *5. In the FAC, Plaintiffs did not add material facts that fixed their faulty pleading, and this Court found antitrust standing and antitrust injury lacking, though the Court focused only on Plaintiffs' failure to allege unlawful conduct in making that determination. *Arcell II*, 2024 WL 1090009, at *2–6. And on their third try, Plaintiffs

again failed to show antitrust injury specific to themselves and to their legal claims, *Arcell III*, 2024 WL 3738422, at *4, let alone any of the other antitrust standing factors.  The fourth time is no charm: the TAC recycles the same deficient allegations—adding many words but neglecting to fix the deficiencies clearly identified by the Court—leaving antitrust standing unestablished.

  ***Antitrust Injury.***  To plead antitrust injury, a plaintiff must allege: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id.* (citation omitted).  Moreover, a "fifth element" requires pleading a relevant market and establishing that "the injured party [is] a participant in the same market as the alleged malefactors." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted).  "Parties whose injuries" occur "in another market do not suffer antitrust injury.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citation omitted).  In the last round, this Court explained that Plaintiffs offered allegations that were "too conclusory," and "proffered inferences [that were] too speculative, to plausibly support the asserted theories of antitrust injury." *Arcell III*, 2024 WL 3738422, at *4.  The same is true again.

  Rather than making any progress toward antitrust standing, Plaintiffs have actually rolled backwards since the last complaint.  Plaintiffs have now added an entirely new alleged market—the market for "general search text advertising."  *See* TAC ¶¶ 388–95.  Plaintiffs, however, are not participants in that advertising sales market (as they must be, for any anticompetitive effect to have caused them antitrust injury, *see Qualcomm Inc.*, 969 F.3d at 992).  The TAC provides no allegations to support standing for Plaintiffs to sue for alleged injuries in this market—neither in the section introducing Plaintiffs, TAC ¶¶ 37–40, nor the section on supposed relevant markets, ¶¶ 120–24.[2] The appearance of this new alleged market ostensibly springs from its appearance in Judge Mehta's opinion in *United States v. Google* (the "D.D.C. Opinion").  TAC ¶ 123.  But this haphazard addition to the TAC exhibits the perils of relying reflexively on rulings from other litigations.

  There are deeper issues with Plaintiffs' reliance on the D.D.C. Opinion, which provides them no shortcuts on antitrust injury.  "[E]ven in cases involving *per se* violations" such as price fixing, plaintiffs must still "show that the conspiracy caused *them* an injury for which the antitrust laws

---

[2] The Second Claim for Relief thus lacks a defined market and can be dismissed on this basis.

1  provide relief." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis in
2  original).  Just because conduct is "unlawful, it does not, of course, necessarily follow that still
3  another party is a person injured" by the conduct to establish antitrust injury, much less that any and
4  every party that files a lawsuit is injured under the statute.  *Id.*  Moreover, in determining
5  anticompetitive effects, the D.D.C. Opinion expressly used a "relaxed" standard of causation
6  designed for a "regulator . . . seeking only injunctive relief" that permits a court to "infer causation"
7  when there is conduct that merely "reasonably appears capable of making a significant contribution
8  to maintaining monopoly power."  2024 WL 3647498, at *104 (D.D.C. Aug. 5, 2024).  In contrast,
9  to show antitrust injury, Plaintiffs here must plead facts establishing that the conduct they complain
10 of actually *caused* a harm to *them* "that flows from that which makes the conduct unlawful" and "is
11 of the type the antitrust laws were intended to prevent." *Arcell I*, 2023 WL 5336865, at *5.

12        Plaintiffs also have failed to establish antitrust injury for their alleged claim implicating a
13 general search services market.  Even assuming Plaintiffs have adequately pleaded a relevant market
14 of "general search services in the United States," TAC ¶ 120, they have failed to articulate any
15 concrete and traceable injury arising from the Google Defendants' alleged conduct.  The TAC pleads
16 nothing about Plaintiffs' personal use of Google Search or other search engines—other than to note
17 generally that each plaintiff "was a user of Google and other search services on the internet."  *Id.*
18 ¶ 38.  That critically neglects any specifics on how Plaintiffs' search experiences would have differed
19 absent the alleged anticompetitive conduct.

20        In its last order, the Court methodically addressed Plaintiffs' supposed injuries and noted the
21 pleading deficiencies with each.  The TAC does not fix them.  On the supposed injury of diminished
22 innovation and search quality, the Court noted that Plaintiffs failed to include factual allegations
23 beyond their "vague and conclusory" assertions of harm.  *Arcell III*, 2024 WL 3738422, at *4.  The
24 TAC does not either.  Nowhere do Plaintiffs point to any facet of search quality that has been rendered
25 "inferior" from Google's alleged misconduct.  The closest the TAC comes is misconstruing the
26 D.D.C. Opinion and asserting that it found that DuckDuckGo (DDG) and Neeva (competitors to
27 Google in general search) would have competed more effectively and at a meaningful scale without
28 Google's exclusive default contracts. TAC ¶¶ 268–71.  But even then, Plaintiffs still fail to "identify

exactly what kind of choices, innovations, or quality improvements Plaintiffs expect would have occurred." *Arcell III*, 2024 WL 3738422, at *4; *see also Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (rejecting allegations of "reduced innovation and quality of service"); *Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997, 1013 (E.D. Wis. 2010) (dismissing monopolization claim for lack of plausible antitrust injury where plaintiff alleged "reduced competition, reduced innovation, reduced consumer choice, and lack of lower prices," and noting that "[a]lleging reduced competition is little more than a hidden legal conclusion alleging anti-competitive conduct."). What specific innovations would have occurred but did not? What quality improvements would have materialized? What gaps in quality between those search engines and Google Search exist currently? The TAC fails to say, and it cannot point elsewhere, as courts "are required to assess complaints based on the allegations in the four corners of the document." *Arcell III*, 2024 WL 3738422, at *6.[3]

On better user-privacy protections that Plaintiffs have been supposedly missing out on, the TAC again fails to furnish factual allegations to support its vague and conclusory assertions. At most, it mentions DDG, asserting that without Google's default contracts, DDG would "compete effectively" and achieve more than the "limited success" it has found so far. TAC ¶ 269. The most glaring impediment to this theory of injury is that DDG is a currently operational search engine, which Plaintiffs are today free to use as they so choose. To the extent Plaintiffs contend that DDG would have been *even more* privacy-protective absent Google's default agreements, the TAC does not allege facts to support that—indeed, DDG is not dependent upon any scale to design privacy features for its search engine. Plaintiffs ignored the Court's direction to plead "what the search market looked like before the default contracts purportedly thwarted competition, such as whether firms competed on privacy or user data," and what the market looked like afterwards, "like whether those bases of

---

[3] Even if it were appropriate to look to outside sources, the D.D.C. Opinion's findings undercut Plaintiffs' allegations on this front. Far from "stunt[ed] innovation" and a dearth of "pressure to improve" search services, TAC ¶ 170(e)–(f), Judge Mehta found that Google has "innovated consistently," producing the "highest quality search engine," *Google*, 2024 WL 3647498, at *2. In fact, "Google has used its scale advantage to improve the quality of its search product," *id.* at *19, and its "superior product quality rests in part on its numerous innovations over the years," *id.* at *25. The court also explicitly rejected that Google's distribution agreements "have had an anticompetitive effect by deterring Google from innovating in search." *Id.* at *120.

competition were diminished or eliminated" and how. *Arcell III*, 2024 WL 3738422, at *5 (citing *Somers*, 729 F.3d at 964).[4]

The TAC also reruns allegations that Plaintiffs could have been paid for their data in a world in which Google faced more competition. On that point, the Court previously explained that the "mere conceivability or possibility" of antitrust injury does not suffice at the pleading stage, and that Plaintiffs failed to provide "any factual basis for plausibly inferring . . . that users would be compensated for their search data" by search engines "in a search market unrestrained by the default contracts." *Id.* at *5. That description remains true. What the TAC added was pages of allegations propping up the notion that Google collects metrics and data based on search usage, and speculating that such data could have monetary value because it assists Google in providing higher quality search results (e.g., improving its algorithm) and operating its search advertising business. TAC ¶¶ 214–71.[5] But the notion that users' online data could hold measurable value or be monetized was a notion already assumed by the Court when it concluded that Plaintiffs had not adequately pleaded antitrust injury. *Arcell III*, 2024 WL 3738422, at *4–5. Plaintiffs fail to fill the specific holes identified by the Court—namely, "factual allegations supporting a plausible inference that in a [more] competitive market, viable search alternatives would have emerged that . . . paid users for the data that Google now acquires without compensation." *Id.* at *5. The TAC supplies various extraneous examples of platforms that purportedly "permit consumers to monetize their data" in the loosest sense, TAC ¶ 257, but of course none are general search engines. Plaintiffs still nowhere allege that any search

---

[4] Here again, the D.D.C. Opinion undercuts Plaintiffs' theory of harm (factually unsupported as it is). The court there *declined* to find that Google embraced fewer privacy protections than its rivals because of a lack of competition. *Google*, 2024 WL 3647498 at *75–76. Instead, the court found that there "is some tradeoff between privacy and search quality," and "Google's employees convincingly testified that Google refrained from particular privacy measures adopted by rivals [in order] to prioritize an improved user experience." *Id.* at *76. That finding undercuts the notion that any of Google's conduct at issue here caused a reduction in user privacy.

[5] The Google Defendants reiterate—as they did in their prior Motion to Dismiss, ECF No. 97 at 6–7 & n.4—that the baseless allegation that Google sells personal user data to advertisers or anyone else is utterly false. Google has made clear in publicly available sources that it does not sell user data to anyone. *See Google: How Our Business Works*, https://about.google/how-our-business-works/#:~:text=Advertisers%20do%20not%20pay%20us,to%20personalize%20ads%20to%20you. The TAC's drive-by summation of various disconnected parts of Google's business is replete with additional factual inaccuracies. The Google Defendants will refrain from furnishing a point-by-point refutation in this filing, and the absence of any express denial of an allegation in the TAC by no means signals that the Google Defendants acknowledge the allegation's veracity.

engine has ever paid users to visit its website or paid them for their search data, nor do Plaintiffs explain why search engines would have done so in a hypothetical world without Google's default contracts. Plaintiffs cannot cry foul for not being paid for data that no company in the industry (or countless free, ad-supported websites) has ever paid for, and then blame Google's free search engine that they need not use.

The TAC also copies liberally from the D.D.C Opinion and the summary judgment order in *Brown v. Google LLC*, the latter of which merely ruled, as relevant here, that those "plaintiffs had sufficiently alleged their browsing histories carried financial value." 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023). But it does not automatically follow that just because browsing history data might have value, general search engine users would ever have been paid for search query data in a supposedly more competitive general search services market. In addition, browsing history is distinct from search history—the former includes the websites a user visits on a browser like Apple Safari or Google Chrome, while the latter contains the search queries that a user sends to a search engine website to receive search results. The data is markedly different. As with the last complaint, Plaintiffs again fail to provide "any factual basis for plausibly inferring that the browser market is sufficiently comparable to the search market" such that it can serve as a suitable comparator. *Arcell III*, 2024 WL 3738422, at *6. Despite the Court flagging this very issue, *id.*, the TAC elides the difference between the distinct types of data and the distinct hypothetical markets for such data, TAC ¶ 221, with no attempt to justify that interchangeability via factual allegations.

In addition, for all purported harms, Plaintiffs fail to allege that any injury "flow[ed] from that which makes the [Google Defendants'] conduct unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The TAC premises the alleged harms on "Google's exclusive default and revenue sharing agreements" that allegedly locked in Google's market share. TAC ¶ 13. But at no point do Plaintiffs connect all the dots from their alleged injuries back to Google's alleged exclusive agreements and explain how Plaintiffs' circumstances would differ in the absence of the agreements. Plaintiffs' claims cannot survive the lack of antitrust injury, and dismissal is again warranted on this ground.

1 **Directness of the Injury.** Even if Plaintiffs plausibly alleged antitrust injury, the injury is certainly not direct. To assess directness, courts "look to the chain of causation between [Plaintiffs'] injury and the alleged restraint in the market." *Am. Ad Mgmt.*, 190 F.3d at 1058. "There must be not a mere causal link, but a direct effect." *Jacobsen v. Katzer*, 2006 WL 3000473, at *3 (N.D. Cal. Oct. 20, 2006) (cleaned up). Plaintiffs allege no direct path. The TAC alleges in vague and conclusory fashion that "Google has in effect blotted out other companies that could provide the marketplace with products that would ultimately be better for Plaintiffs and for consumers in general. When there is fair competition on the merits, consumers will end up with more choice and better products." TAC ¶ 383. Plaintiffs never explain precisely which "other companies" they have not been able to use or why they have been prevented from using them since they are all free and easily accessed from any computer or mobile device. They mention DDG and Neeva in passing, *id.* ¶ 268, but it is entirely speculative that such companies would have thrived absent Google's agreements with third parties given Google's superior search quality. Plaintiffs' claims require piling speculation on speculation for a disconnected chain of events. Courts routinely dismiss claims on antitrust standing grounds where, as here, "the chain of causation between [the] injury and the alleged restraint . . . contains several somewhat vaguely defined links." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983). This factor weighs strongly in favor of dismissal. *See Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1117 (E.D. Cal. 2002) (finding "no direct injury" where claims depended on "a multitude of speculative intervening events"); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663, at *7 (N.D. Cal. Apr. 29, 2011) (rejecting theory of injury as "simply too attenuated"); *City of Oakland*, 20 F.4th at 459 (affirming dismissal for lack of antitrust standing in part because of indirectness of injury).

**Speculative Measure of Harm.** Plaintiffs' alleged harm also is prohibitively speculative. Given the "many speculative links in the chain of causation" required by the TAC's theory, there can be "no way of knowing[] what would have occurred" but for the alleged conduct, including "whether [Plaintiffs] would have avoided the harm [they] allege[]" altogether. *City of Oakland*, 20 F.4th at 459–61. Even if Plaintiffs could prove causation, it would require judicially unmanageable speculation to calculate any differences in the "quality," "privacy," or "use of consumer data"

between Google's search services and the services available in the world Plaintiffs imagine. "It would be entirely speculative and beyond the competence of a judicial proceeding to create in hindsight a technological universe that never came into existence" and "even more speculative to determine the relevant benefits and detriments that non-[Google] products would have brought to the market." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006) (affirming dismissal of claims on antitrust standing grounds and explaining that "the harms that the plaintiffs have alleged with respect to the loss of competitive technologies are so diffuse that they could not possibly be adequately measured"); *see City of Oakland*, 20 F.4th at 459 ("The [Plaintiff] has not alleged—and there is no way of knowing—what would have occurred in a more competitive marketplace."). Likewise, to accept Plaintiffs' arguments on lost compensation, the Court would need to invent from scratch a hypothetical marketplace for pricing user data in the hypothetical world in which Google faced more competition and the search market responded by paying users for data. What would a search user's data be worth? Is every user's data equally valuable? The TAC has pleaded no facts whatsoever to suggest that Plaintiffs could reliably quantify such damages. This factor also weighs heavily against finding antitrust standing in the TAC.

       ***Risk of Duplicative Recovery and Complexity in Apportioning of Damages.*** "The risk to be avoided under [the duplicative recovery] factor is that potential plaintiffs may be in a position to assert conflicting claims to a common fund," *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987), whereas difficulties in apportioning damages might occur when claimants at multiple different layers of a supply chain seek remuneration, *see Associated Gen. Contractors*, 459 U.S. at 545. These two factors "can be condensed and considered alongside each other," *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 913 (N.D. Cal. 2019), and are not present here.[6] The absence of these two factors, however, does not signify the presence of antitrust standing. Rather, the "indirectness" of Plaintiffs' vague injuries, "the speculative measure of harm, and the difficulty in

---

[6] The Google Defendants understand that Plaintiffs have dropped any request for disgorgement, which appeared in earlier complaints but not the TAC. To the extent that is incorrect, the Google Defendants reiterate that disgorgement is unavailable for private parties such as Plaintiffs. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016) ("[T]he Ninth Circuit disallows private use of Section 16 to pursue disgorgement."); *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (same). If permitted, disgorgement could pose risks for duplicative recovery by Plaintiffs.

calculating damages" all show that Plaintiffs have not pleaded facts establishing that they have antitrust standing to pursue their claims. *City of Oakland*, 20 F.4th at 461 (finding sufficient showing of antitrust injury and no risk of duplicative recovery or complex apportionment of damages, yet affirming overall absence of antitrust standing and dismissal on that basis).

In sum, the TAC fails to allege facts sufficient to show antitrust injury under the dispositive first factor of the antitrust standing inquiry, while the deficiencies in pleading any direct, measurable, non-speculative injury for these Plaintiffs in particular independently confirms the lack of antitrust standing for Plaintiffs' claims. The Court should thus dismiss the TAC.

## II.   Plaintiffs' Claims are Untimely.

This Court already ruled that "to the extent Plaintiffs seek recovery based on incidents that occurred before April 22, 2018, these claims are **DISMISSED WITHOUT LEAVE TO AMEND**." *Arcell II*, 2024 WL 1090009, at *5. But even if the TAC stated viable monopolization claims, laches bars Plaintiffs' claim for injunctive relief entirely. The four-year statute of limitations in 15 U.S.C. § 15b furnishes a guideline for computation of laches. *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1205 (9th Cir. 2014). The TAC states that the Google Defendants started entering into allegedly anticompetitive exclusive deals almost *two decades ago*, in 2005. TAC ¶¶ 34, 67, 72–73, 272. Such agreements were publicly reported for years, with no actions by Plaintiffs. *Id.* A "suit seeking equitable relief will be barred if a party has inexcusably delayed pursuing his claim and his adversary has been prejudiced as a result." *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 n.4 (9th Cir. 2014). The Court rejected Plaintiffs' justifications for delay when rejecting their past fraudulent concealment arguments. *Arcell I*, 2023 WL 5336865, at *6; *Arcell II*, 2024 WL 1090009, at *6.

Fraudulent concealment again does not apply to save Plaintiffs' claims, as they have never adequately pleaded the elements of the doctrine: A plaintiff alleging fraudulent concealment must plausibly allege that (1) the "defendant engaged in affirmative acts to mislead the plaintiff"; (2) the "plaintiff lacked actual or constructive knowledge"; and (3) the "plaintiff acted diligently in seeking to uncover facts." *Arcell I*, 2023 WL 5336865, at *6. Never before the TAC had Plaintiffs contested that the existence of the Google-Apple agreements was public knowledge, and their earlier complaints acknowledge as much. Regardless, the TAC now alleges that Plaintiffs "could not have

discovered Defendants' violations by the exercise of due diligence," TAC ¶ 373, but that is not the same as asserting that Plaintiffs did, in fact, *act* with due diligence. There are no such factual allegations. The doctrine of laches thus bars Plaintiffs' long-overdue injunctive claims. *Reveal Chat Holdco*, 471 F. Supp. 3d at 991–92 (dismissing monopolization claims under doctrine of laches).

### III. All Defendants Except Google LLC Should Be Dismissed for Independent Reasons.

First, neither claim in the TAC is alleged against Defendant Alphabet Inc. or Defendant XXVI Holdings, Inc. *See* TAC ¶¶ 375–95. Since there are no longer any claims against those two defendants, they should—like the Apple Defendants before them—be dismissed from this action with prejudice. *See, e.g.*, *Swan v. R.J. Donovan C.F.*, 2022 WL 2134605, at *3 (S.D. Cal. June 14, 2022) (dismissing defendant named "in the caption of" a complaint where the plaintiff "d[id] not assert any specific claims for relief against" the defendant).

Next, the Court should also dismiss the claims against Sundar Pichai and Eric Schmidt (the "Individual Defendants"). A plaintiff pursuing Sherman Act claims against individuals must plausibly allege their direct participation in, knowing approval of, or ratification of inherently wrongful conduct. *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1040–41 n.4, 1050–51 (N.D. Cal. 2021). The TAC revolves around vertical agreements that are not *per se* unlawful under Ninth Circuit precedent, so Plaintiffs cannot plausibly allege that the Individual Defendants knowingly approved of or ratified "inherently wrongful" acts. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987). Plaintiffs named the Individual Defendants solely because of their alleged roles as executives and do not plausibly suggest their involvement beyond that capacity. The claims against the Individual Defendants thus can be dismissed on these additional independent grounds.

### IV. The Court Should Dismiss the TAC's Request for Divestiture.

The Court should also dismiss Plaintiffs' request for divestiture. *See* TAC ¶¶ 33, 398(a). To obtain permanent injunctive relief such as divestiture, a plaintiff must prove, *inter alia*, "that it has suffered an irreparable injury" and "that remedies available at law, [like] monetary damages, are inadequate." *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007). The TAC's conclusory injury assertions are insufficient to allege any harm, let alone irreparable harm. *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1070–75 (N.D. Cal. 2015). But even assuming

1  Plaintiffs suffered an injury, they have pleaded no facts entitling them to "the extreme remedy of
2  divestiture." *Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011) (citation
3  omitted). Simply put, the "[h]ypothetical anticompetitive conduct, speculative monopoly power, and
4  remote injuries" that Plaintiffs allege "do not merit [this] extreme remedy." *Id.* at 1122.

**V.  The Court Should Dismiss the TAC Without Further Leave to Amend.**

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment," and a "court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (cleaned up). Plaintiffs have already amended three times, filing four complaints in this action. Consistent with the Court's warning that the TAC would "likely be their last opportunity to amend," *Arcell III*, 2024 WL 3738422, at *8, dismissal here should be with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' TAC with prejudice.

DATED: November 6, 2024         **WILLIAMS & CONNOLLY LLP**

By: /s/ *John E. Schmidtlein*

John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:     jschmidtlein@wc.com
Email:     cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*