UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY KATHERINE ARCELL, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC, et al.,<br><br>　　　　Defendants. | Case No.  22-cv-02499-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 129 |

　　　　Plaintiffs are twenty-six consumers who use Google and other search engines.  They allege that Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Google CEO Sundar Pichai, and former Google CEO Eric Schmidt (collectively, "Google") have unlawfully foreclosed competition in the U.S. general search services and general search text advertising markets through an exclusive dealing arrangement with Apple and other companies.  Under these default contracts, Google is allegedly preloaded as the exclusive default search engine across Apple's products, as well as devices made by others like Samsung.  Google's motion to dismiss the Third Amended Complaint for failure to state a claim is granted in part and denied in part.  This ruling assumes the reader is familiar with the facts, applicable law, and the arguments made by the parties.

　　　　***Section 2 Monopolization Claim in the U.S. General Search Services Market.***  The § 2 claim for monopolization in the U.S. general search services market was previously dismissed because Plaintiffs failed to plausibly allege antitrust injury.  *Arcell v. Google LLC*, No. 22-CV-02499-RFL, 2024 WL 3738422, at *3–7 (N.D. Cal. Aug. 9, 2024).  Specifically, Plaintiffs

1

offered no non-speculative facts supporting a plausible inference that Google's use of default contracts prevented an alternative market from emerging in which Google or its competitors would have offered search engines that are more privacy protective, serve less ads, or compensate users for their search data.  *Id.* at *5–6.

Plaintiffs still fail to plausibly allege antitrust injury based on their theory that Google's default contracts have stifled the development of search engines that compensate users for their search data.  While the Third Amended Complaint adds more words, it does not cure the fundamental defect previously identified by the Court:  "Beyond conclusory assertions, Plaintiffs offer no facts to make plausible their claim that if Google had not foreclosed competition, an alternative market would have materialized in which search engines . . . compensate users for their search data."  *Id.* at *5.  The Third Amended Complaint remains "devoid of any factual basis for plausibly inferring that the browser market is sufficiently comparable to the search market."  *Id.* at *6.  Plaintiffs also newly allege that "a number of platforms have appeared that permit consumers to monetize their data."  (Dkt. No. 124 ("TAC") ¶ 257.)  But none of the identified platforms are alleged to be search engines.  Nor do Plaintiffs offer any allegations explaining how the various markets to which these platforms belong are similar to the general search services market.

However, Plaintiffs now adequately allege antitrust injury based on their theory that Google's allegedly anticompetitive use of default contracts have precluded competitors from providing consumers high-quality search products that are more privacy protective and ad-free.  Citing the district court's findings of fact following the bench trial in *United States v. Google*, No. 20-CV-3010, 2024 WL 3647498 (D.D.C. Aug. 5, 2024), the Third Amended Complaint alleges that Google's default contracts "foreclosed efficient channels of distribution and resulted in network effects that made it difficult for competitors to gain the volume of users and user data that would allow the development of high-quality search products."  (TAC ¶ 268.)  Plaintiffs identify two competitors, Neeva and DuckDuckGo, which are alleged to be "the only two notable market entrants in the last 15 years."  (*Id.* ¶ 269 (quoting *Google*, 2024 WL 3647498, at

2

\*114).)  Plaintiffs allege that Neeva attempted "to create a subscription-based model for search that did not serve ads" but was ultimately "driven out of the search [market]" because the default contracts "prevented Neeva from developing sufficient user data."  (*Id.* ¶ 269.)  Similarly, Plaintiffs allege that DuckDuckGo, a privacy-focused search engine, "cannot compete effectively because of Google's exclusionary default search agreements and [DuckDuckGo's] ensuing lack of access to sufficient user data."  (*Id.*)  Thus, while "[e]ach attempted to innovate— [DuckDuckGo] on privacy and Neeva through a subscription-based model," they "found only limited success ([DuckDuckGo]) or left the market altogether (Neeva)" as a result of the default contracts.  (*Id.* (quoting *Google*, 2024 WL 3647498, at \*114).)  At the pleading stage, these allegations are sufficient to support the plausible inference that in a more competitive market, viable search alternatives would have emerged that offer greater privacy protections or are less clogged with ads.  *See Arcell*, 2024 WL 3738422, at \*5, \*7.

      Nor do the other factors for establishing antitrust standing warrant dismissal.  Unlike antitrust injury, which is mandatory and "give[n] great weight," these factors are not conclusive.  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) ("To conclude that there is antitrust standing, a court need not find in favor of the plaintiff on each factor."); *see also City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455–56 (9th Cir. 2021).  The allegations identified above are not so speculative that Plaintiffs' injury is not sufficiently direct or cannot be adequately measured.  As consumers, Plaintiffs plausibly allege a direct injury from their inability to access high-quality search products that are more privacy protective and less clogged with ads.  Moreover, resolution of the "complex and intensely factual" damages-apportionment issues at this stage is premature absent "a more fully developed factual record."  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 4505701, at \*11 (N.D. Cal. Aug. 21, 2013) (citation omitted); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC, 2021 WL 4306018, at \*10 (N.D. Cal. Sept. 22, 2021) (same).  That is particularly so here, given the direct nature of Plaintiffs' alleged injury as consumers.  The motion to dismiss the § 2 claim for monopolization in the U.S. general search services

market is therefore denied.

***Section 2 Monopolization Claim in the General Search Text Advertising Market.*** For the first time, Plaintiffs assert a § 2 claim for monopolization in the general search text advertising market. As an initial matter, Plaintiffs did not seek leave from the Court or obtain Defendants' consent to add this new cause of action, in contravention of the Court's order. *See Arcell*, 2024 WL 3738422, at *8 ("Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15."). Plaintiffs are cautioned to comply fully with all court orders going forward.

In any event, this claim is inadequately pled. "Antitrust violations must be judged on a market-by-market basis." *United States v. Syufy Enters.*, 903 F.2d 659, 672 n.22 (9th Cir. 1990). Plaintiffs do not sufficiently define the relevant product market or its scope. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) ("Without a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition." (cleaned up)); *see also In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1159 (9th Cir. 2019) ("To plausibly plead a monopolization claim, plaintiffs must allege . . . the possession of monopoly power in the relevant market.").

Even assuming that Plaintiffs have alleged a relevant product market, the Third Amended Complaint fails to explain how Plaintiffs—as users of Google and other search engines and who are not alleged to be advertisers—are participants in the general search text advertising market and have been harmed by anticompetitive effects in that market. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (explaining that "in assessing alleged antitrust injuries, courts must focus on anticompetitive effects in the market where competition is allegedly being restrained," and that "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury" (cleaned up)).

Accordingly, the motion to dismiss the § 2 claim for monopolization in the general search text advertising market is granted. Dismissal is without leave to amend. For one, Plaintiffs "fail

to state what additional facts they would plead if given leave to amend." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when prior opportunity to amend had been given."). In addition, Plaintiffs have already had three opportunities to amend their complaint. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (cleaned up)). More fundamentally, amendment appears futile because this theory of antitrust injury does not apply to Plaintiffs, who are users of search engines rather than advertisers. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020).

**Laches**. "Determining whether delay was unexcused or unreasonable and whether prejudice ensued," which a defendant must prove to establish the affirmative defense of laches, "necessarily demands 'a close evaluation of all the particular facts in a case.'" *L.B. v. W. Contra Costa Unified Sch. Dist.*, No. 16-CV-04382-DMR, 2017 WL 1208394, at *6 (N.D. Cal. Apr. 3, 2017) (quoting *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000)). As such, laches "is seldom susceptible of resolution by summary judgment," let alone "[a]t the motion-to-dismiss phase . . . because the defendant must rely exclusively upon the factual allegations set forth in the complaint." *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008); *see also, e.g.*, *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666–67 (9th Cir. 1980) ("[W]here laches is raised as a defense the factual issues involved can rarely be resolved without some preliminary evidentiary inquiry." (cleaned up)); *Chamberlin v. BNSF Ry. Co.*, No. 22-CV-00005-RS, 2022 WL 717818, at *2 (N.D. Cal. Mar. 10, 2022) (laches is "generally fact-intensive and ill-suited for resolution at the pleading stage").

Google's laches defense raises factual questions about when Plaintiffs knew or should have known about the default contracts, the reasonableness of any delay in filing suit, and whether the delay prejudiced Google. *See Planet Drum Found. v. Hart*, No. 17-CV-02676-JCS,

2017 WL 4236932, at *7 (N.D. Cal. Sept. 24, 2017). Because Google identifies no basis on which the Court may resolve those issues as a matter of law on the pleadings, the motion to dismiss based on laches is denied. *See id.* ("[A] court can grant a motion to dismiss when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the defense." (cleaned up)).

    *Divestiture and Disgorgement*. Rule 12(b)(6) "only sanctions dismissal for failure to state a claim," not prayers for relief. *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 942 (S.D. Cal. 2022) (citation omitted) (collecting cases). Divestiture and disgorgement are equitable remedies, rather than standalone causes of action. *See United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961) (divestiture); *Roberts v. UBS AG*, No. CV F 12-0724, 2013 WL 394701, at *15 (E.D. Cal. Jan. 30, 2013) (disgorgement); *see generally* 6C Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 653 (5th ed. 2021). The Court may ultimately agree that divestiture and disgorgement are not appropriate in this case. Indeed, disgorgement has not been sought in the prayer for relief in the Third Amended Complaint. However, that determination is not within the scope of Rule 12(b)(6) and is therefore premature at this juncture. *See Huynh v. Northbay Med. Ctr.*, No. 2:17-CV-2039, 2018 WL 4583393, at *4 (E.D. Cal. Sept. 25, 2018). The motion to dismiss those remedies is therefore denied on this basis alone.

    *Remaining Defendants*. As an initial matter, Plaintiffs impermissibly seek to incorporate their arguments from a prior round of motion to dismiss briefs. "The incorporation of substantive material by reference is not sanctioned by the federal rules." *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996); *Bruce M. v. Sutter W. Bay Med. Grp. Health & Welfare*, No. 22-CV-06149-JST, 2023 WL 6277269, at *7 n.6 (N.D. Cal. Sept. 25, 2023). While the Court in its discretion will consider the purportedly incorporated arguments, all arguments Plaintiffs seek to make in the future must be raised in the briefing on the particular motion at issue.

    As to Defendants Pichai and Schmidt, the motion to dismiss is granted. As Google

argues, to state a claim against a corporate officer under the Sherman Act, "Plaintiffs are required to plead that the individuals actively participated in 'inherently wrongful conduct.'" *Hightower v. Celestron Acquisition, LLC*, No. 5:20-CV-03639-EJD, 2021 WL 2224148, at *11 (N.D. Cal. June 2, 2021) (quoting *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 853 (N.D. Cal. 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981)); *see also, e.g.*, *In re Cal. Bail Bond Antitrust Litig.*, No. 19-CV-00717-JST, 2020 WL 3041316, at *17 (N.D. Cal. Apr. 13, 2020). By failing to respond to that argument, Plaintiffs concede it. *See Tovar v. City of San Jose*, No. 5:21-CV-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (collecting cases). Regardless, the allegations regarding Pichai and Schmidt concern their involvement with Google's default contracts, vertical agreements that are not *per se* unlawful. *See Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, No. 12-CV-05847-JST, 2013 WL 3242245, at *9–10 (N.D. Cal. June 25, 2013) (exclusive dealing arrangement is a vertical agreement subject to rule of reason that is not illegal *per se*); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 n.3 (9th Cir. 2015).[1]

The dismissal of Pichai and Schmidt is without leave to amend. Plaintiffs have amended their complaint three times. Despite having the benefit of Google's motions to dismiss their First Amended Complaint and Second Amended Complaint, both of which raised this precise issue (Dkt. No. 70 at 32–33; Dkt. No. 97 at 16),[2] Plaintiffs still fail to state a claim against Pichai and Schmidt. Plaintiffs identify no reason to believe that further amendment would cure this repeated pleading defect, failing to describe any additional facts that they would allege if given leave to amend. *See Kendall*, 518 F.3d at 1052; *Salameh*, 726 F.3d at 1133.

Google also seeks to dismiss Defendants XXVI Holdings Inc. and Alphabet Inc. on the

---

[1] The *per se* § 1 claim based on allegations of a secret horizontal agreement between Google and Apple, under which Apple agreed not to compete in the search market, was dismissed with prejudice. *See Arcell*, 2024 WL 3738422, at *3 n.2.

[2] Citations to page numbers refer to the ECF pagination.

ground that no claims have been brought against them. Google LLC is alleged to be a subsidiary of XXVI Holdings, which in turn is allegedly a subsidiary of Alphabet. (TAC ¶ 41.) The Third Amended Complaint states that it collectively refers to all three of those Defendants as "Google" (*id.*), and asserts the remaining § 2 monopolization claim against "Google" (TAC at 69). As such, the operative complaint does assert a claim against XXVI Holdings and Alphabet, and the motion to dismiss is therefore denied as to them.[3]

\*   \*   \*

Based on the foregoing, Google's motion to dismiss the Third Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.

Because Plaintiffs have stated a valid claim upon which relief can be granted, the discovery stay (Dkt. No. 47) is **LIFTED**. *See Arcell v. Google LLC*, No. 22-CV-02499-RFL, 2024 WL 1090009, at \*6 (N.D. Cal. Feb. 5, 2024).

**IT IS SO ORDERED.**

Dated: January 16, 2025

RITA F. LIN
United States District Judge

---

[3] In lumping Defendants together in this way, Plaintiffs do not appear to specify why liability for the alleged misconduct necessarily extends to XXVI Holdings and Alphabet. *See Brand Techs., Inc. v. Cox Enters.*, No. CV1605038, 2016 WL 11742893, at \*6 (C.D. Cal. Dec. 6, 2016) ("[I]t is axiomatic that [the parent-subsidiary] relationship does not establish a parent's liability for the acts of a subsidiary."). However, this order does not address that issue because Defendants do not seek dismissal on this basis.