John E. Schmidtlein (CA SBN 163520)
Graham Safty (admitted *pro hac vice*)
Kees D. Thompson (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
Email:        jschmidtlein@wc.com
              gsafty@wc.com
              keesthompson@wc.com

*Attorneys for Defendants Google LLC,
Alphabet Inc., and XXVI Holdings Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY KATHERINE ARCELL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, ALPHABET INC., and XXVI HOLDINGS INC.,<br><br>Defendants. | Case No. 3:22-cv-02499-RFL-SK<br><br>**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:        Hon. Rita F. Lin |

**NOTICE OF MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 28, 2026, at 10:00 a.m. in Courtroom 15 of this Court, located on the 18th Floor of the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendants Google LLC, Alphabet Inc., and XXVI Holdings Inc. (collectively "Google") will move the Court for an order granting summary judgment and dismissing the case.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 because Google is entitled to judgment as a matter of law on Plaintiffs' claim. The Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of John E. Schmidtlein and the exhibits submitted herewith; any reply memorandum; the pleadings and files in this action; and such other matters that Google may present at or before the hearing.

DATED:  May 26, 2026    **WILLIAMS & CONNOLLY LLP**

By: */s/ John E. Schmidtlein*

John E. Schmidtlein (CA State Bar No. 163520)
Graham Safty (admitted *pro hac vice*)
Kees D. Thompson (admitted *pro hac vice*)

WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
Email:        jschmidtlein@wc.com
              gsafty@wc.com
              keesthompson@wc.com

*Attorneys for Defendants Google LLC,*
*Alphabet Inc., and XXVI Holdings Inc.*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................3

    A.    Plaintiffs' Single Claim ................................................................................3

    B.    Search Defaults in Third-Party Web Browsers .........................................4

    C.    Preloaded Search Access Points on Android Devices...............................6

    D.    Plaintiffs and Their Use of General Search Engines ................................7

LEGAL STANDARDS ...................................................................................................................8

    A.    Summary Judgment .....................................................................................8

    B.    Damages ......................................................................................................8

    C.    Equitable Relief ..........................................................................................8

    D.    Antitrust Injury ...........................................................................................8

    E.    Collateral Estoppel .....................................................................................9

ARGUMENT .................................................................................................................................10

I.    PLAINTIFFS CANNOT RECOVER DAMAGES OR OBTAIN OTHER
RELIEF..............................................................................................................................10

    A.    No Evidence Supports Plaintiffs' Demand for Damages ........................10

    B.    No Evidence Supports Plaintiffs' Demand for Any Other Form of Relief...........11

II.    PLAINTIFFS DID NOT EXPERIENCE ANTITRUST INJURY...................................13

    A.    No Evidence Supports Plaintiffs' Theory of Antitrust Injury ...............13

    B.    The *U.S. v. Google* Opinion Does Not Create a Triable Issue as to
Antitrust Injury .........................................................................................17

III.    THE COURT SHOULD DENY PLAINTIFFS' SUMMARY JUDGMENT
MOTION ...........................................................................................................................22

CONCLUSION ..............................................................................................................................25

MOTION FOR SUMMARY JUDGMENT          CASE NO. 3:22-CV-02499-RFL-SK

**TABLE OF AUTHORITIES**

**CASES**

*Allied Orthopedic Appliances Inc. v. Tyco Healthcare Grp. LP*,
592 F.3d 991 (9th Cir. 2010) .................................................................................... 18, 22

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
135 F. Supp. 2d 1031 (N.D. Cal. 2001)............................................................................ 15

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ..................................................................................................... 8

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
116 F. Supp. 2d 1159 (C.D. Cal. 2000)............................................................................ 13

*Argus Inc. v. Eastman Kodak Co.*,
801 F.2d 38 (2d Cir. 1986) ....................................................................................... 9, 19

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) ..................................................................................................... 8

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021)...................................................................................... 9, 18

*City of Vernon v. So. Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992) .................................................................................. 8, 11

*Clark v. Bear Stearns & Co.*,
966 F.2d 1318 (9th Cir. 1992) .................................................................................. 9, 22

*Datagate, Inc. v. Hewlett-Packard Co.*,
941 F.2d 864 (9th Cir. 1991)......................................................................................... 16

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ............................................................................................... 11, 13

*Emich Motors Co. v. Gen. Motors Co.*,
340 U.S. 558 (1951) ..................................................................................................... 20

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020)...................................................................................... 3, 12

*Ginsburg v. InBev NV/SA*,
623 F.3d 1229 (8th Cir. 2010) ....................................................................................... 13

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
998 F.2d 391 (7th Cir. 1993)...................................................................................... 19, 23

*Grisham v. Philip Morris, Inc.*,
670 F. Supp. 2d 1014 (C.D. Cal. 2009)................................................................... 23, 24, 25

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ...................................................................................... 12, 22

- ii -

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  2016 WL 748089 (S.D.N.Y. Jan. 7, 2016) ................................................................ 25

*In re eBay Seller Antitrust Litig.*,
  2010 WL 760433 (N.D. Cal. Mar. 4, 2010) .............................................................. 19

*In re Google Digital Advertising Antitrust Litig.*,
  2025 WL 3012840 (S.D.N.Y. Oct. 27, 2025)............................................................. 18

*In re Microsoft Corp. Antitrust Litig.*,
  232 F. Supp. 2d 534 (D. Md. 2002).......................................................................... 22

*In re Microsoft Corp. Antitrust Litig.*,
  355 F.3d 322 (4th Cir. 2004) ................................................................................... 25

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008) .................................................................................... 8, 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 914 (9th Cir. 2015).............................................................................. 14, 19

*In re Pre-Filled Propane Tank Antitrust Litig.*,
  893 F.3d 1047 (8th Cir. 2018) ................................................................................. 12

*In re Wellbutrin XL Antitrust Litig.*,
  868 F.3d 132 (3d Cir. 2017) .................................................................................... 14

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  946 F.3d 995 (8th Cir. 2019) ................................................................................... 15

*Jack Faucett Assocs. v. AT&T*,
  744 F.2d 118 (D.C. Cir. 1984).................................................................................. 25

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................................... 9, 22

*Klein v. Meta Platforms, Inc.*,
  2025 WL 2772690 (N.D. Cal. Sept. 29, 2025)......................................................... 15

*Legal Econ. Evals., Inc. v. Metro. Life Ins.*,
  39 F.3d 951 (9th Cir. 1994) ............................................................................. 2, 9, 20

*Littlejohn v. United States*,
  321 F.3d 915 (9th Cir. 2003) ................................................................................... 23

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
  801 F.3d 1150 (9th Cir. 2015) ......................................................................... 2, 9, 14

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) .................................................................... 2, 8, 10, 11

*Nw. Pubs., Inc. v. Crumb*,
  752 F.2d 473 (9th Cir. 1985) ................................................................................... 14

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ................................................................................ *passim*

*Pooshs v. Philip Morris USA, Inc.*,
  904 F. Supp. 2d 1009 (N.D. Cal. 2012) ................................................................. 25

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................................. 2, 8

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ................................................................................ 22

*Taleff v. Sw. Airlines Co.*,
  828 F. Supp. 2d 1118 (N.D. Cal. 2011) ................................................................. 12

*Toscano v. PGA Tour, Inc.*,
  201 F. Supp. 2d 1106 (E.D. Cal. 2002) ................................................................. 10

*United States v. Google LLC*,
  747 F. Supp. 3d 1 (D.D.C. 2024) ................................................................... *passim*

*United States v. Google LLC*,
  803 F. Supp. 3d 18 (D.D.C. 2025) ......................................................................... 13

*United States v. Rylander*,
  714 F.2d 996 (9th Cir. 1983) ............................................................................. 3, 23

*United States v. Sine*,
  493 F.3d 1021 (9th Cir. 2007) ............................................................................... 20

*Univac Dental Co. v. Dentsply Int'l, Inc.*,
  702 F. Supp. 2d 465 (M.D. Pa. 2010) ................................................................... 18

*Wash. Alder LLC v. Weyerhaeuser Co.*,
  2004 WL 1119822 (D. Or. May 19, 2004) ............................................................ 24

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ................................................................................. 10

**OTHER AUTHORITIES**

15 U.S.C. § 16 ........................................................................................................... 9

15 U.S.C. § 26 ........................................................................................................... 8

Fed. R. Civ. P. 56(a) ................................................................................................. 8

Fed. R. Civ. P. 56(c)(1) ........................................................................................ 6, 23

MOTION FOR SUMMARY JUDGMENT                    CASE NO. 3:22-CV-02499-RFL-SK

**INTRODUCTION**

Plaintiffs, 22 serial litigants represented by the same counsel in numerous other cases, have failed to show antitrust injury or damages notwithstanding ample opportunities to conduct fact and expert discovery in this case. Plaintiffs' Third Amended Complaint alleged a single claim involving a single theory of antitrust injury. ECF No. 137 at 2. Specifically, Plaintiffs claim that Google unlawfully maintained a monopoly "in the U.S. general search services market" through the "allegedly anticompetitive use of default contracts" that purportedly "have precluded competitors from providing consumers high-quality search products that are more privacy protective and ad-free." *Id.* at 1-2.

Plaintiffs did essentially nothing to attempt to prove this claim. They sought no discovery from any company that purports to have offered a more privacy protective or ad-free general search engine. Schmidtlein Decl. ¶ 3. Instead, they relentlessly sought depositions of Google's most senior officers and founders, while ignoring the only claim that withstood a Rule 12(b)(6) motion. *See, e.g.*, ECF Nos. 171, 183, and 191. Plaintiffs' remaining discovery efforts focused entirely on theories this Court dismissed and attempts to "reinstate" non-party Apple as a defendant. *See generally* ECF No. 230. And after fact discovery closed, Plaintiffs served no expert reports at all. Schmidtlein Decl. ¶ 2.

On May 4, 2026, Plaintiffs filed a motion for partial summary judgment arguing that collateral estoppel should paper over some of their many failures of proof. *See* ECF No. 242. The motion is based on *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024), which Plaintiffs quoted in the operative complaint. While Plaintiffs' arguments are erroneous in numerous respects discussed below, their motion is also immaterial because Google is entitled to summary judgment based on elements of Plaintiffs' claim that were not even litigated, let alone decided, in *U.S. v. Google*.

First, the Court should enter summary judgment for Google because no evidence supports Plaintiffs' claim for damages or any other form of relief. In response to Google's interrogatories, every Plaintiff stated "that they seek damages in amounts to be further supported by expert testimony." Pls.' Resp. to Interrog. No. 13.[1] But Plaintiffs did not serve an expert report addressing damages (or any other issue). Schmidtlein Decl. ¶ 2. "Summary judgment is appropriate where," as

---

[1] Citations to Plaintiffs' interrogatory responses refer to ECF Nos. 245-3 to 245-10; ECF Nos. 246 to 246-7; ECF Nos. 247 to 247-6; and Schmidtlein Decl., Exs. 2-22.

MOTION FOR SUMMARY JUDGMENT                                CASE NO. 3:22-CV-02499-RFL-SK

here, Plaintiffs "have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988). A jury cannot be "left to speculation or guesswork in determining the amount of damages to award," *id.* (quotations omitted), yet that is the only possible outcome given Plaintiffs' complete failure of proof.

Second, the Court should enter summary judgment for Google because no evidence supports Plaintiffs' theory of antitrust injury. Causal antitrust injury was not at issue in *U.S. v. Google* because the plaintiffs were government enforcers seeking equitable relief, but it "is an element of all antitrust suits brought by private parties seeking damages." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). Among other things, Plaintiffs must "prove a direct causal connection between the alleged violation and the alleged injury." *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1160 (9th Cir. 2015) (quotations omitted). But there is no evidence in this case that Plaintiffs were injured in any respect, and certainly no evidence that Google's search distribution agreements caused injury to Plaintiffs by "preclud[ing] competitors from providing" Plaintiffs with "high-quality search products that are more privacy protective and ad-free." ECF No. 137 at 2. Plaintiffs adduced no evidence that any party to a search distribution agreement with Google wanted to set a more privacy protective or ad-free search engine as the default in a browser or preload it on a device, let alone that any such party refrained from doing so because of the alleged exclusive dealing. *See* Section II.A *infra*. And there is no evidence that more privacy protective or ad-free search engines would have attracted more users or improved in quality even if they had received more distribution. *See id.* For these reasons and others, Google is entitled to summary judgment because "the private plaintiff[s]" here have not met their burden to "link [their] own injury to the *anticompetitive* aspect of the defendants' conduct." *Legal Econ. Evals., Inc. v. Metro. Life Ins.*, 39 F.3d 951, 954 (9th Cir. 1994).

If the Court grants Google's motion for summary judgment on any of these grounds, then Plaintiffs' motion is moot. Nevertheless, Plaintiffs' motion should also be denied because they have not met their burden to show that collateral estoppel applies to establish liability in this case. As "[t]he party asserting collateral estoppel," Plaintiffs "must show," among other things, "that the estopped issue is identical to an issue actually litigated and decided in the previous action." *Pool Water Prods.*

2

*v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001).  But Plaintiffs ignore the dispositive differences between their case and *U.S. v. Google* in seeking "summary judgment on liability and causation."  ECF No. 242-1 at 2.  For example, Plaintiffs have the "initial burden to prove that the challenged" search distribution agreements had "a substantial anticompetitive effect that harm[ed] consumers in the relevant market."  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020).  In *U.S. v. Google*, the court analyzed anticompetitive effects only under a "relaxed" standard, which it stated is applicable "when a regulator is seeking only injunctive relief."  *Google*, 747 F. Supp. 3d at 152-53.  In so doing, the court disavowed any obligation to make findings about whether rival search engines would have achieved any material distribution and greater usage by consumers in a "but-for" world absent the challenged provisions in the agreements.  *See, e.g.*, *id.*  Plaintiffs cannot establish that this lesser burden applies when evaluating potential anticompetitive effects in a private action for damages where "but-for" proof is essential, and "[i]t is an elementary principle of issue preclusion that it may only be asserted where the burden of proof as to that issue is no greater than it was in the prior proceeding where the issue was decided."  *United States v. Rylander*, 714 F.2d 996, 1002 (9th Cir. 1983).[2]  And in all events, *U.S. v. Google* cannot preclude litigation of causal antitrust injury—a substantive element unique to private actions that requires different evidence supporting a different kind of causation and injury.  *See* Sections II.B, III *infra*.  For these reasons and others described below, the Court should enter summary judgment for Google and deny Plaintiffs' motion for partial summary judgment.

## BACKGROUND

### A.    Plaintiffs' Single Claim

After dismissing Plaintiffs' first three complaints, the Court concluded that Plaintiffs' Third Amended Complaint ("Complaint") adequately alleged "[a]t the pleading stage" a violation of Section 2 of the Sherman Act "based on their theory that Google's allegedly anticompetitive use of default contracts have precluded competitors from providing consumers high-quality search products that are more privacy protective and ad-free."  ECF No. 137 at 2-3.  Plaintiffs identified "two competitors" in

---

[2] The analysis of anticompetitive effects in *U.S. v. Google* was legally erroneous in various respects, and Google's appeal is pending as Case No. 26-5023 in the U.S. Court of Appeals for the D.C. Circuit.  However, Google does not raise those errors here, and this Court does not need to disagree with *U.S. v. Google* to grant Google's motion for summary judgment and deny Plaintiffs' motion.

connection with this claim: DuckDuckGo ("DDG"), which markets itself as "a privacy-focused search engine," and Neeva, which pursued "a subscription-based model" without ads. *Id.* The Complaint alleged that "[a]s a result of Google's use of anticompetitive exclusionary default agreements with Apple and others that foreclosed DDG's and Neeva's access to the large volume of user data needed to offer the same high quality of search to End-users as Google, Plaintiffs and End-users have been injured because they are deprived of the better-quality privacy and ad-free searches from Google's competitors, DDG and Neeva, which those companies offered." ECF No. 124 ¶ 271.

Plaintiffs did not serve an expert report addressing this theory of injury (or any other issue). Schmidtlein Decl. ¶ 2. They also did not serve subpoenas on DDG, Neeva, or anyone who has ever been affiliated with those companies. *Id.* ¶ 3. And Plaintiffs did not pursue discovery from most of the parties to the agreements that they alleged were anticompetitive, including web browser developers (such as Mozilla), Android smartphone manufacturers (such as Samsung and Motorola), and wireless carriers (such as AT&T, T-Mobile, and Verizon). *Id.* The only non-party entity that received a subpoena from Plaintiffs in this case is Apple, but the discovery Plaintiffs sought was unrelated to their lone theory of antitrust injury and instead was directed to a claim that the Court dismissed with prejudice. *See generally* ECF Nos. 209, 209-1, and 230; Schmidtlein Decl., Ex. 1.

**B.     Search Defaults in Third-Party Web Browsers**

Companies that develop web browsers have long designed their browsers with a default search engine that responds to users' queries entered in the browser's address bar or dedicated search interface. Schmidtlein Decl., Ex. 23 ¶¶ 19-21. For example, Google Search is the default search engine in Google's Chrome browser, Microsoft Bing is the default in Microsoft's Edge browser, and DDG is the default in DDG's browser. *Id.*

Since the early 2000s, third-party browser developers such as Apple and Mozilla have sought and received revenue-share payments from Google and other search engines in exchange for default placement. *Id.* ¶¶ 36, 63. For instance, Mozilla set Google as the default in its Firefox browser from 2004 to 2014 pursuant to a revenue-share agreement with Google. *Id.* ¶¶ 20, 36. From 2014 to 2017, Mozilla instead set Yahoo as the default search engine in Firefox in the U.S. pursuant to a revenue-share agreement with Yahoo. *Id.* ¶¶ 44, 99. And when Mozilla decided to switch the default back to

4

Google in 2017, Mozilla again negotiated revenue-share terms with Google. *Id.* ¶¶ 44, 101. Under the browser default agreements challenged by Plaintiffs in this case, the browser developer generally agreed to set Google as the default search engine in its browser during the term of the agreement. By way of example, the agreement with Apple provided that "Apple will pre-set and use the [Google Search] Services as the Default search service for Search Queries in Apple's web browser software (e.g., Safari or successor versions)." ECF No. 245-2 at 1. The term "Default" meant that the Google Search "Services will automatically be used for responding to Search Queries initiated from [Apple's] Web Browser Software, unless the End User selects a different third-party search service." *Id.*

In addition to setting a default search engine in their browsers, companies such as Apple and Mozilla have for many years earned revenue by promoting search engines in other ways. For example, Apple promotes Bing and Yahoo by setting them as default bookmarks or favorites in Safari in exchange for revenue-share payments. Schmidtlein Decl., Ex. 23 ¶¶ 73-74. Apple also has revenue-share agreements with several search engines (including DDG) that it has decided to integrate as "secondary" default options in Safari's settings menu, where users can easily change their default in Safari to one of those search engines instead of Google. *Id.* ¶¶ 75-76.

In *U.S. v. Google*, the court determined that the browser default agreements referenced above were a form of exclusive dealing. *Google*, 747 F. Supp. 3d at 146-49. Following a three-week evidentiary hearing on remedies in 2025, the court entered a prohibitory injunction requiring modifications to these agreements. Schmidtlein Decl., Ex. 24 §§ III.L-M. The injunction has a six-year term and is currently in effect. *Id.* § VIII. The injunction does not prohibit Google from entering into default agreements; rather, it requires Google to allow browser developers additional contractual flexibility but it does not prevent browser developers from continuing to set Google as the default across various versions of browsers in exchange for revenue-share payments. *See id.* §§ III.L-M.

Plaintiffs adduced no evidence that Apple, Mozilla, or any other browser developer ever wanted to set a different search engine as the default in its browser but declined to do so because of an agreement with Google. In fact, the evidence adduced in *U.S. v. Google* was to the contrary. *See, e.g.*, Schmidtlein Decl., Ex. 25 at 2578:12-2579:11, 2583:11-22; Ex. 26 at 79:20-80:24, 87:17-87:24, 100:3-101:13. Nor is there evidence here or in *U.S. v. Google* that any browser developer wanted to

5

extend any other promotional opportunity to a more privacy protective or ad-free search engine but declined to do so because of a purportedly exclusive agreement with Google. *See, e.g.*, Schmidtlein Decl., Ex. 25 at 2592:6-2594:7; Ex. 27 at 3156:1-18.[3]

### C.    Preloaded Search Access Points on Android Devices

Companies that manufacture and sell computers, smartphones, and tablets preinstall web browsers and other applications that make it easy for users to search the web. Schmidtlein Decl., Ex. 23 ¶¶ 160, 206. For example, original equipment manufacturers (OEMs) that make Windows PCs have entered agreements to exclusively preload Microsoft's web browsers (Edge and Internet Explorer) with Microsoft Bing as the default search engine. *Id.* ¶ 206. Windows OEMs have not preloaded Google Search on PCs sold in the U.S. in more than a decade. *Id.* ¶¶ 206, 211.

However, OEMs such as Samsung and Motorola that make Android smartphones and tablets have often decided to preload Google on those devices pursuant to Mobile Application Distribution Agreements (MADAs) with Google. Under the MADAs challenged by Plaintiffs here, Google gave OEMs a zero-royalty license to a suite of popular Google applications and services, including the Google Play Store, Google Maps, and the Chrome browser. *Id.* ¶¶ 155-56, 162-64. In exchange for this royalty-free license to use Google's apps, OEMs who wished to preload Google apps on a device agreed to preload all of the apps in the suite on that specific device and to place on the default home screen the Play Store, the Google Search widget, and a folder with the remaining Google apps. *Id.* The MADA did not prohibit OEMs from preloading any non-Google apps on a device. *Id.* ¶¶ 162-64.

Additionally, some Android OEMs and wireless carriers that sell Android smartphones (such as AT&T, T-Mobile, and Verizon) have entered revenue-share agreements (RSAs) with Google. *Id.* ¶¶ 176-78. Under the RSAs challenged here, OEMs and carriers generally decided on a device-by-device basis whether to promote Google more prominently on the device, such as by placing the Chrome browser in an easily accessible location or refraining from preloading another general search app. *Id.* Users who wanted to use a search service that was not preloaded could always do so by

---

[3] Because the trial transcripts from *U.S. v. Google* were produced in this case, Google cites them pursuant to Rule 56(c)(1) to illustrate that they do not present a genuine dispute of material fact that could defeat summary judgment.

MOTION FOR SUMMARY JUDGMENT                                    CASE NO. 3:22-CV-02499-RFL-SK

downloading it from the Google Play Store or other Android app store (*e.g.*, the Samsung Galaxy Store that is preloaded on all Samsung devices) or navigating to its website (*e.g.*, bing.com). *Id.* ¶¶ 182-84.

In *U.S. v. Google*, the court concluded that the MADAs and RSAs referenced above were a form of exclusive dealing. *Google*, 747 F. Supp. 3d at 149-52. The court entered a prohibitory injunction requiring modifications to both MADAs and RSAs that is currently in effect and has a six-year term. Schmidtlein Decl., Ex. 24 §§ III.A-K, VIII. Again, the injunction did not prohibit Google from competing for preload and promotion on Android devices or otherwise require OEMs or carriers to preload non-Google search engines or browsers on any Android device. *See id.*

Plaintiffs adduced no evidence that any Android OEM or wireless carrier ever wanted to preinstall another search engine on a device but declined to do so because of an agreement with Google. *See, e.g.*, Schmidtlein Decl., Ex. 28 at 48:24-49:24; Ex. 29 at 337:20-338:04, 342:23-343:25. Nor is there evidence here or in *U.S. v. Google* that any OEM or carrier wanted to extend any other promotional opportunity to a "more privacy protective" or "ad-free" search engine but declined to do so because of a purportedly exclusive agreement with Google. *See, e.g.*, Schmidtlein Decl., Ex. 29 at 263:11-264:6; Ex. 30 at 1086:20-1088:20.

### D.      Plaintiffs and Their Use of General Search Engines

Plaintiffs are 22 individuals who attempt to earn money by filing and settling antitrust lawsuits. Collectively they have been plaintiffs in at least 17 cases filed by the same lead counsel, with each Plaintiff having been party to at least 6 different actions. Schmidtlein Decl. ¶¶ 8-9.

Every Plaintiff in this case chooses to use Google's free search engine even when it is not preloaded on a computer or laptop device pursuant to a challenged distribution agreement. For example, every Plaintiff uses Google on at least one Windows PC, even though Google has not received preload distribution on Windows PCs in the U.S. since 2015. *See* Pls.' Resp. to Interrog. Nos. 1-3; Schmidtlein Decl., Ex. 23 ¶¶ 206, 211. No Plaintiff could describe a specific circumstance where they wanted to use another general search engine, let alone one that was more privacy protective and/or ad-free, but were unable to do so. *See* Pls.' Resp. to Interrog. No. 8.

MOTION FOR SUMMARY JUDGMENT                                    CASE NO. 3:22-CV-02499-RFL-SK

## LEGAL STANDARDS

### A.     Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).

### B.     Damages

Plaintiffs bear the burden of proving damages, and they "must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award." *McGlinchy*, 845 F.2d at 808 (quotations omitted). "Summary judgment is appropriate where [Plaintiffs] have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *Id.* By the same token, summary judgment should be entered where there are "serious flaws" in the "only possibly admissible damage study," including where it "fail[s] to segregate the losses, if any, caused by acts which were not antitrust violations from those that were." *City of Vernon v. So. Cal. Edison Co.*, 955 F.2d 1361, 1372-73 (9th Cir. 1992).

### C.     Equitable Relief

Under certain circumstances, a private plaintiff may obtain "injunctive relief … against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. "Plaintiffs must demonstrate," among other things, "a significant threat of injury from an impending violation ... or from a contemporary violation likely to continue or recur." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 13 (1st Cir. 2008) (quotations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* at 14.

### D.     Antitrust Injury

Plaintiffs bear the burden of establishing "causal antitrust injury," which "is an element of all antitrust suits brought by private parties seeking damages under Section 4 of the Clayton Act." *Rebel Oil*, 51 F.3d at 1433; *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110-13 (1986). Among other things, "the private plaintiff must link its own injury to the *anticompetitive* aspect of the

MOTION FOR SUMMARY JUDGMENT                                    CASE NO. 3:22-CV-02499-RFL-SK

defendants' conduct." *Legal Econ. Evals.*, 39 F.3d at 954. An antitrust defendant is entitled to summary judgment when the plaintiff "fails to prove a direct causal connection between the alleged violation and the alleged injury." *Magnetar Techs.*, 801 F.3d at 1160.

Causal antitrust injury is not at issue in a government enforcement action such as *U.S. v. Google* because it arises from the provisions of the Clayton Act authorizing private actions. "Unlike the United States government, which is authorized to sue anyone who violates the antitrust laws, a private antitrust plaintiff" must "prov[e] everything that would entitle the government to relief" and "must also show," among other things, "that the acts violating the antitrust laws caused … it injury-in-fact to its business or property" and "that such injury is antitrust injury." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 n.10 (9th Cir. 2021) (quotations omitted). Thus, even where a claim is "based on the conduct of defendant … held to be an antitrust violation in" an earlier case, "an essential element" of the plaintiff's claim "is that the injuries alleged would not have occurred *but for* [defendant's] antitrust violation." *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 41 (2d Cir. 1986).

### E.  Collateral Estoppel

Plaintiffs seek partial summary judgment based on collateral estoppel, which is also known as issue preclusion. "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). "The burden is on the party seeking to rely upon issue preclusion to prove each of the elements have been met." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050-51 (9th Cir. 2008). Plaintiffs' motion also cites 15 U.S.C. § 16, which provides that under certain circumstances a final judgment in a case brought by "the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant." Under this provision, "the evidentiary use of the prior judgment is determined by reference to the general doctrine of estoppel" referenced above. *Pool Water Prods.*, 258 F.3d at 1031.

MOTION FOR SUMMARY JUDGMENT                                       CASE NO. 3:22-CV-02499-RFL-SK

**ARGUMENT**

The Court should enter summary judgment for Google on two independent grounds: (1) no evidence supports an award of damages or other relief, and (2) Plaintiffs did not experience an antitrust injury caused by the allegedly unlawful conduct. Entering summary judgment for Google on either or both grounds renders moot Plaintiffs' motion for partial summary judgment, which should also be denied because Plaintiffs have not met their burden to preclude litigation of liability issues in this case.

**I.    PLAINTIFFS CANNOT RECOVER DAMAGES OR OBTAIN OTHER RELIEF.**

**A.    No Evidence Supports Plaintiffs' Demand for Damages.**

The Court should enter summary judgment for Google because Plaintiffs have no "expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *McGlinchy*, 845 F.2d at 808.

Plaintiffs' failure to serve an expert report is dispositive because they repeatedly acknowledged that any damages awarded in this case would need to be based on expert testimony. For example, Plaintiffs refused to describe their claimed damages in response to Google's interrogatories, and they instead asserted "that they seek damages in amounts to be further supported by expert testimony." Pls.' Resp. to Interrog. No. 13. When pressed for information during depositions, Plaintiffs could not quantify or even describe their claimed damages. One testified "I leave it to the experts to decide," another replied "I don't have an amount," and a third stated "I cannot answer" and "I do not have a dollar figure." Schmidtlein Decl., Ex. 31 at 87:3-25; Ex. 32 at 112:3-16; Ex. 33 at 88:10-89:24. Another Plaintiff sarcastically responded: "Well, personally, I'd love to have $10 million. That would be nice." Schmidtlein Decl., Ex. 34 at 80:2-20.

Courts have recognized that "[e]xpert testimony is necessary to establish damages in an antitrust case," and this one is no exception. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012). As Plaintiffs' discovery responses confirm, lay evidence alone would not allow a jury to fairly estimate monetary damages attributable to purportedly having diminished access to "high-quality search products that are more privacy protective and ad-free." ECF No. 137 at 2; *see Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1124-26 (E.D. Cal. 2002) (entering summary judgment where antitrust plaintiff's "evidence of damages would require a jury to engage in speculation or

10

guesswork"). Moreover, it is equally implausible that a jury unaided by expert testimony would be able to "segregate the losses, if any, caused by acts which were not antitrust violations from those that were." *City of Vernon*, 955 F.2d at 1372-73 (affirming summary judgment on Section 2 claims).

In all events, Google would be entitled to summary judgment even if expert testimony were not essential in this case. Every Plaintiff stated in response to Google's requests for production that they "will produce non-privileged documents in Plaintiff's possession, custody, or control relating to claimed damages." Schmidtlein Decl., Exs. 35-56 at Resp. to Req. No. 5. Yet no Plaintiff produced any such documents. That rules out the possibility of "designated documents providing competent evidence from which a jury could fairly estimate damages." *McGlinchy*, 845 F.2d at 808. Because Plaintiffs can "make no showing about the amount of damages" in this case, Google is entitled to summary judgment. *Id.*[4]

**B.    No Evidence Supports Plaintiffs' Demand for Any Other Form of Relief.**

Plaintiffs' complaint also demanded an injunction, including "injunctive relief prohibiting future unlawful acts" and "a forward-looking divestiture … dividing Google into separate and independent companies." ECF No. 124 ¶¶ 396-98. As with their demand for damages, Plaintiffs adduced no evidence (fact or expert opinion) in support of an award of equitable relief in this case, and the Court should enter summary judgment for at least three reasons.

First, under "well-established principles of equity, a plaintiff seeking a permanent injunction … must demonstrate," among other things, "that remedies available at law, such as monetary damages, are inadequate to compensate for [the alleged] injury." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiffs are unable to make that showing here. Plaintiffs did not assert that monetary damages are inadequate in response to Google's interrogatories, where they instead claimed "that they seek damages in amounts to be further supported by expert testimony." Pls.' Resp. to Interrog. No. 13. Injunctive relief is not warranted under Section 16 of Clayton Act where, as here,

---

[4] The arguments in Plaintiffs' motion for partial summary judgment have no bearing on their failure to adduce evidence supporting their request for damages or injunctive relief. Although Plaintiffs contend that certain issues purportedly determined in *U.S. v. Google* should be preclusive here, they admit that the *U.S. v. Google* "decision did not adjudicate the extent of users' and Plaintiffs' injuries or the amount of damages." ECF No. 242-1 at 25.

MOTION FOR SUMMARY JUDGMENT                                 CASE NO. 3:22-CV-02499-RFL-SK

"the harm which Plaintiffs allege … is expressed in terms of monetary damages." *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011), *aff'd* 554 F. App'x 598 (9th Cir. 2014).  The fact that Plaintiffs never offered an expert opinion regarding damages is not evidence that monetary relief is inadequate compensation; rather, it reflects their complete failure to adduce evidence that any form of relief is warranted in this case.

Second, Plaintiffs are not entitled to injunctive relief because there is no evidence of "a significant threat of injury from an impending violation ... or from a contemporary violation likely to continue or recur." *New Motor Vehicles*, 522 F.3d at 13.  Plaintiffs admit that their only claim is based on the same allegedly "exclusive default distribution agreements" addressed in *U.S. v. Google. See* ECF No. 242-1 at 7; *see also* ECF No. 137 at 3.  Those agreements have already been terminated or modified to conform to the prohibitory injunctions that took effect on February 3, 2026.  Schmidtlein Decl., Ex. 24 §§ III, VIII.  Although a preexisting injunction from a government enforcement action does not necessarily "preclude private injunctive relief," "the party seeking the injunction nonetheless has the burden of establishing that such cumulative relief is needed through the cognizable danger of recurrent violation." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (quotations omitted).  There is no evidence of any potential recurrence here.  The injunction in *U.S. v. Google* has a six-year term and contains numerous compliance measures, including an "internal Compliance Officer" and "a five-person Technical Committee to assist in enforcement of and compliance with th[e] Final Judgment."  Schmidtlein Decl., Ex. 24 §§ VII.A-B, VIII.  Plaintiffs' case relates to past conduct, and they have not adduced evidence that could support any form of injunctive relief. *See, e.g.*, *Qualcomm*, 969 F.3d at 1005 (concluding that even if "agreements were exclusive dealing contracts that substantially foreclosed competition in the relevant antitrust markets, it is undisputed that these agreements do not pose any current or future threat of anticompetitive harm" because the parties previously "terminated the agreements"); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 249-51 (3d Cir. 2010) (affirming summary judgment where private plaintiffs "failed to meet their burden of presenting evidence to show that they were entitled" to their own injunction after an injunction had been entered in a government enforcement action).

MOTION FOR SUMMARY JUDGMENT                                    CASE NO. 3:22-CV-02499-RFL-SK

Third, Plaintiffs cannot obtain an injunction without showing, among other things, that "a remedy in equity is warranted" in view of "the balance of hardships between the plaintiff and defendant" and "that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. But Plaintiffs did not pursue discovery in support of the injunctive relief demanded in their complaint. Schmidtlein Decl. ¶¶ 2, 6-7. For example, they sought no evidence from Google or any third party regarding their demand for a divestiture order "dividing Google into separate and independent companies." ECF No. 124 ¶ 398; *see* Schmidtlein Decl. ¶¶ 6-7. And they offered no expert opinion on how such an "extraordinary remedy" would affect the consumers and businesses that depend upon Google's products. *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1172 (C.D. Cal. 2000); *see Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235-36 (8th Cir. 2010) (affirming judgment on the pleadings because divestiture "would impose obvious hardship on the employees" of defendants "and might well damage competition and consumers by crippling the operations of the largest domestic producer of immensely popular products").

In *U.S. v. Google*, the court concluded that the government "Plaintiffs have not met their heavy burden to warrant the radical structural remedy of a forced divestiture of" Google's Chrome browser. *United States v. Google LLC*, 803 F. Supp. 3d 18, 101 (D.D.C. 2025) (quotations omitted). That decision followed a three-week evidentiary hearing on remedies, including testimony regarding the proposed divestiture from computer science experts who studied the feasibility of divesting Chrome and investment banking experts who considered its viability as a separate business. *See id.* at 100-01 (summarizing evidence and concluding "there would be nothing 'natural' about a Chrome divestiture," which "would be incredibly messy and highly risky"). In this case, Plaintiffs have not even attempted to adduce evidence in support of a radical structural remedy or any other form of injunctive relief. Google accordingly is entitled to summary judgment.

## II.     PLAINTIFFS DID NOT EXPERIENCE ANTITRUST INJURY.

### A.     No Evidence Supports Plaintiffs' Theory of Antitrust Injury.

The Court should also enter summary judgment on the alternative ground that there is no triable issue concerning whether Plaintiffs experienced an antitrust injury caused by the allegedly unlawful conduct. The only theory of antitrust injury that withstood a motion to dismiss in this case is that

13

"Google's allegedly anticompetitive use of default contracts have precluded competitors from providing consumers high-quality search products that are more privacy protective and ad-free."  ECF No. 137 at 2.  Summary judgment is warranted because Plaintiffs adduced no evidence that more privacy protective or ad-free search engines would have received additional default placement or preload distribution if not for the alleged exclusive-dealing conduct.  This failure of proof is dispositive because Plaintiffs must "prove a direct causal connection between the alleged violation and the alleged injury." *Magnetar Techs.*, 801 F.3d at 1160.  Yet there is no evidence that any party to an allegedly exclusive agreement with Google wanted to set a more privacy protective or ad-free search engine as a default in its browser or preload it on a device, let alone that any such company declined to do so due to the terms of any agreement with Google.  *See* Background §§ B, C *supra*.

Plaintiffs cannot "withstand summary judgment" by theorizing that privacy protective or ad-free search engines "*may* have been able to obtain" additional distribution without the alleged exclusive dealing.  *See In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 166 (3d Cir. 2017).  Rather, they must produce "evidence from which a reasonable jury could conclude that it is more likely than not that" parties to the allegedly exclusive agreements "*would* have" preloaded privacy protective or ad-free search engines on their devices or set them as the default in their browsers in the absence of the allegedly unlawful conduct.  *See id.*; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015) (affirming summary judgment where plaintiffs "failed to adduce evidence raising a triable issue of fact that if [a competitor] remained in the market, [the defendant] would have reduced its prices").  The discovery record in this case confirms that browser developers, OEMs, and wireless carriers wanted to distribute and promote Google, not that they would have replaced it with a more privacy protective or ad-free search engine in a but-for world without the challenged conduct.  *See* Background §§ B, C *supra*.  Google therefore is entitled to summary judgment.  *See, e.g.*, *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 922-24; *Nw. Pubs., Inc. v. Crumb*, 752 F.2d 473, 477 (9th Cir. 1985) (finding no antitrust injury from unlawful price-fixing provisions in agreements with distributors where "the distributors would choose the same long-range price" based on "their own long-term interests" in the absence of the price-fixing clauses).

14

MOTION FOR SUMMARY JUDGMENT                                      CASE NO. 3:22-CV-02499-RFL-SK

In addition (or in the alternative), the Court should enter summary judgment because Plaintiffs offered no expert opinion on antitrust injury. In this case, as is typical in Section 2 cases, "only expert testimony can demonstrate that any injury to plaintiffs was caused by defendants' unlawful conduct, and not because of lawful competition or other factors." *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1042 (N.D. Cal. 2001); *see also Klein v. Meta Platforms, Inc.*, 2025 WL 2772690, at *4 (N.D. Cal. Sept. 29, 2025), *appeal pending*, No. 26-6858 (9th Cir.) ("[P]roof of antitrust injury typically demands expert witness evidence."). The discovery record provides numerous reasons why more privacy protective or ad-free search engines have not received additional preload or default distribution. For example, browser developers, OEMs, and carriers want to promote a high-quality search engine that appeals to their users and enhances users' perception of the browsers and devices. *See* Schmidtlein Decl., Ex. 23 ¶¶ 23-25, 257-59. There is no evidence that any of these search distributors (or their users) prioritize privacy settings or ad load over search quality, particularly given that privacy settings can degrade search quality, such as by preventing the search engine from serving results that account for the user's current location. *See id.* ¶¶ 237-40, 244-48, 257-59. Browser developers, OEMs, and carriers also value a search engine's ability to pay a share of its search advertising revenue in exchange for distribution or promotion. *See id.* ¶¶ 34, 62-63, 257-59. There is no evidence that a search engine can meet a distributor's financial expectations without showing ads, particularly given the absence of consumer demand for a general search engine that charges users a fee to search instead of earning revenue through advertising. *See id.* ¶¶ 256, 267-70. Without expert testimony, Plaintiffs cannot show that any purported injury was caused by the alleged exclusive-dealing conduct, instead of other factors affecting whether search engines that market themselves as more privacy protective or ad-free are appealing to distributors and their users. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1003-04 (8th Cir. 2019) (affirming summary judgment because without the expert analysis "there is insufficient evidence to create an issue of fact as to whether the alleged antitrust violation was a material and substantial factor causing [plaintiffs'] alleged injuries"); *Am. Booksellers Ass'n*, 135 F. Supp. 2d at 1042 (concluding plaintiff "cannot prove causation of actual injury without … expert testimony").

15

Moreover, Plaintiffs' claim would fail as a matter of law even if one were to assume, contrary to all evidence, that a privacy protective or ad-free search engine would have received additional distribution in the absence of the challenged conduct. Among other things, Plaintiffs failed to adduce evidence that a more privacy protective or ad-free search engine would have attracted more users or improved in quality even if it were more widely promoted. *See* Schmidtlein Decl., Ex. 23 ¶¶ 263-70. Although Plaintiffs' failure of proof is sufficient to resolve their claim, there is also ample evidence in the discovery record disproving their theory. For example, in most European countries, regulations prohibit OEMs from setting Google as the out-of-the-box default search engine on Android smartphones, and users are required to select their preferred search engine from a choice screen where several competitors (including DDG) are displayed alongside Google. *See id.* ¶¶ 226-29. There is no evidence that any privacy protective or ad-free search engine has attracted more users or improved in quality in the years following the introduction of these choice screens. *See id.* ¶¶ 232-33. The data analyzed by Google's expert economist instead shows that the share of queries submitted to non-Google search engines on Android smartphones remained essentially unchanged for four years after the introduction of choice screens on those devices. *See id.* & Fig. 17. This analysis *overstates* the amount of promotion that other search engines would have received if not for the allegedly anticompetitive conduct because there is no evidence that any party to an agreement with Google wanted to show a choice screen instead of setting Google as the default. *See id.* ¶¶ 226-29. But even in a scenario where rival search engines receive equal prominence on users' smartphones (*i.e.*, a choice screen), no evidence supports any assertion that other search engines would have received more usage, and thus there is no evidence that Plaintiffs would have received more "high-quality search products that are more privacy protective and ad-free." ECF No. 137 at 2.

Finally, the Court should enter summary judgment for the additional (or alternative) reason that there is no evidence that the individuals who brought this case were personally injured at all. Even when a plaintiff "raise[s] material issues of fact concerning … antitrust injuries" (which Plaintiffs have not done here), summary judgment is warranted when the plaintiff is "unable to show any injury to itself." *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 868 (9th Cir. 1991) (concluding plaintiff "failed to show a causal connection between its own injuries and the alleged antitrust

16

injuries"). Plaintiffs alleged that they "have been injured because they are deprived of the better-quality privacy and ad-free searches from Google's competitors, DDG and Neeva, which those companies offered." ECF No. 124 ¶ 271. But these allegations are not supported by evidence. No Plaintiff identified a specific circumstance where they wanted to use DDG, Neeva, or any other search engine that purports to be more privacy protective or ad-free but were prevented from doing so. *See* Pls.' Resp. to Interrog. No. 8. No Plaintiff has even tried an ad-free search engine. *See* Pls.' Resp. to Interrog. No. 4. And the few Plaintiffs who want to use DDG or another search engine that purports to be more privacy protective have been able to do so even though it was not the default search engine or browser on their devices. *See, e.g.*, Schmidtlein Decl., Ex. 31 at 53:7-54:16, 56:15-57:7 (describing how Plaintiff uses both Google and DDG in Microsoft's Edge browser, where Bing is the default); Ex. 32 at 27:4-12, 28:18-29:8 (explaining Plaintiff never uses Google on her iPhone and will "usually go straight to DuckDuckGo"); Ex. 34 at 60:24-61:14 (confirming Plaintiff has downloaded DDG and is able to use it when he wants to).

Other information in the discovery record further confirms that Plaintiffs were not injured by the alleged conduct. For example, all 22 Plaintiffs use Google Search on a Microsoft Windows PC, even though Google has received no preload or default distribution on Windows PCs in the U.S. in more than a decade. *See* Pls.' Resp. to Interrog. Nos. 1-3; *see also* Schmidtlein Decl., Ex. 23 ¶¶ 206, 211. Some Plaintiffs do so by typing google.com into their browser; some have changed the default search engine in Microsoft's Edge browser from Bing to Google; and some have downloaded Google's Chrome browser and use it instead of Edge. *See, e.g.*, ECF No. 247-3 at Resp. to Interrog. Nos. 2-3; Schmidtlein Decl., Ex. 18 at Resp. to Interrog. No. 3; and ECF No. 245-5 at Resp. to Interrog. Nos. 2-3. Every Plaintiff could just as easily navigate to duckduckgo.com, change the default in their browser to DDG, or download DDG's browser. The fact that some Plaintiffs did not do so is not an injury at all, and it certainly is not an antitrust injury caused by the alleged exclusive-dealing conduct.

**B.**     **The *U.S. v. Google* Opinion Does Not Create a Triable Issue as to Antitrust Injury.**

In Plaintiffs' motion for partial summary judgment, they try to overcome their complete failure of proof through unsupported assertions that *U.S. v. Google* should preclude litigation of "injury" or "causation" in this case. ECF No. 242-1 at 6, 22, 24-25. Plaintiffs' position is flatly incorrect, and

17

they have not come close to showing that any issue concerning causal antitrust injury "is identical to an issue actually litigated and decided in the previous action." *Pool Water Prods.*, 258 F.3d at 1031.

Causal antitrust injury was neither litigated nor decided in *U.S. v. Google* because it was not an element of the plaintiffs' claims in that case. The opinion in *U.S. v. Google* did not mention antitrust injury at any point, including when it recited the "two elements" of the government plaintiffs' Section 2 claims. *Google*, 747 F. Supp. 3d at 106. In this private action, by contrast, "[t]here are three essential elements to a successful claim of Section 2 monopolization," including "causal antitrust injury." *Allied Orthopedic Appliances Inc. v. Tyco Healthcare Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010); *see City of Oakland*, 20 F.4th at 455 n.10 (explaining that "a private antitrust plaintiff" must "prov[e] everything that would entitle the government to relief" and "must also show," among other things, "that the acts violating the antitrust laws caused … it injury-in-fact to its business or property" and "that such injury is antitrust injury" (quotations omitted)). Courts therefore have declined to apply collateral estoppel to causal antitrust injury even when it applies to other elements of a Section 2 claim. *See, e.g.*, *In re Google Digital Advertising Antitrust Litig.*, 2025 WL 3012840, at *17 (S.D.N.Y. Oct. 27, 2025) ("Nothing in this Court's ruling on preclusion relieve[s] the Moving Plaintiff's burden of proving antitrust injury and damages."); *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 493 (M.D. Pa. 2010) (refusing to preclude litigation of "a causal relationship between the antitrust violation and the alleged injury" even though "it is absolutely clear that the finding of an antitrust violation was essential to the prior judgment" in a government enforcement action).

Although the court addressed what it deemed "causation" in *U.S. v. Google*, it did so only in the context of a different element of a Section 2 claim that is not the subject of Google's motion. Specifically, in evaluating whether the allegedly exclusive agreements had an anticompetitive effect, the court observed that "[a]nticompetitive effects analysis involves establishing a 'causal link,'" and it stated that the "key question" in that respect was whether "Google's exclusive distribution contracts *reasonably appear capable of significantly contributing to maintaining Google's monopoly power in the general search services market*." *Google*, 747 F. Supp. 3d at 153 (emphasis added).

This framing of the issue of anticompetitive effects was legal error and is one subject of Google's appeal in *U.S. v. Google*. But regardless, this "key question" is indisputably not the standard

18

for determining whether private plaintiffs experienced antitrust injury, *see* Section II.A *supra*, and it cannot relieve Plaintiffs here of their burden to meet the higher standard for proving causal antitrust injury. Even when a defendant is precluded from litigating whether its conduct had the requisite effect on competition (which is not the case here for the reasons discussed in Section III *infra*), a private plaintiff must still prove causal antitrust injury. *See Pool Water Prods.*, 258 F.3d at 1031 (concluding plaintiffs failed as a matter of law to show "antitrust injury as a result of the FMC acquisition" even though the FTC found the "effect of the FMC acquisition has been or may be substantially to lessen competition or to tend to create a monopoly" (cleaned up)); *Argus*, 801 F.2d at 40-41 (affirming summary judgment for defendant that "was collaterally estopped to deny the violation of Section 1 of the Sherman Act" because there was no "genuine issue of fact with regard to whether the" unlawful conduct "caused" plaintiffs' injury).

Furthermore, the court's description of "causation" in *U.S. v. Google* not only involved a different element of a Section 2 claim, but also a different legal standard and burden of proof. In *U.S. v. Google*, the court stated that under a "relaxed" standard applicable "when a regulator is seeking only injunctive relief," the form of "causation" referenced by the court "does not require but-for proof." *Google*, 747 F. Supp. 3d at 152-53 (stating the regulator "is not required to show that but for the defendant's exclusionary conduct the anticompetitive effects would not have followed"). This is *not* the standard for determining whether a plaintiff in a private damages action experienced antitrust injury. "In establishing antitrust injury, courts must … determine whether the violation was the cause-in-fact of the injury: that 'but for' the violation, the injury would not have occurred." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993); *see also* Section II.A *supra*. Time and again, courts enter summary judgment where plaintiffs fail to adduce evidence that their alleged injury would not have occurred in a but-for world without the purportedly unlawful conduct. *See, e.g.*, *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 922 (affirming summary judgment because plaintiffs "failed to adduce evidence raising a triable issue of fact" that "Netflix would have reduced its prices" in a counterfactual world where it had not entered an allegedly anticompetitive agreement); *In re eBay Seller Antitrust Litig.*, 2010 WL 760433, at *14 (N.D. Cal. Mar. 4, 2010), *aff'd* 433 F. App'x 504 (9th Cir. 2011) (entering summary judgment because plaintiffs' "comparison

19

between actual" prices and those "in the but-for world … is insufficient to permit a jury to determine whether the Plaintiffs were overcharged as a result of eBay's alleged anticompetitive acts").

Because *U.S. v. Google* is not preclusive as to causal antitrust injury, the opinion is not admissible evidence that could defeat Google's motion for summary judgment. *See United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (explaining that "a court judgment is hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment," and "it is even more plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay" (cleaned up)).[5] But even if the Court were to consider the findings in *U.S. v. Google*, they would only confirm the absence of a genuine dispute of material fact concerning causal antitrust injury in this case.

A portion of this Court's motion to dismiss opinion addressed DDG, which markets itself as a more privacy protective search engine. *See* ECF No. 137 at 2-3. Judge Mehta found that since 2014, Apple has "offered DDG as an alternative default search option on Apple devices" and that DDG delivered a "pitch to serve as the default in Safari private browsing mode." *Google*, 747 F. Supp. 3d at 95. But he concluded that "[u]pper-level Apple executives never genuinely considered using DDG as the default in Safari's private browsing mode." *Id.* at 96. "This is in part because DDG operates as 'a veneer on top of other search engines,' as it syndicates its results from Bing," and because "Apple's senior leadership also views DDG's search quality as inferior to Google's." *Id.* Judge Mehta did not find that Apple wanted to set DDG as the default in Safari's private browsing mode, let alone that it would have done so but for the purportedly exclusive terms of its agreement with Google. *See id.* His opinion is therefore another example of the absence of evidence linking Plaintiffs' "own injury" in this case to "the *anticompetitive* aspect of the defendants' conduct." *Legal Econ. Evals.*, 39 F.3d at 954.

This Court's motion to dismiss opinion also addressed Neeva, which marketed itself as an ad-free subscription search engine. *See* ECF No. 137 at 2-3. In *U.S. v. Google*, the court indicated that

---

[5] Plaintiffs' reference to Section 5(a) of the Clayton Act does not affect the analysis because the "evidentiary use which may be made under § 5 of the prior" judgment is "determined by reference to the general doctrine of estoppel." *Emich Motors Co. v. Gen. Motors Co.*, 340 U.S. 558, 568 (1951).

MOTION FOR SUMMARY JUDGMENT                                   CASE NO. 3:22-CV-02499-RFL-SK

"Neeva was unable to gain a position as an *alternative* default GSE," 747 F. Supp. 3d at 165 (emphasis added), but there is no evidence that any Google agreement ever restricted this form of distribution or promotion.  *See* Schmidtlein Decl., Ex. 23 ¶¶ 75, 269.  Indeed, Judge Mehta noted that DDG had such an "alternative default" position on Apple devices.  *Google*, 747 F. Supp. 3d at 95.  And Apple has likewise entered agreements with other search engines such as Microsoft, Yahoo, and Ecosia to integrate them as "alternative default" search options.  *See* Schmidtlein Decl., Ex. 23 ¶¶ 75, 269; *see also id.* ¶¶ 73-74.  That is also true of other parties to the allegedly exclusive agreements.  For example, Judge Mehta found that "[o]n Firefox, a drop-down menu allows users to select a non-default search provider for the next search," and "[i]n all major browsers, users can navigate to the browser's settings and change the default to their preferred GSE."  *Google*, 747 F. Supp. 3d at 44.  It was up to each browser developer to decide whether to integrate Neeva as an "alternative default GSE," and there is no evidence that any company ever refrained from promoting Neeva due to an allegedly exclusive agreement with Google.  *See* Background §§ B, C *supra*.

Other portions of the court's opinion in *U.S. v. Google* further highlight Plaintiffs' failure of proof with respect to causal antitrust injury.  The court concluded that "Google's partners value its quality, and they continue to select Google as the default because its search engine provides the best bet for monetizing queries."  *Google*, 747 F. Supp. 3d at 144; *see also id.* at 159 (stating that "GSE distributors prefer Google because of its search quality" and "high revenue share").  Plaintiffs adduced no evidence that any browser developer, OEM, or carrier would have made different default or preload decisions if not for the alleged exclusive dealing.  For example, there is no evidence that in a but-for world any party to an agreement with Google would have preferred a more private or ad-free search engine to a higher quality one when deciding which search engine to preload or set as a default, particularly given the "tradeoff between privacy and search quality."  *Id.* at 119; *see also* Section II.A *supra*.  Nor is there evidence that any party to an agreement with Google would have preferred to preload or set as the default a private or ad-free search engine that earned less shareable revenue from ad clicks instead of one that "provides the best bet for monetizing queries."  *Google*, 747 F. Supp. 3d at 144; *see also* Section II.A *supra*.

21

MOTION FOR SUMMARY JUDGMENT                                    CASE NO. 3:22-CV-02499-RFL-SK

### III.    THE COURT SHOULD DENY PLAINTIFFS' SUMMARY JUDGMENT MOTION.

Plaintiffs' motion for partial summary judgment is moot if the Court grants Google's motion on any of the grounds described above.  The Court should also deny Plaintiffs' motion because they have not met their "burden … to prove each of the elements" of issue preclusion "have been met." *Kendall*, 518 F.3d at 1050-51.  According to Plaintiffs, their "motion presents a straightforward legal question: should this court declare that the judgment in the case of *U.S. v. Google* … is collateral estoppel on the Defendant in this case such that judgment should be entered against … Google here on liability and causation?"  ECF No. 242-1 at 6; *see also id.* at 25.  The answer is no.

With respect to both "liability" and "causation," the "issue at stake" in this case is not "identical to the one alleged in the prior litigation," was not "actually litigated in the prior litigation," and was not "a critical and necessary part of the judgment in the earlier action."  *Clark*, 966 F.2d at 1320.  As discussed, Plaintiffs cannot establish "liability" or "causation" here without proving "causal antitrust injury," which is "a substantive element of" their claim.  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013); *see Allied Orthopedic*, 592 F.3d at 998.  Antitrust injury was neither litigated nor decided in *U.S. v. Google* because it was not an element of the government enforcers' claims.  *See* Section II.B *supra*.  In this case, as in others that follow from government actions to enforce the antitrust laws, "[n]othing in the government case against [Google] demonstrates that the consumer plaintiffs … suffered" an antitrust injury "caused by the asserted antitrust violation."  *In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp. 2d 534, 538 (D. Md. 2002), *rev'd on other grounds*, 355 F.3d 322 (4th Cir. 2004).  Plaintiffs' "motion[] for partial summary judgment on the issue of liability … therefore clearly fail[s]."  *Id.*; *see also Howard Hess Dental Labs.*, 602 F.3d at 246-47, 251-52 (affirming denial of motion for summary judgment by plaintiffs who copied a government enforcement action and "sought to meet their burden primarily by relying on the doctrine of collateral estoppel").

The issues of "liability" and "causation" at stake in this case also are not identical because the government plaintiffs in *U.S. v. Google* were held to a lower burden of proof.  As discussed, the court in that case applied a "relaxed" standard that purportedly is applicable "when a regulator is seeking only injunctive relief."  *Google*, 747 F. Supp. 3d at 152-53.  Plaintiffs have not established that this lower burden of proof would apply to determining the existence of an anticompetitive effect

MOTION FOR SUMMARY JUDGMENT                                    CASE NO. 3:22-CV-02499-RFL-SK

in this case, and it certainly does not apply to causal antitrust injury. *Compare Google*, 747 F. Supp. 3d at 153 ("Importantly, causation does not require but-for proof") *with Greater Rockford Energy & Tech.*, 998 F.2d at 395 ("In establishing antitrust injury, courts must … determine whether the violation was the cause-in-fact of the injury: that 'but for' the violation, the injury would not have occurred."). Any decision on the issues of "liability" or "causation" in *U.S. v. Google* is not preclusive here because "[i]t is an elementary principle of issue preclusion that it may only be asserted where the burden of proof as to that issue is no greater than it was in the prior proceeding where the issue was decided." *Rylander*, 714 F.2d at 1002; *see Littlejohn v. United States*, 321 F.3d 915, 924 (9th Cir. 2003) (concluding issue preclusion did not apply because the first case "resolv[ed] reasonable doubts in the claimants favor where there is an approximate balance of positive and negative evidence" while the second case required "a preponderance of the evidence").

Plaintiffs' failure to establish that Google is precluded from litigating "liability" or "causation" compels the denial of their motion. Although Plaintiffs' brief contains a jumble of excerpts from *U.S. v. Google*, Plaintiffs do not request estoppel on any other "issue," and they certainly do not provide adequate legal or factual support for any such request. For example, the sole relief sought in Plaintiffs' motion is a "judgment in favor of Plaintiffs on the issue of liability." ECF No. 242 at 2. And in their brief, Plaintiffs' description of their "straightforward legal question" refers only to "liability and causation." ECF No. 242-1 at 6. Moreover, Plaintiffs conclude by asking the Court to "adjudge and decree" that "Google's monopolization of the general search services [sic], as orchestrated by Google's executives Pichai and Schmidt, violates Section 2 of the Sherman Act" and "has injured consumers and users of Google search including the Plaintiffs." *Id.* at 25. Apart from "liability" and "causation" (or "injury"), Plaintiffs identify no other "issue" as to which they seek preclusion and no other "part" of their claim as to which they seek summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

Insofar as Plaintiffs' brief could somehow be interpreted as requesting collateral estoppel on any other "issue," Plaintiffs have completely failed to meet their "burden of establishing the necessary elements of issue preclusion." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1031-32 (C.D. Cal. 2009). Among other things, Plaintiffs would have needed to "identify the essential facts" and "establish that these facts meet the legal requirements for each issue as to which [Plaintiffs] seek[]

23

preclusive effect." *Id.* Even where an earlier government enforcement action involves findings that "would have been identical and relevant to issues raised" in a later case, "[n]either the district court nor the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings." *Pool Water Prods.*, 258 F.3d at 1033. Yet that is exactly what would be required if one were to look beyond the issues of "liability" and "causation" on which Plaintiffs actually seek preclusion and attempt to construct alternative arguments that Plaintiffs did not advance.

For example, Plaintiffs' brief asserts that in *U.S. v. Google* the court's "analysis directly adjudicated … [m]onopoly power through both direct and indirect evidence (*id.* at 117-124)." ECF No. 242-1 at 8. But the cited passage concludes that the government plaintiffs "offer little direct evidence," and the finding of indirect evidence of monopoly power was based on a trial record from 2023. *See Google*, 747 F. Supp. 3d at 118-22. Even when courts decide that a "Defendant is precluded from denying it had monopoly power" in earlier years, Plaintiffs still must "prove that [the] Defendant continued to possess monopoly power in" the other years encompassed by the claim, "as that question is beyond the scope of the [earlier] verdict." *Wash. Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1119822, at *4 (D. Or. May 19, 2004). Yet Plaintiffs do not identify an applicable time period in their motion, and there is certainly no basis for instructing a jury that Google possesses monopoly power in 2026 based on a trial in 2023. *See id.* While that would be true in any case, it is all the more apparent here given the explosive growth in recent years of generative artificial intelligence chatbots such as ChatGPT and Claude that compete with GSEs for user queries. *See* Schmidtlein Decl., Ex. 57 ¶¶ 87-95, 147, 165-70. Plaintiffs also assert that the court's "analysis directly adjudicated … [a]nticompetitive effects including supracompetitive pricing and quality degradation (*id.* at 177-181)." ECF No. 242-1 at 8. But the cited page range addresses "pricing" and "quality" in an alleged "general search text ads market." *Google*, 747 F. Supp. 3d at 177. Those findings have nothing to do with Plaintiffs' case, as confirmed by this Court's dismissal of their "claim for monopolization in the general search text advertising market … without leave to amend." ECF No. 137 at 4. And even if Plaintiffs' brief were construed as referring to effects in an alleged market for general search services, they have not carried their burden with respect to any elements of issue preclusion, including because of the relaxed burden of proof applied in *U.S. v. Google* that is addressed above.

24

No precedent supports giving preclusive effect to a list of cursory assertions buried in a brief or a collection of excerpts copied from an earlier opinion without a specific explanation of why each excerpt meets the elements of estoppel.  To the contrary, courts caution in antitrust cases that "the doctrine of offensive collateral estoppel … is detailed, difficult, and potentially dangerous." *Jack Faucett Assocs. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984); *see also In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326-27 (4th Cir. 2004) (explaining that issue preclusion should "be used cautiously" and the elements "applied strictly").  Plaintiffs have not requested estoppel on any findings other than the general issues of "liability" and "causation," and they certainly have not met their summary judgment burden to apply estoppel to any such issues.  *See Pool Water Prods.*, 258 F.3d at 1033.

Alternatively, the Court should exercise its "broad discretion" to decline to apply collateral estoppel here based on the confluence of several factors.  *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1033-34 (N.D. Cal. 2012).  For one, "the pendency of [Google's] merits appeal" in *U.S. v. Google* cautions against giving "preclusive effect to such a significant set of antitrust issues." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089, at *6 (S.D.N.Y. Jan. 7, 2016).  For another, "the absence of a jury trial" in *U.S. v. Google* counsels against applying issue preclusion in a case where Plaintiffs demand treble damages.  *Grisham*, 670 F. Supp. 2d at 1036; *see also Pooshs*, 904 F. Supp. 2d at 1034.  And the risk of "jury confusion" is especially significant here.  *See Grisham*, 670 F. Supp. 2d at 1037.  Plaintiffs do not explain how an instruction that "causation" or "injury" has been established could be reconciled with a standard instruction on causal antitrust injury, which would explain that "Plaintiff bears the burden of showing that its injuries were caused by defendant's antitrust violation, as opposed to any other factors," and "[i]f you find that plaintiff's alleged injuries were caused by factors other than defendant's alleged antitrust violation, then you must return a verdict for defendant."  ABA Model Jury Instr. in Civil Antitrust Cases § 6.B.4.

## **CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment and dismiss the case.

MOTION FOR SUMMARY JUDGMENT                                         CASE NO. 3:22-CV-02499-RFL-SK

DATED: May 26, 2026

**WILLIAMS & CONNOLLY LLP**

By: */s/ John E. Schmidtlein*

John E. Schmidtlein (CA State Bar No. 163520)
Graham Safty (admitted *pro hac vice*)
Kees D. Thompson (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:     (202) 434-5000
Facsimile:     (202) 434-5029
Email:          jschmidtlein@wc.com
                    gsafty@wc.com
                    keesthompson@wc.com

*Attorneys for Defendant Google LLC, Alphabet Inc., and XXVI Holdings Inc.*

26