UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY KATHERINE ARCELL, et al.,

Plaintiffs,

v.

GOOGLE LLC, et al.,

Defendants.

Case No. 22-cv-02499-RFL

**ORDER DISMISSING CLAIMS AND DENYING AS MOOT MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 242, 251, 267

Plaintiffs, twenty-two consumers, sued Google LLC, Alphabet Inc., and XXVI Holdings Inc. (collectively, "Google") asserting antitrust violations. They contended that Google violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by entering into agreements that make its search engine the default general search engine on browsers, mobile devices, computers, and other devices. Plaintiffs plausibly alleged that those agreements precluded competitors from developing high-quality search products that are more privacy protective and ad free. As a result, Plaintiffs proceeded to discovery on the theory that Google's monopoly in the general search services market injured them by preventing them from accessing alternative search engines with the aforementioned characteristics. Discovery has now closed, and the parties have cross-moved for summary judgment. Plaintiffs have adduced no relevant evidence to support their theory of injury. They submit no expert report, deposition testimony, or declaration to show that better search options could have been available to them if Google had not entered these agreements. Instead, they try to paper over that gap by referring to their pleadings and piggybacking off of the federal government's related case. That is insufficient at the summary judgment stage. Accordingly, Plaintiffs have not identified a genuine dispute of fact that they

have Article III standing. As further described below, Plaintiffs' claims are **DISMISSED** for lack of subject-matter jurisdiction.[1]

## I. BACKGROUND

In *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024), Google was found to have monopolized the general search services and general search text advertising markets through entering into exclusive distribution agreements with Apple and other manufacturers. These agreements preset Google as the default general search engine for primary search access points like browser search boxes or widgets that come preloaded on mobile devices. *Google*, 747 F. Supp. 3d at 31. In this follow-on suit, Plaintiffs alleged that Google's contracts "foreclosed efficient channels of distribution and resulted in network effects that made it difficult for competitors to gain the volume of users and user data that would allow the development of high-quality search products." (Dkt. No. 124 ¶ 268.) Plaintiffs' only surviving theory of antitrust injury is that these agreements allegedly prevented competing search engines, such as DuckDuckGo and Neeva, from providing consumers with search products that offer more privacy protective and ad-free searches. *Arcell v. Google LLC*, No. 22-CV-02499-RFL, 2025 WL 210877, at *1 (N.D. Cal. Jan. 16, 2025). Their allegations supported a plausible inference that "in a more competitive market, viable search alternatives would have emerged that offer greater privacy protections or are less clogged with ads." *Id*. Accordingly, Plaintiffs plausibly alleged an injury from their inability to access these alternatives. *Id*. at *1–2.

After discovery closed, the parties cross-moved for summary judgment. Plaintiffs submitted the following evidence: the Information Services Agreement ("ISA") between Google and Apple, Plaintiffs' own deposition testimony, declarations from each Plaintiff, and their responses to Google's interrogatories. The ISA requires Apple to preset Google as the default search service in Apple's web browser and operating systems. (Dkt. Nos. 245-1, 245-2.)

[1] Plaintiffs' motion to set a case management conference (Dkt. No. 267) is denied as moot. Plaintiffs' hearsay objection to some of Google's evidence is overruled as moot, since the challenged evidence has not been considered.

Plaintiffs' interrogatory responses generally state that they continue to use the internet and access Google through different devices, some of which have Google set as the default search engine. (*See, e.g.*, Dkt. No. 245-3 at 7; Dkt. No. 245-5 at 7.)[2] The responses further state that Plaintiffs seek damages in amounts to be supported by expert testimony. (*See, e.g.*, Dkt. No. 245-3 at 11; *see also* Dkt. No. 245-4 at 8.) However, Plaintiffs did not provide an expert report. (Dkt. No. 251-1 ¶ 2.) Plaintiffs also submitted excerpts from the depositions of four Plaintiffs. (*See, e.g.*, Dkt. No. 253-2.) Their testimony reflects that they use Google; have used or wished to use alternative search engines like DuckDuckGo; sought to avoid online tracking; and objected to advertisements related to prior searches. (*See, e.g.*, *id.* at 6, 9–10, 12.) Lastly, Plaintiffs submitted substantially similar declarations stating that they believe they were deprived of high-quality search alternatives that could have provided stronger privacy protections, reduced tracking, fewer advertisements, greater innovation, and compensation or other value in exchange for their browsing data. (*See, e.g.*, Dkt. Nos. 253-6, 253-7.)

Google's motion for summary judgment suggested a potential lack of subject-matter jurisdiction, so the Court ordered Plaintiffs to show cause why they had Article III standing. (Dkt. No. 256.) While the parties "presumably already submitted all relevant evidence on this question when briefing antitrust standing," they were provided an opportunity to submit supplemental evidence. (*Id.* at 1.) Plaintiffs submitted seventy-five exhibits and a twenty-two-page appendix containing quotes from those exhibits and other sources. (Dkt. Nos. 257-2 to 257-77.) Many of the exhibits appear to be copies of websites linked in a related case's complaint. (*See* Dkt. No. 258 at 2.) While most exhibits describe the operation of other search engines, a few are academic studies and a few others reflect evidence from *United States v. Google*. (*See, e.g.,* Dkt. Nos. 257-2, 257-72, 257-75.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

moving party "shows that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for which it has the burden of proof), it "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted). When a defendant moves for summary judgment based on an issue for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

If the movant has met their burden, the burden shifts to the non-movant to establish a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). That exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. All reasonable inferences are drawn in favor of the non-movant, keeping in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id*. at 255. But conclusory and speculative declarations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015) (citations omitted).

## III. DISCUSSION

Google contends there is no genuine dispute of fact that Plaintiffs suffered an antitrust injury. This argument necessarily implicates Article III standing, since standing requires an injury in fact that is fairly traceable to the defendant's conduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Although Google has not expressly challenged Plaintiffs' standing, federal courts have an independent obligation to address a potential lack of subject-matter jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (2004) (citation omitted). Because Article III standing is a prerequisite for federal jurisdiction, that issue must be addressed before reaching the parties' arguments. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549

U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction . . . ."); *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (holding that because the plaintiff did not establish Article III standing, "it is neither necessary nor appropriate for us to reach any questions of antitrust standing").

Litigants who seek to invoke the jurisdiction of the federal courts must establish an actual case or controversy under Article III of the Constitution at every stage of litigation. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (citation omitted). To establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between that injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. While plausible allegations are usually enough at the pleading stage, they are never sufficient once the case reaches summary judgment or if the district court issues a "post-pleading stage order to establish Article III standing." *Id.* at 561; *Gerlinger*, 526 F.3d at 1256. That is, a plaintiff "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" establishing standing. *Lujan*, 504 U.S. at 561 (citation omitted); *Gerlinger*, 526 F.3d at 1256. Once Article III standing has been established, a plaintiff bringing an antitrust claim must also establish the "more demanding standard" of antitrust standing. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998) (citation omitted).

**A. Plaintiffs' Evidence**

Plaintiffs have not identified a genuine dispute of material fact as to whether they have Article III standing. Even assuming their own deposition testimony, interrogatory responses, and declarations would be sufficient to show an injury derived from their privacy and advertising preferences, that evidence does not show the requisite causal connection because it does not address whether Google's default agreements played some role in depriving Plaintiffs of the alternatives they claim would have existed in a competitive market. To the extent that it vaguely discusses causation (*see, e.g.*, Dkt. No. 253-6 ¶¶ 2–6), a party's "own self-serving and

uncorroborated affidavit and deposition testimony" alone generally cannot defeat summary judgment. *See Opara v. Yellen*, 57 F.4th 709, 726 (9th Cir. 2023) (citation omitted). Moreover, Plaintiffs do not appear to have personal knowledge about the challenged agreements' effects. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) (citations omitted).

The materials Plaintiffs submitted in response to the Court's order to show cause do not cure this evidentiary deficiency.[3] For example, a field experiment concluding that default selections impact consumer search engine choices demonstrates only that Google's market share might have been lower absent the challenged agreements, not that their impact on market share suppressed the development of superior search alternatives. (*See* Dkt. Nos. 257-72, 257-73.) Similarly, Gabriel Weinberg's testimony and the cited material regarding privacy-protective or ad-free search engines do not support a reasonable inference that alternative search engines would have become viable competitors absent Google's default agreements because they show only that such products existed. And while statements from Google employees reflect Google's internal consideration of privacy-related product features, they are insufficient to allow a reasonable factfinder to infer either that Google itself would have adopted those features absent the challenged agreements or that Google's agreements prevented competing search engines from developing into meaningful competitive alternatives. (*See* Dkt. No. 257-75; Dkt. No. 257-76 at 5–6.)

Plaintiffs also contend that Google's conduct deprived users of compensation for their searches and prevented competing search engines from paying users for search data. The Court previously dismissed this theory of injury. *Arcell*, 2025 WL 210877, at *1. But even assuming it remains viable, Plaintiffs identify no evidence from which a reasonable factfinder could conclude that Google's exclusive distribution agreements suppressed the development of search engines offering Plaintiffs compensation for their search data. Consequently, Plaintiffs also fail

[3] Since Plaintiffs fail to show a genuine dispute of fact over Article III standing even if these materials are considered, Google's hearsay objection to these materials is overruled as moot.

to raise a genuine issue of material fact under this theory.

Plaintiffs cannot rely on their pleadings and the Court's prior rulings to paper over these gaps. At the pleading stage, Plaintiffs plausibly alleged Article III injury-in-fact and an antitrust injury. *Id.* at *1–2. But their pleadings and the Court's orders evaluating the sufficiency of those pleadings do not constitute evidence supporting Plaintiffs' allegations. *See Bras v. Cal. Pub. Utilities Comm'n*, 59 F.3d 869, 872 (9th Cir. 1995) ("In order to defeat a summary judgment motion, the nonmoving party may not simply rely on his pleadings but must present some evidence . . . ."). For the same reason, Plaintiffs cannot rely on this Court's order concluding that plaintiffs in a related case sufficiently alleged their claim. *See Attridge v. Google LLC*, 816 F. Supp. 3d 1059, 1069–72 (N.D. Cal. 2026).

**B. Collateral Estoppel**

Plaintiffs argue that even if they haven't provided sufficient evidence of Article III standing, either collateral estoppel or Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), should fill in the gaps. They say the findings in *United States v. Google* established that Google's exclusive distribution agreements limited consumers' ability to access alternative search engines and thereby preclude Google from relitigating the impact of its conduct on users. That argument is unpersuasive.

As an initial matter, the scope of preclusive effect is identical under both collateral estoppel and Section 5(a). Section 5(a) "grants prima facie weight only to matters as to which collateral estoppel would apply had the government itself brought the suit." *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1030 (9th Cir. 2001). Accordingly, the evidentiary weight of a prior judgment is determined by the ordinary principles of collateral estoppel. *Id.* at 1030–31 (quoting *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951)). So, under either doctrine, Plaintiffs must establish that an identical issue was actually litigated in the earlier action, necessarily decided, and essential to the prior judgment. *Id.* at 1031 (citations omitted); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted).

When the United States sues to enjoin antitrust violations, it need not establish antitrust

standing. *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 n.10 (9th Cir. 2021); *see* 15 U.S.C. §§ 4, 25. As a result, whether consumers suffered an injury was not essential to the judgment in *United States v. Google*. In fact, the issue was never addressed. The judgment therefore cannot have a preclusive effect on this question. *See Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 248 (3d Cir. 2010) ("Simply because such a conclusion may be gleaned from the Government Case does not mean that it was essential to [the] holding." (citation omitted)); *see also Pool Water*, 258 F.3d at 1032.

*United States v. Google* did make findings on issues that could be viewed as related to the Article III injury inquiry, such as whether Google's exclusionary conduct caused anticompetitive harm. However, the court was clear that those findings were addressed to the question whether "Google's exclusive distribution contracts reasonably appear capable of significantly contributing to maintaining Google's monopoly power in the general search services market." *See Google*, 747 F. Supp. 3d at 153. The court found that Google's conduct erected various barriers to rivals, but expressly declined to reconstruct what would have happened absent Google's challenged conduct, finding that "such thought experiments" were not required. *Id.* at 155. The court emphasized that, when "a regulator is seeking only injunctive relief," a "relaxed" standard of causation applied as to anticompetitive harm. *Id.* at 152–53. Accordingly, those findings do not address Plaintiffs' theory here that high-quality search engines that were more privacy protective or ad free could have been available to them absent Google's challenged actions. Plaintiffs therefore cannot invoke collateral estoppel or Section 5(a) to establish Article III standing.

**C. Rule 56(d) Relief**

Plaintiffs request the opportunity to conduct additional discovery under Federal Rule of Civil Procedure 56(d). Since discovery had already closed before summary judgment briefing and the Court's order to show cause, Plaintiffs do not appear to have been sufficiently diligent to justify relief. *See Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th 1101, 1112–13 (9th Cir. 2025) (citation omitted). In any event, Plaintiffs' failure to submit a declaration or

affidavit in support of their request is reason enough to deny relief. *See In re O'Gorman*, 115 F.4th 1047, 1061 (9th Cir. 2024) (citation omitted). Plaintiffs have also failed to explain what information they would seek from further depositions or why Google's default-placement value would be relevant to Article III standing.

## IV. CONCLUSION

Plaintiffs have failed to produce evidence from which a reasonable jury could conclude that Google's default agreements caused them injury, so they have not raised a genuine dispute of fact over Article III standing. Accordingly, Plaintiffs' claims are **DISMISSED** for lack of subject-matter jurisdiction. The motions for summary judgment are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: September 30, 2026

RITA F. LIN
United States District Judge